ARNOLD & PORTER KAYE SCHOLER LLP
John Ulin (SBN 165524)
john.ulin@arnoldporter.com
777 South Figueroa St, 44th Floor
Los Angeles, CA 90017-5844
Telephone: 1.213.243.4228
Facsimile: 1.213.243.4199

ARNOLD & PORTER KAYE SCHOLER LLP
Matthew Wolf (*pro hac motion pending*)
matthew.wolf@arnoldporter.com
John Nilsson (*pro hac motion pending*)
john.nilsson@arnoldporter.com
601 Massachusetts Avenue, NW
Washington, DC 20001-3743
Telephone: 1.202.942.5000
Facsimile: 1.202.942.5999

ARNOLD & PORTER KAYE SCHOLER LLP
Deborah Fishman (SBN 197584)
deborah.fishman@arnoldporter.com
3000 El Camino Real
Five Palo Alto Square, Suite 500
Palo Alto, CA 94306-3807
Telephone: 1.650.319.4500
Facsimile: 1.650.319.4700

*Attorneys for Defendant*
*IVANTIS, INC.*

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### SOUTHERN DIVISION

| | |
|---|---|
| GLAUKOS CORPORATION, a Delaware Corporation,<br><br>  Plaintiff,<br><br>v.<br><br>IVANTIS, INC., a Delaware corporation,<br><br>  Defendant. | Civil Action No. 8:18-cv-00620-JVS (JDEx)<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT IVANTIS, INC.'S MOTION TO DISMISS**<br><br>Date: June 25, 2018<br>Time: 1:30 p.m.<br>Courtroom: 10C<br>Judge: Hon. James V. Selna |

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ..................................................................................................... 1
BACKGROUND ...................................................................................................... 2
    I. Factual Background ..................................................................................... 2
        A. The Complaint ..................................................................................... 2
        B. Ivantis ................................................................................................... 2
        C. Glaukos's Allegations and Ivantis's Current Activities ...................... 3
        D. Glaukos's Allegations and Ivantis's Future Activities ....................... 4
ARGUMENT ............................................................................................................ 5
    I. GLAUKOS'S CLAIMS OF PATENT INFRINGEMENT SHOULD BE DISMISSED UNDER FED. R. CIV. P. 12(B)(6) FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED ..................................................................................................... 5
        A. Legal Standards ................................................................................... 5
        B. The Complaint Should Be Dismissed Because the Alleged Infringing Conduct Does Not Infringe Under the Safe Harbor .......... 6
    II. GLAUKOS'S CLAIM FOR DECLARATORY JUDGMENT SHOULD BE DISMISSED UNDER FED. R. CIV. P. 12(B)(1) FOR LACK OF SUBJECT MATTER JURISDICTION ........................................ 9
        A. Legal Standards ................................................................................... 9
        B. Glaukos's Declaratory Judgment Claims Do Not Present An Actual Case or Controversy Between the Parties ............................. 10
        C. The Court Should Not Exercise Its Discretion to Accept Jurisdiction ........................................................................................ 12
CONCLUSION ...................................................................................................... 13

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abtox, Inc. v. Exitron Corp.*,
   122 F.3d 1019 (Fed. Cir. 1997) .................................................................................. 6

*Alphamed Pharms. Corp. v. Arriva Pharms., Inc.*,
   391 F. Supp. 2d 1148 (S.D. Fla. 2005) ...................................................................... 8

*Amgen, Inc. v. Int'l Trade Comm'n*,
   565 F.3d 846 (Fed. Cir. 2009) .................................................................................... 7

*Ashcroft v. Iqbal*,
   129 S. Ct. 1937 (2009) ............................................................................................ 5, 6

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) .................................................................................................... 5

*Benitec Austl., Ltd. v. Nucleonics, Inc.*,
   495 F.3d 1340 (Fed. Cir. 2007) ............................................................................. 9, 11

*Cat Tech LLC v. TubeMaster, Inc.*,
   528 F.3d 871 (Fed. Cir. 2008) .................................................................................. 12

*Classen Immunotherapies, Inc. v. Somaxon Pharms.*,
   No. 2:12-cv-06643-GAF-PLA, 2013 WL 9947386 (C.D. Cal. Apr.
   11, 2013), *aff'd per curiam*, 550 Fed.Appx. 897 (Fed. Cir. 2014) .......................... 8

*Eli Lilly & Co. v. Medtronic, Inc.*,
   496 U.S. 661 (1990) .................................................................................................... 7

*Intermedics, Inc. v. Ventritex, Inc.*,
   775 F. Supp. 1269 (N.D. Cal. 1991) ...................................................................... 7, 8

*Medical Diagnostic Laboratories, L.L.C. v. Protagonist Therapeutics, Inc.*,
   No. 17-cv-05572-EMC, 2018 WL 784456 (N.D. Cal. Feb. 7, 2018) .......... 2, 12, 13

*MedImmune, Inc. v. Genentech, Inc.*,
   549 U.S. 118 (2007) .................................................................................................... 9

*Safe Air for Everyone v. Meyer*,
   373 F.3d 1035 (9th Cir. 2004) ................................................................................. 10

*Sandoz Inc. v. Amgen Inc.*,
  773 F.3d 1274 (Fed. Cir. 2014) ............................................................... 9, 10, 11, 12

*Savage v. Glendale Union High Sch.*,
  343 F.3d 1036 (9th Cir. 2003) ............................................................................. 10

*Telectronics Pacing Systems, Inc. v. Ventritex, Inc.*,
  982 F.2d 1520 (Fed. Cir. 1992) .................................................................. 8, 11, 12

*White v. Lee*,
  227 F.3d 1214 (9th Cir. 2000) ............................................................................... 9

**Statutes**

35 U.S.C. § 271(e)(1).............................................................................................*passim*

Declaratory Judgment Act, 28 U.S.C. § 2201-2202 ........................................... 9, 12, 13

Food, Drug and Cosmetic Act ..................................................................................... 6

**Other Authorities**

Fed. R. Civ. P.  8(a)(2), 12(b)(1) and 12(b)(6) ......................................................*passim*

Ivantis, Inc. ("Ivantis") respectfully submits this Memorandum of Points and Authorities in Support of its Motion to Dismiss Plaintiff Glaukos Corporation's ("Glaukos") complaint pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6).

## INTRODUCTION

Glaukos's suit against Ivantis for infringement of U.S. Patent Nos. 6,626,858 and 9,827,143 (collectively, the "Asserted Patents") is premature and, indeed, precipitous. In its complaint, Glaukos alleges that Ivantis manufactures an infringing medical device known as the Hydrus® Microstent (the "Hydrus") in California and supplies the Hydrus to physicians outside the United States in Australia and New Zealand for commercial purposes. Dkt. No. 1 ("Complt.") ¶ 2. Glaukos insists, without any factual basis, that the alleged commercial use of Hydrus in international markets is "not reasonably related to the development and submission of information to the U.S. Food and Drug Administration (FDA)," thus falling outside the safe harbor provided by 35 U.S.C. § 271(e)(1) ("the § 271(e)(1) safe harbor"). *Id*. Glaukos also claims that, "in light of Ivantis's statements that it plans an imminent, commercial launch of its Hydrus product to United States customers, a substantial controversy also exists with respect to future acts of infringement by Ivantis, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Id*. ¶ 25.

Despite these bold conclusions, the facts alleged by Glaukos do not state a plausible claim of present infringement and do not warrant the issuance of a declaratory judgment as to future infringement.

*First*, assuming for the purpose of this motion to dismiss that Glaukos's allegations are true, all of the activities described in the complaint fall squarely within the § 271(e)(1) safe harbor because they are directed to clinical trial research, a necessary predicate to obtain FDA approval. Under the safe harbor, it is *not infringement* for Ivantis to make, use, or sell the Hydrus "for uses reasonably related to the development and submission of information" to the FDA for regulatory

approval. *See* 35 U.S.C. § 271(e)(1); *Medical Diagnostic Laboratories, L.L.C. v. Protagonist Therapeutics, Inc.*, No. 17-cv-05572-EMC, 2018 WL 784456, at *3 (N.D. Cal. Feb. 7, 2018). Ivantis therefore moves to dismiss Glaukos's claims pursuant to Federal Rule of Civil Procedure 12(b)(6) because Glaukos's allegations of patent infringement fail to state a claim upon which relief can be granted.

*Second*, the future activities which Ivantis may allegedly undertake do not present a substantial controversy of sufficient immediacy and reality to be justiciable. While Ivantis's Hydrus device is currently undergoing FDA review, there is no guarantee whether or when it will receive regulatory approval to commercially market the device. Glaukos's Complaint fails to establish Article III jurisdiction because no actual case or controversy regarding Ivantis's Hydrus device presently exists between Glaukos and Ivantis. In asking this Court to entertain a declaratory judgment action prior to regulatory approval, Glaukos is asking this Court to radically narrow, if not eliminate, the § 271(e)(1) safe harbor. For this reason, the Court should dismiss Glaukos's request for declaratory judgment of infringement for want of jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1).

## BACKGROUND

### I. FACTUAL BACKGROUND

#### A. The Complaint

On April 14, 2018, Glaukos filed a Complaint for patent infringement in this Court. Glaukos alleges that Ivantis infringes the two asserted patents and "seeks redress for Ivantis's infringement as well as its imminent additional acts of future infringement." Complt. ¶ 1. Specifically, Glaukos seeks "a judicial determination that Ivantis infringes and/or imminently will infringe one or more claims of each of the Asserted Patents." *Id*. ¶ 4.

#### B. Ivantis

Ivantis is a medical device company based in Irvine, California. *See* Complt. ¶ 6. While Ivantis does not yet have any products available in the United States, it

has been developing an ophthalmic device for the treatment of glaucoma named the "Hydrus." Declaration of Kenneth Galt ("Galt Decl.") ¶ 3. In glaucomatous eyes, eye pressure increases because the eye's fluid channels become blocked. *See* Complt. ¶ 11. The Hydrus is a microstent designed for insertion into Schlemm's canal, the primary fluid canal, where it acts as a scaffold, re-opening the channel to restore the flow of aqueous humor out of the eye and thereby relieving high intraocular pressure. *See id.* ¶ 27.

### C. Glaukos's Allegations and Ivantis's Current Activities

Glaukos alleges, on information and belief, that "Ivantis currently manufactures the Hydrus at its facility in Irvine, California, for use outside of the safe harbor provided under 35 U.S.C. § 271(e)(1), including for commercial use in international markets." Complt. ¶ 2. Glaukos further alleges, again on information and belief, that "Ivantis is currently supplying the Hydrus to physicians in Australia and New Zealand for commercial purposes not reasonably related to the development and submission of information to the U.S. Food and Drug Administration (FDA)." *Id.* ¶¶ 2, 24. Glaukos does not allege any commercial use of Hydrus in the U.S.

Ivantis has not yet commercially launched the Hydrus in any market (Galt Decl. ¶14), and it is currently in the process of seeking regulatory approval for Hydrus from the FDA. Galt Decl. ¶ 6; *see also* Complt. ¶¶ 18, 23 (noting Ivantis's "pending FDA submission"). As part of this process, Ivantis recently submitted data from its ongoing HORIZON pivotal clinical trial,[1] the largest FDA pivotal trial of a micro-invasive glaucoma surgery ("MIGS") device in history, which evaluated the Hydrus® Microstent plus cataract surgery against cataract surgery alone in eyes with mild to moderate primary open-angle glaucoma. Galt Decl. ¶ 9. Ivantis also received authorization from FDA to initiate the SUMMIT clinical trial, which will evaluate the

---

[1] Safety & Effectiveness Study of the Hydrus Microstent for Lowering IOP in Glaucoma Patients Undergoing Cataract Surgery (HORIZON), https://clinicaltrials.gov/ct2/show/NCT01539239.

Hydrus® Microstent as a standalone treatment in patients with advanced glaucoma.[2] *Id.*

Additionally, in support of its application for FDA approval, Ivantis established a global registry, known as SPECTRUM, to collect data from doctors at clinical sites outside the United States, including in Australia and New Zealand.  Galt Decl. ¶¶ 10-12; *see also* FDA, "Use of Real-World Evidence to Support Regulatory Decision-Making for Medical Devices: Guidance for Industry and Food and Drug Administration Staff" (2017) at 7, *available at* https://www.fda.gov/downloads/ MedicalDevices/DeviceRegulationandGuidance/GuidanceDocuments/ UCM513027.pdf ("RWE may be suitable to support the clearance or approval of a new device").  Ivantis does not sell Hydrus, but instead provides free devices to these doctors, who use them to populate SPECTRUM with clinical data in support of Ivantis's application for FDA approval.  Galt Decl. ¶¶ 10-12.  The Hydrus devices used in this endeavor were manufactured outside the United States and assembled with their delivery system in the United States.  *Id.* ¶ 13.[3]

### D.    Glaukos's Allegations and Ivantis's Future Activities

Glaukos alleges, again on information and belief, that "Ivantis plans to significantly expand its infringing conduct in 2018," apparently relying on Ivantis's November 2017 public announcements of plans to commercially launch the Hydrus in 2018.  Complt. ¶ 3.  Glaukos asserts that Ivantis recently hired marketing and manufacturing directors and supervisors, and "on information and belief is currently filling other new manufacturing-related positions for its assembly facility" in Irvine." *Id.* ¶ 25

---

[2] http://www.ivantisinc.com/pdf/Ivantis_Announces_FDA_Clearance_to_Initiate_Clinical_Trial_FINAL_4-25-17_DIGITAL.pdf

[3] Although not relevant to the allegations of the complaint, Ivantis notes that a subsidiary is preparing a commercial launch in Australia.  The products sold as part of this launch will be both manufactured and assembled outside the United States.  Galt Decl. ¶ 14.

Glaukos further alleges that "Ivantis has stated that it has sufficient resources to commercially launch in the U.S. promptly upon FDA approval, which Ivantis has repeatedly represented it anticipates occurring early in the third quarter of 2018 or 'mid-2018.'" *Id.* ¶ 25.  Glaukos apparently bases this allegation on the $25 million Ivantis raised in 2017 "for the specific purpose of supporting US commercialization of the Hydrus Microstent upon its anticipated 2018 US Food and Drug Administration (FDA) approval." *Id.* (internal quotation marks omitted).

## ARGUMENT

### I. GLAUKOS'S CLAIMS OF PATENT INFRINGEMENT SHOULD BE DISMISSED UNDER FED. R. CIV. P. 12(B)(6) FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED

Glaukos's complaint should be dismissed because Ivantis's allegedly infringing conduct is non-infringing under the Safe Harbor of 35 U.S.C. § 271(e)(1).  Glaukos's pleadings are inadequate to survive a motion to dismiss because there are simply no facts that it can plead to establish patent infringement, and therefore its patent infringement claim should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6).  In the alternative, Glaukos's claim of patent infringement should be dismissed on summary judgment.

### A.  Legal Standards

Under Federal Rule of Civil Procedure 12(b)(6), a claim must be dismissed when the allegations fail to state a claim upon which relief can be granted.  Federal Rule of Civil Procedure 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief."  In order to survive a Rule 12(b)(6) motion to dismiss, a party must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  There can be no plausibility "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009).  Although the Court must accept all factual allegations as true, "[t]hreadbare recitals of the elements of a cause of action, supported by mere

conclusory statements, do not suffice," and are not entitled to the presumption of truth. *Id.* at 1949.

### B. The Complaint Should Be Dismissed Because the Alleged Infringing Conduct Does Not Infringe Under the Safe Harbor

Glaukos claims that Ivantis's current activity falls outside the Safe Harbor under 35 U.S.C. § 271(e)(1). *See* Complt. ¶¶ 2, 24. However, Glaukos fails to plead plausible facts to support this claim. Glaukos alleges only that Ivantis "currently manufactures the Hydrus at its facility in Irvine, California " and is "currently supplying the Hydrus to physicians in Australia and New Zealand," but does not set forth any plausible factual allegations—other than a bare reference to "commercial use in international markets"—as to why this activity is not protected by the Safe Harbor.

To the contrary, Ivantis's activities with respect to Hydrus fall squarely within the § 271(e)(1) Safe Harbor and therefore cannot constitute infringement. As the Supreme Court explained in *Merck kGaA v. Integra LifeSciences I, Ltd.*, the Safe Harbor provides a "wide berth" that "extends to *all* uses of patented inventions that are *reasonably related* to the development and submission of *any* information under the [Food, Drug and Cosmetic Act]." 545 U.S. 193, 202 (2005) (first and second emphasis added; last emphasis in original). The Court further explained that a particular "use" is "reasonably related" to seeking regulatory approval if "a drugmaker has a reasonable basis for believing that a patented compound may work, through a particular biological process, to produce a particular physiological effect, and uses the compound in research that, if successful, would be appropriate to include in a submission to FDA." *Id.* at 207. This is true even where such uses may have some attendant or alternative commercial purpose. *See Abtox, Inc. v. Exitron Corp.*, 122 F.3d 1019, 1029-30 (Fed. Cir. 1997) ("The statute, therefore, does not look to the underlying purposes or attendant circumstances of the activity (*e.g.*, tests led to the sale of the patent), as long as the use is reasonably related to FDA approval.");

*Intermedics, Inc. v. Ventritex, Inc.*, 775 F. Supp. 1269, 1279-80 (N.D. Cal. 1991) (recognizing that "in the real world of high-tech medicine . . . it is 'business purposes' that inspire the kinds of infringing activities that the exemption clearly covers"). The Supreme Court has also confirmed that the Safe Harbor extends to medical devices. *See Eli Lilly & Co. v. Medtronic, Inc.*, 496 U.S. 661 (1990) (holding that the Safe Harbor under § 271(e)(1) applies to activities reasonably related to obtaining regulatory approval for medical devices). Glaukos's mere mention of commercial use abroad is insufficient to allege activity that falls outside the safe harbor.

Moreover, Glaukos's claim based on its bare allegations fails. As noted above, Ivantis currently manufactures the Hydrus outside the United States, assembles the microstents with their delivery system in California, and supplies them for free to particular clinical sites outside the United States, such as in Australia and New Zealand, which generate data used in the FDA approval process. Galt Decl. ¶¶ 10-13. Ivantis currently does not commercially manufacture the Hydrus® Microstent in the United States. *Id.* ¶ 13. Indeed, contrary to Glaukos's allegation that "Ivantis is currently exporting the product for commercial use in at least two countries outside the United States," Ivantis does not commercially distribute the Hydrus anywhere. *Id.* ¶ 14. Rather, Ivantis provided Hydrus® Microstents to physicians at various clinical sites, such as those in Australia and New Zealand, who gathered data used to support Ivantis's application for FDA approval. *Id.* ¶¶ 10, 12. Thus, any manufacture, import, or export of the Hydrus to/from the United States covered by Glaukos's complaint is related to the development of information for submission to the FDA in support of seeking U.S. regulatory approval for the Hydrus® Microstent. *See Intermedics*, 775 F. Supp. at 1282-83 (manufacturing an allegedly infringing device for use in developing clinical data protected by § 271(e)(1)). Thus, the allegedly infringing activities fall under the § 271(e)(1) Safe Harbor. *See, e.g.*, *Amgen, Inc. v. Int'l Trade Comm'n*, 565 F.3d 846, 854-55 (Fed. Cir. 2009) (affirming the ITC's finding that the Safe Harbor under § 271(e)(1) applies to the importation of

an infringing product used to develop information for submission to the FDA); *Intermedics*, 775 F. Supp. at 1280, 1282 (noting that "it is reasonable to continue to generate clinical data after submitting an initial PMA application" because "it will not always be clear to parties setting out to seek FDA approval for their new product exactly which kinds of information, and in what quantities, it will take to win that agency's approval" and finding that the Safe Harbor under § 271(e)(1) applies to continuing sales of an allegedly infringing device made to U.S. and foreign clinical investigators after submission of PMA application).

Although the § 271(e)(1) Safe Harbor is an affirmative defense to patent infringement, district courts have considered it on motions to dismiss. *See Classen Immunotherapies, Inc. v. Somaxon Pharms.*, No. 2:12-cv-06643-GAF-PLA, 2013 WL 9947386 at *2 n. 1 (C.D. Cal. Apr. 11, 2013), *aff'd per curiam*, 550 Fed.Appx. 897 (Fed. Cir. 2014) (granting defendant's motion to dismiss because the defendant's allegedly infringing conduct was exempt under 35 U.S.C. § 271(e)(1)); *Alphamed Pharms. Corp. v. Arriva Pharms., Inc.*, 391 F. Supp. 2d 1148, 1160 n. 6 (S.D. Fla. 2005) (dismissing the declaratory judgment claims because "from the face of the [complaint], the Court [wa]s able to determine that the complained-of activities [we]re protected by the safe harbor provision, as a matter of law."). In the alternative, Ivantis respectfully requests that the Court grant summary judgment of non-infringement under the Safe Harbor of 35 U.S.C. § 271(e)(1). *See Telectronics Pacing Systems, Inc. v. Ventritex, Inc.*, 982 F.2d 1520, 1521 (Fed. Cir. 1992) (affirming district court's granting of summary judgment upon converting defendant's motion to dismiss to a motion for summary judgment); *Intermedics*, 775 F. Supp. at 1272 n. 1 (ruling on plaintiff's motion for summary judgment and defendant's motion to dismiss on the issue of § 271(e)(1)).

## II. GLAUKOS'S CLAIM FOR DECLARATORY JUDGMENT SHOULD BE DISMISSED UNDER FED. R. CIV. P. 12(B)(1) FOR LACK OF SUBJECT MATTER JURISDICTION

Ivantis's ability to commercially market the Hydrus® Microstent is contingent upon approval by FDA—which is anything but a foregone conclusion. Simply put, no "case or controversy" presently exists. As such, Glaukos's claim for declaratory judgment should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(1).

### A.   Legal Standards

A plaintiff seeking declaratory judgment bears the burden of establishing jurisdiction. *Sandoz Inc. v. Amgen Inc.*, 773 F.3d 1274, 1277 (Fed. Cir. 2014) (citing *McNutt v. Gen. Motors Acceptance Corp. of Ind.*, 298 U.S. 178, 189 (1936)); *Benitec Austl., Ltd. v. Nucleonics, Inc.*, 495 F.3d 1340, 1344 (Fed. Cir. 2007) (citing *Steffel v. Thompson*, 415 U.S. 452, 459 n.10 (1974)). Article III limits the jurisdiction of federal courts to actual cases or controversies, and the phrase "case of actual controversy" in the Declaratory Judgment Act refers to the type of "cases" or "controversies" that are justiciable under Article III. *See MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 120, 1227 (2007) (citing *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240 (1937)).

To decide whether a "case or controversy" exists, courts consider "whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Id*. at 127 (internal quotation marks omitted). The dispute must be "definite and concrete," "real and substantial," and "admit of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." *Id*. (internal quotation marks omitted).

A Federal Rule of Civil Procedure 12(b)(1) motion to dismiss for lack of subject matter jurisdiction may be brought as either a facial or a factual attack. *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). Here, "in a factual attack, the challenger

disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). The Court need not presume truthfulness of the allegations and may review evidence beyond the Complaint "without converting the motion to dismiss into a motion for summary judgment." *Safe Air*, 373 F.3d at 1039. When a moving party brings a factual attack by presenting the Court with affidavits or other evidence, the plaintiff cannot stand on the complaint's allegations; "the party opposing the motion must furnish affidavits or other evidence necessary to satisfy its burden of establishing subject matter jurisdiction." *Savage v. Glendale Union High Sch.*, 343 F.3d 1036, 1039 n.2 (9th Cir. 2003).

**B. Glaukos's Declaratory Judgment Claims Do Not Present An Actual Case or Controversy Between the Parties**

**1. Glaukos's Claims Are Not of Sufficient Immediacy or Reality to Warrant Declaratory Judgment.**

There is no case or controversy here because Ivantis "cannot engage in the only liability-exposing conduct at issue without FDA approval of an application precisely defining the products it may market" (*Sandoz*, 773 F.3d at 1279) and Ivantis has not yet received FDA approval of the Hydrus® Microstent. Galt Decl. ¶¶ 6, 8. Despite Glaukos's allegation that Ivantis anticipates FDA approval for Hydrus in 2018 (Complt. ¶¶ 3, 25), there is no guarantee that will indeed occur in 2018, or even at all. Indeed, Ivantis already was notified of a deficiency in its application by the FDA. Galt Decl. ¶¶ 7-8. Moreover, Ivantis is still in the process of conducting clinical trials and collecting data that may be used to support its application for FDA approval, including from physicians in Australia and New Zealand implanting the Hydrus® Microstent. Galt Decl. ¶¶ 9-12. Whether Ivantis ultimately receives FDA approval may depend on this data.

Courts use *MedImmune*'s "all the circumstances" test to determine whether an action for declaratory judgment presents "a case of sufficient 'immediacy and reality.'" *Sandoz*, 773 F.3d at 1277 (concluding that declaratory judgment complaint

- 10 -

brought while plaintiff was conducting Phase III trial did not present a case or controversy because contingencies, such as failure of the trial and modification of the proposed product, existed that could "put non-infringement beyond reasonable dispute"). The "immediacy" inquiry centers on "how far in the future the potential infringement is, whether the passage of time might eliminate or change any dispute, and how much if any harm the potential infringer is experiencing, at the time of suit, that an adjudication might redress." *Id*. at 1278. The "reality" inquiry considers uncertainties about whether the actions on which potential infringement exposure is contingent will take place. *Id*. Prior to FDA approval, events that would expose a potential infringer to liability "may not occur as anticipated, or indeed may not occur at all." *Id*. at 1281 (internal quotation marks omitted).

*Telectronics Pacing Systems, Inc. v. Ventritex* is instructive. In *Telectronics*, a medical device patentee sought declaratory judgment of infringement "upon expiration of the clinical testing exemption under 35 U.S.C. § 271(e)(1)." *Telectronics*, 982 F.2d at 1522. The declaratory judgment plaintiff in *Telectronics* failed to the meet the actual controversy requirement because at the commencement of the suit, the defendant's medical device had only recently begun clinical trials, and "[t]here was no certainty that the device when approved would be the same device that began clinical trials." *Id*. at 1527; *see also Benitec*, 495 F.3d at 1346,1349 (affirming dismissal for lack of jurisdiction because an alleged infringer's development and submission of information to the FDA did not present a case or controversy of sufficient immediacy and reality to warrant declaratory judgment jurisdiction where the alleged infringer was researching applications for treating human diseases but had not yet filed a new drug application ).

Regardless of Ivantis's alleged ability to launch Hydrus in the United States upon FDA approval, the Court should consider that in enacting the § 271(e)(1) safe harbor, Congress must have been aware of "the need of competitors to raise funds for developing and testing competing products, and for preparing to enter the market

once controlling patents had expired" prior to FDA approval. *Telectronics*, 982 F.2d at 1525. "By permitting the testing and regulatory approval process to begin well before a controlling patent had run its course, Congress must have intended to allow competitors to be in a position to market their products as soon as it was legally permissible," rather than having to wait until the expiration of the original patent to begin developing a competing product. *Id.*

Therefore, the possibility of future commercialization of Hydrus is "too speculative and contingent to create a case or controversy under Article III" because it is dependent on "discretionary decisions" and "multiple uncertain contingencies." *See Medical Diagnostic*, 2018 WL 784456, at *7 (granting motion to dismiss request for declaratory judgment because alleged future infringing activities, including commercialization, were too speculative and contingent to present a case or controversy at that time). Simply put, without any certainty that Hydrus will in fact receive FDA approval, the issue is not ripe for Article III adjudication. *See Sandoz*, 773 F.3d at 1278 (noting that ripeness principles reinforce the importance of contingency in the all-the-circumstances analysis, and a "'claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all'") (quoting *Texas v. United States*, 523 U.S. 296, 300 (1998)). Thus, the Court should dismiss Glaukos's claim for declaratory judgment pursuant to Federal Rule of Civil Procedure 12(b)(1).

### C.  The Court Should Not Exercise Its Discretion to Accept Jurisdiction

Even if the Court decides there is an actual controversy and that it thus has jurisdiction, the Court's exercise of that jurisdiction is discretionary. *Cat Tech LLC v. TubeMaster, Inc.*, 528 F.3d 871, 883 (Fed. Cir. 2008) ("Even assuming that the immediacy and reality prerequisites for declaratory judgment relief have been met, the district court's exercise of its declaratory judgment authority is discretionary."). In deciding whether to exercise this discretion, courts look to "whether resolving the case serves the objectives for which the Declaratory Judgment Act was created." *Id.*

In the patent infringement context, these objectives have traditionally centered on a potential infringer's dilemma in choosing between investing in the commercialization of its product and risking liability for infringement. *See id.* Here, however, there is no such dilemma. *See Medical Diagnostic*, 2018 WL 784456, at *8 ("[The accused infringer is] on notice that [the plaintiff] believes [the accused product] will infringe on its patented technology. Because it is not yet known whether the FDA will . . . ultimately give final approval to [the accused product]. . . Plaintiff has not identified a clear equitable or policy reason to entertain its request for declaratory relief at this time."). If Ivantis succeeds in launching Hydrus commercially in the U.S., Glaukos will have every opportunity to bring its infringement suit. It should not be allowed to exploit the Declaratory Judgment Act to request a preemptive, and precipitous, infringement ruling before such a launch takes place.

## CONCLUSION

For the reasons set forth above, Ivantis respectfully requests this Court to dismiss Glaukos's claims of patent infringement and deny Glaukos's requests for declaratory judgment of patent infringement.

Dated:  May 21, 2018

ARNOLD & PORTER KAYE SCHOLER LLP

By: */s/ John Ulin*
JOHN ULIN
DEBORAH FISHMAN
MATTHEW WOLF
JOHN NILSSON

Attorneys for Defendant
IVANTIS, INC.