IRELL & MANELLA LLP
Morgan Chu (70446)
mchu@irell.com
Stephen Payne (310567)
spayne@irell.com
1800 Avenue of the Stars, Suite 900
Los Angeles, California 90067-4276
Telephone:   (310) 277-1010
Facsimile:   (310) 203-7199

Lisa S. Glasser (223406)
lglasser@irell.com
David McPhie (231520)
dmcphie@irell.com
840 Newport Center Drive, Suite 400
Newport Beach, California 92660-6324
Telephone:  (949) 760-0991
Facsimile:  (949) 760-5200

Attorneys for Plaintiff
GLAUKOS CORPORATION

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## SOUTHERN DIVISION

| | |
|---|---|
| GLAUKOS CORPORATION, a Delaware Corporation,<br><br>          Plaintiff,<br><br>     v.<br><br>IVANTIS, INC, a Delaware Corporation,<br><br>          Defendant. | Case No. 8:18-cv-00620-JVS-JDE<br><br>**PLAINTIFF GLAUKOS CORPORATION'S MEMORANDUM OF LAW IN OPPOSITION TO IVANTIS'S MOTION TO DISMISS**<br><br>Date: June 25, 2018<br>Time: 1:30 p.m.<br>Courtroom: 10C<br>Judge: Hon. James Selna |

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

I. INTRODUCTION .................................................................................................. 1

II. FACTUAL BACKGROUND ................................................................................ 3

III. ARGUMENT ....................................................................................................... 5

    A. Ivantis's Activities Are Not Protected by the Safe Harbor ...................... 6

        1. Ivantis Cannot Contradict Glaukos's Allegations of
           Infringement on a Motion to Dismiss ......................................... 6

        2. Ivantis Conflates Summary Judgment with a Motion to
           Dismiss ........................................................................................ 8

        3. Glaukos Is Not Required to Plead Facts Negating an
           Affirmative Defense Under the Safe Harbor ............................ 10

        4. Even if Ivantis's Declaration Is Considered, Ivantis's
           Activities Are Not Protected by the Safe Harbor ..................... 11

           (a) The Safe Harbor Does Not Protect Commercial
               Activities ........................................................................ 12

           (b) The Safe Harbor Does Not Protect Commercial
               Activities Merely Because a Party Collects Data on
               Such Activities ............................................................... 14

        5. Ivantis's Alternative Request for Summary Judgment Is
           Procedurally and Substantively Improper ................................ 16

    B. The Court Has Declaratory Judgment Jurisdiction ................................ 17

        1. Legal Standard for Declaratory Judgment Jurisdiction ........... 18

        2. Ivantis's Future Infringement Is of Sufficient Immediacy and
           Reality to Warrant Declaratory Judgment Jurisdiction ........... 18

        3. Declaratory Judgment Jurisdiction Does Not Undermine the
           Safe Harbor ............................................................................... 21

        4. Dismissal Would Serve No Purpose Other Than Delay ........... 22

IV. CONCLUSION .................................................................................................. 23

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abtox, Inc. v. Exitron Corp.*,
   122 F.3d 1019 (Fed. Cir. 1997) ..................................................................................8, 14

*Alphamed Pharm. Corp. v. Arriva Pharm., Inc.*,
   391 F. Supp. 2d 1148 (S.D. Fla. 2005) ......................................................................7

*Amgen Inc. v. Hospira, Inc.*,
   No. 15-839-RGA, 2017 WL 3927600 (D. Del. Sep. 7, 2017) ...............................12

*Amgen, Inc. v. F. Hoffman-LaRoche, Ltd.*,
   456 F. Supp. 2d 267 (D. Mass. 2006) ............................................................... *passim*

*Amgen, Inc. v. ITC*,
   565 F.3d 846 (Fed. Cir. 2009) ........................................................................9, 13, 14

*Amylin Pharm. Inc. v. Regents of Univ. of Minn.*,
   No. 96CV2061 JM (POR), 1998 WL 119511 (S.D. Cal. Jan. 15, 1998) ...................9

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986) ....................................................................................................10

*ASARCO, LLC v. Union Pacific R.R. Co.*,
   765 F.3d 999 (9th Cir. 2014) ...................................................................................7, 8

*Biogen, Inc. v. Schering AG*,
   954 F. Supp. 391 (D. Mass. 1996) .............................................................................12

*Bureerong v. Uvawas*,
   922 F. Supp. 1450 (C.D. Cal. 1996) ..........................................................................17

*Cat Tech LLC v. TubeMaster, Inc.*,
   528 F.3d 871 (Fed Cir. 2008) .....................................................................................18

*Chang v. Biosuccess Biotech Co., Ltd.*,
   76 F. Supp. 3d 1022 (C.D. Cal. 2014) .................................................................2, 13

*Classen Immunotherapies Inc. v. Somaxon Pharms.*,
   No. CV 12-06643-GAF-PLA, 2013 WL 9947386 (C.D. Cal. Apr. 11, 2013) ......................7, 8

*Con't Appliances, Inc. v. Brand Mktg. Grp.*,
   No. SACV 11-1909, 2012 WL 13020038 (C.D. Cal. Jun. 15, 2012) .......................10

*Eli Lilly & Co. v. Medtronic, Inc.*,
   496 U.S. 661 (1990) ...............................................................................................9, 14

*Envirocare Int'l., Inc. v. Essroc Cement Corp.*,
 No. 09-909, 2010 WL 1979365 (W.D. Pa. May 17, 2010)........................................................23

*Genentech v. Eli Lilly & Co.*,
 998 F.2d 931 (Fed. Cir. 1993)................................................................................................23

*Glaxo, Inc. v. Novopharm, Ltd.*,
 110 F.3d 1562 (Fed. Cir. 1997)..........................................................................................18, 22

*Gonzales v. Marriott Int'l, Inc.*,
 142 F. Supp. 3d 961 (C.D. Cal. 2015)......................................................................................6

*Hewlett-Packard Co. v. Acceleron LLC*,
 587 F.3d 1358 (Fed. Cir. 2009)................................................................................................17

*Hsu v. Puma Biotechnology, Inc.*,
 213 F. Supp. 3d 1275 (C.D. Cal. 2015)....................................................................................6

*Intermedics, Inc. v. Ventritex, Inc.*,
 775 F. Supp. 1269 (N.D. Cal. 1991) ....................................................................................8, 14

*Isis Pharm., Inc. v. Santaris Pharma A/S Corp.*,
 No. 3:11-CV-2214-GPC-KSC, 2014 WL 794811 (S.D. Cal. Feb. 27, 2014)..........................15

*La Grasta v. First Union Securities*,
 358 F.3d 840 (11th Cir. 2004).................................................................................................10

*Lang v. Pacific Marine & Supply Co., Ltd.*,
 895 F.2d 761 (Fed. Cir. 1990).................................................................................................18

*Laub v. Dep't of Interior*,
 342 F.3d 1080 (9th Cir. 2003).................................................................................................21

*Lee v. City of Los Angeles*,
 250 F.3d 668 (9th Cir. 2001).............................................................................................1, 6, 10

*Lifescan Scotland, Ltd. v. Shasta Techs., LLC*,
 No. 5:11-cv-04494 EJD, 2012 WL 2979028 (N.D. Cal. July 19, 2012)........................... *passim*

*Maryland Cas. Co. v. Pacific Coal & Oil Co.*,
 312 U.S. 270 (1941) ...............................................................................................................18

*Medical Diagnostic Laboratories LLC v. Protagonist Therapeutics, Inc.*,
 --- F. Supp. 3d ---, No. 17-cv-05572-EMC, 2018 WL 784456 (N.D. Cal. Feb.
 7, 2018)...................................................................................................................................21

*MedImmune, Inc. v. Genentech, Inc.*,
 549 U.S. 118 (2007) ...............................................................................................................18

*Merck kGaA v. Integra Life Sciences*,
545 U.S. 193 (2005) ...........................................................................................8, 14

*Metabolife Int'l, Inc. v. Wornick*,
264 F.3d 832 (9th Cir. 2001) ...............................................................................10

*Momenta Pharm., Inc. v. Amphastar Pharm., Inc.*,
686 F.3d 1348 (Fed. Cir. 2012) ...........................................................................15

*Momenta Pharm., Inc. v. Teva Pharm. USA, Inc.*,
809 F.3d 610 (Fed. Cir. 2015) ............................................................2, 12, 14, 15

*Ortho Pharm. Corp. v. Smith*,
Civ. A. No. 90-0242, 1990 WL 121353 (E.D. Pa. Aug. 17, 1990) .........................13

*Phigenix, Inc. v. Immunogen, Inc.*,
845 F.3d 1168 (Fed. Cir. 2017) ...........................................................................18

*Portland Retail Druggists Ass'n v. Kaiser Found. Health Plan*,
662 F.2d 641 (9th Cir. 1981) ...............................................................................17

*Proveris Sci. Corp. v. Innovasystems, Inc.*,
536 F.3d 1256 (Fed. Cir. 2008) ...........................................................................12

*Royal Palm Filmworks, Inc. v. Fifty-Six Hope Music, Ltd.*,
No. 17-2336 PSG, 2017 WL 5714718 (C.D. Cal. June 29, 2017) .........................17

*SanDisk Corp. v. STMicroelectronics, Inc.*,
480 F.3d 1372 (Fed. Cir. 2007) ...........................................................................23

*Scripps Clinic & Research Found. v. Gennentech, Inc.*,
666 F. Supp. 1379 (N.D. Cal. 1987)  ....................................................................13

*Snyders Heart Valve LLC v. St. Jude Medical S.C., Inc.*,
No. 4:16-cv-00812-ALM-KPJ, 2017 WL 4563076 (E.D. Tex. Aug. 29, 2017) .........11

*Soo Park v. Thompson*,
851 F.3d 910 (9th Cir. 2017).................................................................................6

*Telectronics Pacing Systems, Inc. v. Ventritex*,
982 F.2d 1520 (Fed. Cir. 1992) ...........................................................................20

*U.S. v. McGee*,
993 F.2d 184 (9th Cir. 1993).................................................................................10

*Van Patten v. Vertical Fitness Group, LLC*,
847 F.3d 1037 (9th Cir. 2017)...............................................................................11

*Vanda Pharms. Inc. v. West-Ward Pharms. Int'l Ltd.*,
887 F.3d 1117 (Fed. Cir. 2018) ...........................................................................17

Glaukos's Opposition to Ivantis's Motion to Dismiss,
Case No. 8:18-cv-00620-JVS-JDE

10516451

*Ventrassist Pty Ltd. v. Heartware, Inc.*,
    377 F. Supp. 2d 1278 (S.D. Fla. 2005)............................................................7, 10, 11

*Wyeth & Cordis Corp. v. Abbott Labs.*,
    No. 08-0230 (JAP), 2008 WL 2036805 (D.N.J. May 8, 2008)..................................19

**Statutes**

28 U.S.C. § 2201(a).........................................................................................................18

35 U.S.C. § 271 ..................................................................................................................4

35 U.S.C. § 271(a)..............................................................................................................4

35 U.S.C.§ 271(e)(1) ................................................................................................. *passim*

**Rules**

Fed. R. Civ. P. 12(d).........................................................................................................17

Fed. R. Civ. P. 56 ......................................................................................................10, 17

Local Rule 7-3 ..................................................................................................................16

# I.    INTRODUCTION

Glaukos Corporation is a medical technology company headquartered in San Clemente, California that has pioneered a new class of glaucoma treatment known as micro-invasive glaucoma surgery ("MIGS").  Defendant Ivantis, Inc. is a competitor that has begun importing and making its accused device, the Hydrus, in the United States for commercial use in Australia and New Zealand, and has repeatedly announced its expectation of FDA approval and a commercial sales launch in the United States in "mid-2018."

Ivantis moves pursuant to Rule 12(b)(6) to dismiss the portion of Glaukos's claims alleging current infringement.  Ivantis also moves pursuant to Rule 12(b)(1) to dismiss the portion of Glaukos's claims alleging imminent acts of future infringement.  To obtain dismissal of the complaint, Ivantis must prevail on both grounds.  As discussed below, neither has merit.

Ivantis's Rule 12(b)(6) argument is based on the affirmative defense of safe harbor, and relies entirely on a declaration purporting to contradict the allegations of the complaint.  This is improper.  *See Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001) ("[W]hen the legal sufficiency of a complaint's allegations is tested by a motion under Rule 12(b)(6), [r]eview is limited to the complaint . . . [a]ll factual allegations set forth in the complaint are taken as true and construed in the light most favorable to Plaintiffs.").  Ivantis does not claim that the complaint contains any allegations that establish its safe harbor affirmative defense.  To the contrary, the complaint expressly alleges that Ivantis's use of the accused products in Australia and New Zealand is commercial and not in support of FDA approval, and these allegations must be credited.  *See Amgen, Inc. v. F. Hoffman-LaRoche, Ltd.*, 456 F. Supp. 2d 267, 279 (D. Mass. 2006) ("[F]aced with a motion to dismiss, [the court] must presume—based on Amgen's allegations—that Roche is operating outside the safe harbor exemption.").

- 1 -

1    Moreover, even if Ivantis's declaration were appropriate to consider on a Rule
2  12(b)(6) motion (and it is not), the declaration does not approach the factual
3  showing necessary to prove a safe harbor affirmative defense.  Ivantis does not
4  dispute that it is supplying physicians in Australia and New Zealand with product
5  imported into, and manufactured in, the United States.  And Ivantis does not contend
6  that any of these physicians, much less all of them, are using the product in clinical
7  trials relating to FDA approval.  Rather, Ivantis alleges that physicians in those
8  countries who receive samples of the Hydrus provide unidentified "data" to Ivantis,
9  which Ivantis maintains in a database, some of which Ivantis posits could be
10  submitted to the FDA for some purpose.  Even if credited, this would be entirely
11  insufficient to prove on the pleadings that all of the Australia and New Zealand
12  activity is within the safe harbor, *i.e.*, "<u>solely</u> for uses <u>reasonably related to the</u>
13  <u>development and submission of information under a Federal law</u> which regulates the
14  manufacture, use or sale of drugs."  35 U.S.C. § 271(e).  As the Federal Circuit
15  explained in *Momenta Pharm., Inc. v. Teva Pharm. USA, Inc.*, 809 F.3d 610 (Fed.
16  Cir. 2015), otherwise infringing commercial activity is <u>not</u> considered "reasonably
17  related," and thus shielded by the safe harbor, merely because the infringer may
18  submit "routine" data from that activity to the FDA.  *Id*. at 619.  Further, "[w]hether
19  a 'use' falls within the Safe Harbor Exemption is a fact-based issue."  *Chang v.*
20  *Biosuccess Biotech Co., Ltd.*, 76 F. Supp. 3d 1022, 1036 (C.D. Cal. 2014).  It would
21  be improper to dismiss the complaint prior to discovery based on an affirmative
22  defense where there is, at minimum, a factual dispute regarding Ivantis's activities.
23    Second, Ivantis moves pursuant to Rule 12(b)(1) for dismissal of the portion
24  of Glaukos's claims that relate to future infringement, arguing that there is an
25  insufficient basis for declaratory judgment jurisdiction.  This argument necessarily
26  fails if Ivantis's Rule 12(b)(6) motion is denied, because a "case or controversy"
27  exists by virtue of Ivantis's present infringement.  However, even if the Court were
28  to accept Ivantis's Rule 12(b)(6) argument, this case can and should go forward

1  based on declaratory judgment jurisdiction, given Ivantis's imminent sales launch in

2  the United States.  Ivantis simply ignores—and does not dispute—its own

3  statements to investors and the medical community that it is in the late stages of the

4  FDA approval process and expects to launch commercial sales in the United States

5  in "mid-2018."  *See Lifescan Scotland, Ltd. v. Shasta Techs., LLC*, No. 5:11-cv-

6  04494 EJD, 2012 WL 2979028, at *6 n.1 (N.D. Cal. July 19, 2012) (finding

7  declaratory judgment jurisdiction where defendant made statements in SEC filings

8  regarding imminent commercial launch).  Further, this dispute is already

9  progressing, with Ivantis petitioning for *inter partes* review, and the parties already

10  engaged in case management discussions.  With this motion, Ivantis only seeks to

11  improperly delay Glaukos's ability to obtain redress for Ivantis's infringement.

12  **II.    FACTUAL BACKGROUND**

13       Ivantis was founded in 2007 after Glaukos had already begun its pivotal trial

14  for its groundbreaking MIGS product, the iStent® Trabecular Micro-Bypass Stent

15  ("iStent").  Complaint ¶ 17.  Well-aware of Glaukos's pioneering iStent, Ivantis

16  developed its own MIGS device, the Hydrus Microstent ("Hydrus"), to have the

17  same mechanism of action as the iStent and to target the same location in the eye

18  (Schlemm's canal).  Complaint ¶¶ 18–19.  Ivantis has made no secret of its intention

19  to compete directly with Glaukos, stating at industry conferences that it intends to

20  target the same part of the MIGS market occupied by Glaukos, and seeking the same

21  FDA indication for which the iStent was approved.  Complaint ¶¶ 19, 23.

22       Ivantis is already infringing the Glaukos patents-in-suit (U.S. Patent No.

23  6,626,858 ("the '858 Patent") and U.S. Patent No. 9,827,143 ("the '143 Patent")).

24  As alleged in the complaint, "the Hydrus is manufactured at Ivantis's assembly

25  facility in Irvine, California," and Ivantis is "supplying the Hydrus to physicians in

26  Australia and New Zealand for commercial purposes not reasonably related to the

27  development and submission of information to the U.S. Food and Drug

28  Administration (FDA)."  Complaint ¶ 2.  The complaint further alleges that Ivantis

is importing the Hydrus, Complaint ¶¶ 36, 44, and Ivantis's motion to dismiss expressly admits that Ivantis is indeed importing the Hydrus and completing final assembly in the United States, which also constitutes infringement under 35 U.S.C. § 271.[1]  *See* Dkt. No. 23, Decl. of Kenneth Galt ("Galt Decl.") ¶ 13.

Ivantis also plans to imminently engage in additional acts of infringement by commencing commercial sales of the Hydrus in the United States.  As alleged in the Complaint, "Ivantis has repeatedly represented it anticipates [a U.S. commercial launch] occurring early in the third quarter of 2018 or 'mid-2018.'"  Complaint ¶ 25. In 2017, Ivantis solicited and raised approximately $25 million for the specific purpose of "support[ing] US commercialization of the Hydrus Microstent upon its anticipated 2018 US Food and Drug Administration (FDA) approval."  *Id.*

Ivantis has made repeated, public statements that it intends to launch the Hydrus early in the third quarter of 2018.  For example, at a November 2017 conference, Ivantis gave a presentation entitled "Ivantis Preparing for U.S. Commercialization of Hydrus."  Complaint ¶ 3 (citing <https://ois.net/ivantis-preparing-us-commercialization-hydrus/>).  During that presentation, Ivantis stated, "around mid-year we are excited to launch [the Hydrus] in the United States."  *See* <https://ois.net/ivantis-preparing-us-commercialization-hydrus/>.  Ivantis's presentation was accompanied by a slide show which emphasized Ivantis's planned 2018 launch.  The slide titled "Ivantis Overview" stated that Ivantis is "preparing for U.S. commercialization in 2018."  *Id.*; Complaint ¶ 3.  Ivantis also showed a slide titled "Upcoming Milestones," which including a timeline showing "US launch" early in the third quarter of 2018:

---

[1] 35 U.S.C. § 271(a) states: "[W]hoever without authority makes, uses, offers to sell, or sells any patented invention, within the United States or imports into the United States any patented invention during the term of the patent therefor, infringes the patent."

1
2
3
4
5
6
7
8
9
10



11  *See* Complaint ¶ 3; <https://ois.net/ivantis-preparing-us-commercialization-hydrus/>

12  at slide 11 (annotation added).

13       In conjunction with its public statements, Ivantis has also hired a team to

14  support the U.S. commercial launch.  Ivantis "recently hired a VP of Marketing, a

15  Senior Director of Market Development, a Director of Manufacturing, a

16  Manufacturing Supervisor, a Senior Manufacturing Engineer, a Senior

17  Manufacturing Assembler, and on information and belief is currently filling other

18  new manufacturing-related positions for its assembly facility [in Irvine]."

19  Complaint ¶ 25.[2]  Critically, ***Ivantis's motion does not contradict any of these facts***.

20  Ivantis does not deny that it still expects to receive FDA approval and to launch the

21  Hydrus early in the third quarter of 2018.  Thus, there is no factual dispute that

22  Ivantis plans to imminently begin commercial sales of the Hydrus in the U.S.

23  **III.   ARGUMENT**

24       Ivantis cannot prevail on its motion to dismiss unless it establishes both

25  prongs of the motion:  (1) the Rule 12(b)(6) challenge directed to Glaukos's

26  allegations of current infringement, and (2) the Rule 12(b)(1) challenge contesting

27  _____

28       [2] Since the complaint was filed, Glaukos understands that Ivantis has also
hired a Vice President of Sales.

1   that its imminent future acts of infringement constitute a "case or controversy."  As

2   detailed below, both prongs of Ivantis's motion lack merit and should be rejected.

3         **A.**    **Ivantis's Activities Are Not Protected by the Safe Harbor**

4             1.   <u>Ivantis Cannot Contradict Glaukos's Allegations of Infringement</u>

5                  <u>on a Motion to Dismiss</u>

6        Ivantis attempts to contradict Glaukos's allegations of infringement by

7   submitting extrinsic evidence in the form of a declaration, arguing that Ivantis has

8   an affirmative defense to infringement because its activities are purportedly

9   protected by the safe harbor (35 U.S.C.§ 271(e)(1)).

10        Ivantis's declaration may not be considered for purposes of a Rule 12(b)(6)

11   motion.  "[W]hen the legal sufficiency of a complaint's allegations is tested by a

12   motion under Rule 12(b)(6), '[r]eview is limited to the complaint.'" *Lee v. City of*

13   *Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001); *see also Hsu v. Puma*

14   *Biotechnology, Inc.*, 213 F. Supp. 3d 1275, 1280 (C.D. Cal. 2015) ("As a general

15   rule, parties can't present (and courts can't consider) evidence outside of the

16   complaint when deciding a Rule 12(b)(6) motion to dismiss.").  The only exceptions

17   to this rule are materials that are incorporated by reference into the complaint or are

18   judicially noticeable.  *Id.* at 1280–81.  Neither of these exceptions is applicable here.

19   Further, "factual challenges to a plaintiff's complaint have no bearing on the legal

20   sufficiency of the allegations." *Lee*, 250 F.3d at 688.  A Rule 12(b)(6) motion "tests

21   the legal sufficiency of the claims asserted in the complaint." *Gonzales v. Marriott*

22   *Int'l, Inc.*, 142 F. Supp. 3d 961, 967 (C.D. Cal. 2015). "The court must accept all

23   factual allegations pleaded in the complaint as true, and construe them and draw all

24   reasonable inferences from them in favor of the nonmoving party." *Id.*; *see also Soo*

25   *Park v. Thompson*, 851 F.3d 910, 918 (9th Cir. 2017).

26        Courts consistently reject attempts to dismiss a complaint by submitting a

27   declaration purporting to establish the affirmative defense of safe harbor.  For

28   example, in *LifeScan Scotland v. Shasta Techs., LLC*, No. 5:11-cv-04494 EJD, 2012

- 6 -

WL 2979028 (N.D. Cal. July 19, 2012), the plaintiff alleged that defendants were stockpiling the infringing product for commercial purposes, and defendants submitted a declaration stating that Plaintiff's allegation was false and that the stockpile was created only to test the product for purposes of FDA approval.  *Id.* at *6.  The court denied the motion and held that, at the pleadings stage, "the court must presume—based on [plaintiff]'s allegations—that [defendants] are operating outside the safe harbor exemption." *Id.* at *9; *see also Amgen, Inc. v. F. Hoffman-LaRoche, Ltd.*, 456 F. Supp. 2d 267, 273 (D. Mass. 2006) (accepting as true allegations that defendants' actions were outside the safe harbor).  Similarly, in *Ventrassist Pty Ltd. v. Heartware, Inc.*, 377 F. Supp. 2d 1278 (S.D. Fla. 2005), the defendant moved to dismiss based on three declarations asserting a safe harbor defense.  *Id.* at 1286.  The Court denied the motion, explaining that Defendant's motion was "predicated on a [ ] misconception of a Rule 12(b)(6) motion," and that the court could not consider materials outside the pleadings that contradicted the allegations in the complaint.  *Id.*

Although Ivantis cites two examples of courts granting a Rule 12(b)(6) motion on safe harbor grounds, both are materially distinguishable.  Both cases make clear that such action is proper only where the defense is "clear <u>from the face of the complaint</u>," because the allegations of the complaint themselves affirmatively demonstrate that the activities are protected by the safe harbor.  *Classen Immunotherapies Inc. v. Somaxon Pharms.*, No. CV 12-06643-GAF-PLA, 2013 WL 9947386, at *2 n.1 (C.D. Cal. Apr. 11, 2013) (emphasis added); *see also Alphamed Pharm. Corp. v. Arriva Pharm., Inc.*, 391 F. Supp. 2d 1148, 1160 n.6 (S.D. Fla. 2005) ("[F]rom the face of the TAC, the Court is able to determine that the complained-of activities are protected by the safe harbor.").  Accordingly, these cases merely recite the general rule that "[d]ismissal under Rule 12(b)(6) on the basis of an affirmative defense is proper only if the defendant shows some obvious bar to securing relief on the face of the complaint." *ASARCO, LLC v. Union Pacific*

*R.R. Co.*, 765 F.3d 999, 1004 (9th Cir. 2014).  For example, in *Classen* the plaintiff specifically alleged that the defendant "infringed the patents in conjunction with preparation of [its] New Drug Application" to the FDA.  2013 WL 9947386, at *1. The Court could therefore conclude that "the safe harbor defense is clear from the face of the [complaint]."  *Id.* at *2 n.1.  On the other hand, "[i]f, from the allegations of the complaint . . . , an asserted defense raises disputed issues of fact, dismissal under Rule 12(b)(6) is improper."  *ASARCO*, 765 F.3d at 1004.

Here, in contrast, Glaukos's allegations that Ivantis is importing and making the Hydrus for commercial purposes, including distribution in Australia and New Zealand that is purely commercial and not for the purpose of obtaining FDA approval, must be credited.  *See LifeScan*, 2012 WL 2979028, at *9; *Amgen v. F. Hoffman-LaRoche*, 456 F. Supp. 2d at 279.  Ivantis's sole basis for contradicting these allegations are the additional facts alleged in its declaration—Ivantis does not identify <u>any</u> statement in the complaint that it argues supports its affirmative safe harbor defense.  The allegations in the complaint are expressly to the contrary, stating that Ivantis is "supplying the Hydrus to physicians in Australia and New Zealand for commercial purposes not reasonably related to the development and submission of information to the U.S. Food and Drug Administration (FDA)." Complaint ¶ 2.  Because the contrary facts in Ivantis's declaration cannot be considered on a Rule 12(b)(6) motion, its motion must be denied.

### 2.   Ivantis Conflates Summary Judgment with a Motion to Dismiss

Ivantis's motion also conflates cases decided at summary judgment with those addressing a motion to dismiss.  Indeed, except for the two cases discussed above, every safe harbor case cited by Ivantis was decided on summary judgment or a post-trial motion, after the parties had an opportunity to seek discovery regarding the defense.  *See Merck kGaA v. Integra Life Sciences*, 545 U.S. 193, 201 (2005) (post-trial motion); *Abtox, Inc. v. Exitron Corp.*, 122 F.3d 1019, 1029–30 (Fed. Cir. 1997) (cross-motions for summary judgment); *Intermedics, Inc. v. Ventritex, Inc.*, 775 F.

Supp. 1269, 1272 (N.D. Cal. 1991) (motions for summary judgment); *Eli Lilly & Co. v. Medtronic, Inc.*, 496 U.S. 661, 664 (1990) (directed verdict); *Amgen, Inc. v. ITC*, 565 F.3d 846, 848 (Fed. Cir. 2009) (summary judgment).  Here, in contrast, there has been no discovery and Glaukos has not had a full and fair opportunity to explore and rebut Ivantis's claims.

It is one thing to adjudicate a safe harbor defense at the summary judgment stage, after the parties have obtained discovery and there is no genuine dispute regarding the facts underlying the defense.  It is quite another—and entirely improper—to evaluate the safe harbor defense based solely on a declaration purporting to contradict the complaint, where the defendant has provided no discovery regarding its affirmative defense. *See Lifescan*, 2012 WL 2979028, at *9 (distinguishing prior cases decided on summary judgment "consistent with what discovery revealed" from those decided at the motion to dismiss stage); *Amgen v. F. Hoffman-LaRoche*, 456 F. Supp. 2d at 279 ("In Hoechst, this Court made its ruling on a motion for summary judgment, holding, consistent with what discovery revealed, that all the defendant's current acts were protected by the safe harbor provision. The Court has made no such ruling in this action and, faced with a motion to dismiss, must presume—based on Amgen's allegations—that Roche is operating outside the safe harbor exemption."); *Amylin Pharm. Inc. v. Regents of Univ. of Minn.*, No. 96CV2061 JM (POR), 1998 WL 119511, at *3 (S.D. Cal. Jan. 15, 1998) ("The court finds that there exists factual disputes between the parties as to . . . the applicability of the safe harbor under 35 U.S.C. § 271(e)(1) that should not be decided at this time.")

Further, even if this Court concludes that Ivantis's evidence is properly considered at the motion-to-dismiss stage, Glaukos would at the very minimum be entitled to, and hereby seeks, discovery necessary to respond, including document discovery and a Rule 30(b)(6) deposition to identify additional factual evidence demonstrating that (1) Ivantis's activity in Australia and New Zealand is for the

1  commercial purpose of sampling in order to seed the market, train physicians and

2  sales representatives, and otherwise market the Hydrus, and (2) data from the

3  SPECTRUM database obtained from its recent provision of free samples to

4  physicians has not been submitted in any of its FDA submission or, if submitted,

5  was merely anecdotal or "routine" data not required for approval.  *See Ventrassist,*

6  377 F. Supp. 2d at 1285, 1288 (finding dismissal and summary judgment on safe

7  harbor improper prior to discovery); *Con't Appliances, Inc. v. Brand Mktg. Grp.*,

8  No. SACV 11-1909, 2012 WL 13020038, at *1 (C.D. Cal. Jun. 15, 2012)

9  (permitting 30(b)(6) deposition in response to Rule 12 motion.).  Indeed, Federal

10  Rule of Civil Procedure 56(d) requires the Court to permit discovery "where the

11  nonmoving party has not had the opportunity to discover information that is

12  essential to its opposition."  *Metabolife Int'l, Inc. v. Wornick*, 264 F.3d 832, 846 (9th

13  Cir. 2001) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 n.5 (1986)).[3]

14              3.    <u>Glaukos Is Not Required to Plead Facts Negating an Affirmative</u>

15                    <u>Defense Under the Safe Harbor</u>

16      The section "271(e)(1) safe harbor provision is an affirmative defense that

17  must be asserted by the defendant."  *See Amgen v. F. Hoffman-LaRoche*, 456 F.

18  Supp. 2d at 273.  A party need only plead the prima facie elements of its claim; it is

19  "not required to plead on the subject of an anticipated affirmative defense."  *U.S. v.*

20  *McGee*, 993 F.2d 184, 187 (9th Cir. 1993); *see also La Grasta v. First Union*

21  *Securities*, 358 F.3d 840, 845 (11th Cir. 2004) ("[P]laintiff[s][are] not required to

22  negate an affirmative defense in [their] complaint.").

23      Because Glaukos is not required to plead allegations concerning the safe

24  harbor at all, there is no merit to Ivantis's argument that Glaukos's allegations are

25  "insufficient," or that Glaukos's allegations are not "plausible."  Glaukos has

26

27  _____

     [3] Rule 56(d) was renumbered from the previous Rule 56(f) and "carries
28  forward without substantial change the provisions of former subdivision (f)."  *See*
     Fed. R. Civ. P. 56, Advisory Committee Notes, 2010 Amendment.

unquestionably pled all of the elements of patent infringement: Ivantis is at least importing and making the Hydrus in the United States (Complaint ¶¶ 2, 24–25, 36, 44); the Hydrus meets the requirements of at least one claim of each of the '858 and '143 Patents (Complaint ¶¶ 26–32); and Ivantis is engaged in these activities without Glaukos's authorization (Complaint ¶ 23).

Glaukos is not required to plead, in addition to the elements of its claim, facts negating the safe harbor affirmative defense. *See Amgen v. F. Hoffman-LaRoche*, 456 F. Supp. 2d at 273 ("Since the Section 271(e)(1) provision is properly considered a defense rather than an element of a claim of infringement, Amgen's complaint is properly pleaded."); *Snyders Heart Valve LLC v. St. Jude Medical S.C., Inc.*, No. 4:16-cv-00812-ALM-KPJ, 2017 WL 4563076, at *5 (E.D. Tex. Aug. 29, 2017) (holding that Plaintiff was not required to "negate Defendants' affirmative [safe harbor] defense" in its complaint); *Ventrassist*, 377 F. Supp. 2d at 1286–87 (rejecting argument that Plaintiff was obligated to plead facts showing that Defendant's activities were not protected by safe harbor as an "attempt[] to foist on Plaintiffs a pleading requirement that does not exist"). The burden is on Ivantis to plead and prove its affirmative defenses, which is a yet further basis upon which Ivantis's 12(b)(6) motion should be denied. *See, e.g., Van Patten v. Vertical Fitness Group, LLC*, 847 F.3d 1037, 1044 (9th Cir. 2017).

### 4. Even if Ivantis's Declaration Is Considered, Ivantis's Activities Are Not Protected by the Safe Harbor

Section 271(e)(1) provides that it "shall not be an act of infringement to make, use, offer to sell, or sell within the United States or import into the United States a patented invention . . . <u>solely</u> for uses reasonably related to the development and submission of information under a Federal law which regulates the manufacture, use, or sale of drugs" (emphasis added). The purpose of the safe harbor is to "eliminate de facto patent term extension[s] . . . by providing a safe harbor that immunized competitors from infringement" for activities related to FDA approval.

1  *Proveris Sci. Corp. v. Innovasystems, Inc.*, 536 F.3d 1256, 1261 (Fed. Cir. 2008);

2  *see also Momenta Pharm., Inc. v. Teva Pharm. USA, Inc.* ("*Momenta II*"), 809 F.3d

3  610, 618 (Fed. Cir. 2015) (purpose of the safe harbor is "to facilitate market entry

4  upon patent expiration").

5                    (a)      *The Safe Harbor Does Not Protect Commercial Activities*

6           The safe harbor does not protect a competitor from infringement liability for

7  beginning commercial activities before the patent term expires.  *See Momenta II*,

8  809 F.3d at 618 ("This section does not permit the commercial sale of a patented

9  drug by the party using the drug to develop such information.") (quoting H.R. Rep.

10  No. 98-857(l)).  Nor does the safe harbor protect attempts to ramp-up for

11  commercial sales prior to market entry, as such activity is not related to FDA

12  approval.  *See Amgen Inc. v. Hospira, Inc.*, No. 15-839-RGA, 2017 WL 3927600, at

13  *2–3 (D. Del. Sep. 7, 2017) (denying summary judgment under the safe harbor

14  based on evidence that the Defendant had manufactured the accused product and its

15  documents indicated some lots were for commercial inventory); *Lifescan*, 2012 WL

16  2979028, at *9 (improper to conclude at the pleading stage that stockpiling of

17  infringing product was related to FDA approval as opposed to preparing for

18  commercial sales); *Biogen, Inc. v. Schering AG*, 954 F. Supp. 391, 396 (D. Mass.

19  1996) (safe harbor did not apply where defendant had "done far more than merely

20  do clinical trials for submission to the FDA, it had spent $24 million to stockpile and

21  prepare to market [the accused infringing product] immediately upon the

22  anticipated, imminent FDA approval").  Indeed, the Federal Circuit has held that it

23  would be a "manifest injustice" to "extend[] immunity under § 271(e)(1) to

24  encompass activities related to ongoing commercial manufacture."  *Momenta II*, 809

25  F.3d at 621.

26           Glaukos alleges, and Ivantis admits, that it is importing and assembling the

27  Hydrus in the United States, and then supplying Hydrus devices to physicians in

28  Australia and New Zealand.  Complaint ¶ 2; Galt Decl. ¶ 13.  Ivantis further admits

that "an Australian subsidiary of Ivantis is preparing to commercially launch the Hydrus in Australia."  Galt Decl. ¶ 14.  Taking Glaukos's allegations as true and drawing all reasonable inferences in favor of Glaukos, Ivantis's activities in Australia are clearly for the purpose of facilitating market entry in Australia.  Indeed, even assuming it is true that Ivantis is not currently charging physicians for the product, this would simply be consistent with common marketing strategy in the medical device field to distribute free product in advance of a sales launch.  There is more than a plausible inference that Ivantis's distribution of the Hydrus in Australia and New Zealand is for the commercial purpose of seeding the market, training physicians so that they will become customers of Ivantis, and marketing the device.  These types of commercial activities are not protected by the safe harbor merely because Ivantis has a request for FDA approval pending. *See Amgen v. ITC*, 565 F.3d at 852 (each allegedly infringing activity must be examined separately to determine whether safe harbor applies).

The District Court for the Central District of California examined a similar situation in *Chang*, where the plaintiff "presented evidence that supports a claim that [defendant] has imported and used [the accused product] for reasons that go beyond seeking FDA approval."  76 F. Supp. 3d at 1036.  The Court held that where there is evidence of multiple activities—some related to FDA approval and some not—the safe harbor does not extend to those activities unrelated to FDA approval.  *Id.*; *see also Scripps Clinic & Research Found. v. Gennentech, Inc.*, 666 F. Supp. 1379, (N.D. Cal. 1987) (safe harbor did not protect all activities where some were related to FDA approval but others were related to plans for manufacturing on a commercial scale), *rev'd in part on other grounds*, 927 F.2d 1565 (Fed. Cir. 1991); *Ortho Pharm. Corp. v. Smith*, Civ. A. No. 90-0242, 1990 WL 121353, at *23 (E.D. Pa. Aug. 17, 1990) (safe harbor does not protect "promotional or commercial use in the U.S. or abroad").

The *Amgen v. ITC* case, 565 F.3d 846—cited by Ivantis—actually contradicts Ivantis's position.  There, the Federal Circuit remanded to the International Trade Commission because it found there was a factual dispute as to whether the activities in question were directed toward FDA approval or to "infringement analysis experiments, ***market-seeding trials***, and litigation-related activity" not protected by the safe harbor.  *Id*. at 852 (emphasis added).  In other words, *Amgen v. ITC* affirms the proposition that activities unrelated to FDA approval are not protected, and that the analysis of which activities are protected and which are not is intensively factual in this context.  The other cases relied on by Ivantis similarly do not support its position, but rather merely hold that actual pre-clinical and clinical trials are protected.  *See Merck*, 545 U.S. at 203 (considering whether certain types of data collected in clinical trials were connected to FDA approval); *Abtox*, 122 F.3d at 1027 (considering whether pre-clinical data "necessary for filing an application with the [FDA]" was protected by the safe harbor, where defendant had not yet filed application for FDA approval or marketed the device); *Intermedics*, 775 F. Supp. at 1282–85 (discussing application of safe harbor to devices for use in clinical trials); *see also Eli Lilly*, 496 U.S. at 669 (holding that safe harbor can apply to medical devices).  Unlike those cases, here the alleged infringement is not for purposes of a clinical trial.  Rather, the complaint alleges that Ivantis is engaged in infringing behavior in the United States supporting commercial activities in at least two countries unrelated to any clinical trial or FDA application.

> (b)   *The Safe Harbor Does Not Protect Commercial Activities Merely Because a Party Collects Data on Such Activities*

Ivantis cannot shoehorn its commercial activities into the safe harbor by merely collecting data on such activities.  In *Momenta II*, the Federal Circuit considered whether the defendant's use of a patented manufacturing process was protected by the safe harbor, where the defendant collected quality control information regarding the patented manufacturing process pursuant to FDA

1  regulations.  809 F.3d at 620.  The Court held that the manufacturer's activities were

2  not protected by the safe harbor notwithstanding this data collection, because the

3  safe harbor did not "encompass activities related to ongoing commercial

4  manufacture" and did not extend to collection or submission of "routine" data not

5  necessary to the "filing an application with the [FDA]."  *Id.* at 619, 621.  Just like

6  the defendant in *Momenta*, Ivantis is engaged in the infringing importation and

7  manufacture of Hydrus devices so that it can use such devices in Australia and New

8  Zealand for commercial purposes.  Ivantis cannot gain protection for those

9  otherwise commercial activities simply by collecting routine data on such activities,

10  or by claiming that it could include such data in future FDA submissions.

11      Further, Ivantis is not entitled to the protection of the safe harbor for

12  voluntary data collection unrelated to FDA approval.  "The use of a patented

13  invention to obtain information that may, but is not required to, be reported to the

14  FDA . . . does not fall within the safe harbor."  *Isis Pharm., Inc. v. Santaris Pharma*

15  *A/S Corp.*, No. 3:11-CV-2214-GPC-KSC, 2014 WL 794811, at *10 (S.D. Cal. Feb.

16  27, 2014); *Momenta Pharm., Inc. v. Amphastar Pharm., Inc. ("Momenta I")*, 686

17  F.3d 1348, 1358 (Fed. Cir. 2012) (distinguishing "studies . . . not mandated by the

18  FDA" from "information . . . generated voluntarily by the manufacturer").  Ivantis's

19  own declaration fails to establish that the specific data collected in Australia and

20  New Zealand is related to any requirement for FDA approval, or even what that data

21  consists of.  Ivantis admits that the "SPECTRUM Data Registry" is its own creation,

22  not an official FDA database, part of any FDA-sanctioned clinical trial, or required

23  by any law related to FDA approval.  Galt Decl. ¶ 11.  Nor does Ivantis state that the

24  FDA has requested any SPECTRUM data from Australia and New Zealand or that

25  Ivantis is using the Australia and New Zealand data in any clinical trial.  Galt Decl.

26  ¶ 11.  To the contrary, the SPECTRUM database is not listed on clinicaltrials.gov

27

28

1  and, according to the FDA's website, none of Ivantis's active clinical trials include

2  Australia or New Zealand.[4]

3      While Ivantis does claim that some, unspecified data in SPECTRUM has

4  been submitted to the FDA in the past, Ivantis does not state that the specific data

5  collected in Australia or New Zealand has or will be submitted to the FDA.  Ivantis

6  merely posits that the data *could* hypothetically be submitted to the FDA.  Galt

7  Decl. ¶ 12.  Nor does Ivantis identify any specific statutory requirement to which the

8  Australia and New Zealand data relates.  Galt Decl. ¶ 12.  The FDA article cited by

9  Ivantis in its motion is merely a generic guidance document to clarify how the FDA

10  "evaluate[s] real-world data to determine whether they are sufficient for generating

11  the types of real-world evidence that can be used in FDA regulatory decision-

12  making for medical devices."  *See* FDA, Use of Real-World Evidence to Support

13  Regulatory Decision-Making for Medical Devices, at 4 (cited in Ivantis Mot. at 4).

14  The document says nothing about the types of uses that are protected by the safe

15  harbor, and does not contain any requirement related to SPECTRUM or Ivantis.

16      5.   Ivantis's Alternative Request for Summary Judgment Is

17           Procedurally and Substantively Improper

18      Ivantis also requests that, in the alternative, the Court grant summary

19  judgment of non-infringement based on the safe harbor.  This request is

20  procedurally and substantively improper, and should be denied.

21      First, Ivantis has not complied with any of the local rules governing summary

22  judgment motions, which itself is fatal to the motion.  Ivantis did not meet and

23  confer or even notify Glaukos that it intended to seek summary judgment, as

24  required by Local Rule 7-3.  Ivantis failed to lodge a "Statement of Uncontroverted

25

26  _____

    [4] *See* <https://www.clinicaltrials.gov/ct2/show/record/NCT02024464?term=
27  ivantis& rank=2> (comparison study); <https://www.clinicaltrials.gov/ct2/show
    /record/NCT01539239?term=ivantis&rank=6> (HORIZON study).
28

1   Facts and Conclusions of Law" and a proposed judgment as required by Local Rule
2   56-1.  Ivantis also failed to request summary judgment in its "Notice of Motion and
3   Motion to Dismiss."  *See* Dkt. No. 21.

4        Second, as discussed above in detail, Ivantis's declaration does not approach
5   the showing that would be necessary to establish that all of its activities are
6   protected by the safe harbor.

7        Third, Glaukos has not had any opportunity to seek discovery on the subject
8   matter of Ivantis's purported safe harbor defense, which is largely in the possession
9   of Ivantis and not available to Glaukos.  *See Portland Retail Druggists Ass'n v.*
10  *Kaiser Found. Health Plan*, 662 F.2d 641, 645 (9th Cir. 1981) ("Before summary
11  judgment may be entered against a party, that party must be afforded . . . an
12  adequate opportunity to respond.  Implicit in the "opportunity to respond" is the
13  requirement that sufficient time be afforded for discovery"); *Royal Palm Filmworks,*
14  *Inc. v. Fifty-Six Hope Music, Ltd.*, No. 17-2336 PSG (FFMx), 2017 WL 5714718, at
15  *1 (C.D. Cal. June 29, 2017); *see also* Fed. R. Civ. P. 12(d) (permitting Court to
16  convert Rule 12(b)(6) motion to a Rule 56 motion only after all parties are "given a
17  reasonable opportunity to present all the material that is pertinent to the motion").
18  Thus, the Court should deny the motion or, at the very minimum, defer it to a future
19  date after document and deposition discovery regarding the defense have been
20  taken.  *See Bureerong v. Uvawas*, 922 F. Supp. 1450, 1481–82 (C.D. Cal. 1996).

21        **B.     The Court Has Declaratory Judgment Jurisdiction**

22        As discussed above, the Court should deny Ivantis's Rule 12(b)(6) motion.  If
23  the Court does so, then the Court has subject matter jurisdiction based on Ivantis's
24  present infringement and there is no need to reach the question of whether there is
25  also declaratory judgment jurisdiction.  *See Vanda Pharms. Inc. v. West-Ward*
26  *Pharms. Int'l Ltd.*, 887 F.3d 1117, 1125 n.5 (Fed. Cir. 2018); *Hewlett-Packard Co.*
27  *v. Acceleron LLC*, 587 F.3d 1358, 1362 (Fed. Cir. 2009) ("Of course, if 'a party has
28  actually been charged with infringement of the patent, there is, *necessarily*, a case or

controversy adequate to support [declaratory judgment] jurisdiction.'").  However, as discussed below, declaratory judgment jurisdiction also exists based on Ivantis's imminent commercial launch in the United States.

### 1. Legal Standard for Declaratory Judgment Jurisdiction

The Declaratory Judgment Act provides that "[i]n a case of actual controversy," a federal court "may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."  28 U.S.C. § 2201(a).  "[A]ctual controversy" refers to Article III's "cases" or "controversies" requirement, *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 120 (2007)—the requirement underlying the standing doctrine.  *Phigenix, Inc. v. Immunogen, Inc.*, 845 F.3d 1168, 1171 (Fed. Cir. 2017).  A court must consider "all the circumstances" surrounding a dispute to determine whether "there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *MedImmune*, 549 U.S. at 127 (quoting *Maryland Cas. Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273 (1941)).

### 2. Ivantis's Future Infringement Is of Sufficient Immediacy and Reality to Warrant Declaratory Judgment Jurisdiction

A patent owner may bring an action for declaratory judgment of infringement based on imminent future infringement of its patent rights.  *See Lang v. Pacific Marine & Supply Co., Ltd.*, 895 F.2d 761, 763 (Fed. Cir. 1990).  A controversy is sufficiently substantial where a party has made "meaningful preparation for making or using" the infringing product, *see Cat Tech LLC v. TubeMaster, Inc.*, 528 F.3d 871, 881 (Fed Cir. 2008), or has "systematically attempt[ed] to meet the applicable regulatory requirements" and will begin committing infringing acts in the near future, *see Glaxo, Inc. v. Novopharm, Ltd.*, 110 F.3d 1562, 1571 (Fed. Cir. 1997).

Ivantis's activities fall squarely within the category of actions that give rise to declaratory judgment jurisdiction.  In *Lifescan*, the court held that Defendants'

future infringement was sufficiently immediate where the defendant represented that it intended to launch the infringing product later that year, had taken steps to prepare for commercialization, and was in the final stages of FDA approval.  2012 WL 2979028, at *5–7.  The Court likewise found that the reality requirement was satisfied where the Defendant refused to change course toward commercialization despite warnings from the patent owner.  *Id.* at *7.  This case presents nearly identical facts.  Ivantis has publicly announced that it intends to commercially launch the Hydrus in the third quarter of 2018, which is only a few months away.  Complaint ¶ 3.  Indeed, according to the Galt Declaration, Ivantis has resolved the only issue identified by the FDA, and the 180-day clock has been running for some time.  Galt Decl. ¶ 7.  Ivantis has also completed fundraising sufficient to support its commercial launch, hired staff needed to produce and sell the Hydrus on a mass scale, and proceeded despite knowledge of Glaukos's patents and industry reports indicating its infringement of Glaukos's patents.  Complaint ¶¶ 22–23, 25; Galt Decl. ¶ 6.

Similarly, in *Wyeth & Cordis Corp. v. Abbott Labs.*, No. 08-0230 (JAP), 2008 WL 2036805 (D.N.J. May 8, 2008), the court found that declaratory judgment jurisdiction was appropriate despite the fact that the FDA had yet to approve the infringing product, because defendant was already marketing the infringing product abroad and had plans to begin sales in the United States in the next few quarters.  *Id.* at *4.  The same is true here.  Ivantis has already begun commercial distribution in Australia and New Zealand, and has announced it will launch in the United States in the next few months.

*Amgen v. F. Hoffman-LaRoche* is also instructive.  There, the accused infringer had completed several clinical trials and had filed its application for approval of the accused product.  456 F. Supp. 2d 267, 270.  "These acts, coupled with the construction of a manufacturing facility and the hiring of key personnel, whose purpose is, in part, to develop marketing and sales strategies together

1  establish the existence of the immediacy [requirement]." *Id*. at 277.  As in *Amgen v.*

2  *F. Hoffman-LaRoche*, Ivantis has filed its PMA, constructed a manufacturing

3  facility, and hired key personnel to develop the commercialization of the Hydrus.

4  Complaint ¶ 25.  Indeed, the court in *Amgen* found infringement "sufficiently

5  imminent" even where approval was 20-24 months away—far longer than the 2-3

6  months to approval for Ivantis.

7       Ivantis's argument that commercialization and FDA approval of the Hydrus

8  are too "speculative and contingent" to support declaratory judgment jurisdiction is

9  contradicted by Ivantis's own public statements.  Ivantis's CEO publicly stated at a

10  leading industry conference that Ivantis is "preparing for U.S. commercialization in

11  2018" and included a timeline showing a "US launch" in the third quarter of 2018.

12  Complaint ¶ 3 (citing "Ivantis Preparing for U.S. Commercialization of Hydrus"

13  video at <https://ois.net/ivantis-preparing-us-commercialization-hydrus/>).  Ivantis

14  has likewise hired sales, marketing and manufacturing staff to support U.S.

15  launch—an activity it would hardly undertake at this juncture if it truly believed that

16  approval were speculative, uncertain, and far away.  Complaint ¶ 25.  These are

17  precisely the types of public actions and statements that were found sufficient to

18  establish declaratory judgment jurisdiction in *Lifescan*.  2012 WL 2979028, at *6

19  n.1 (statements in SEC filings regarding expected commercialization supported the

20  existence of a substantial controversy).  Here, as in *Lifescan*, Ivantis does not contest

21  the accuracy of any of its own statements regarding its expected timing for approval

22  and launch.  Ivantis merely states that it received (and resolved) a notice of

23  deficiency—a common occurrence—and acknowledges that the 180-day FDA

24  review period is well underway.

25       The cases cited by Ivantis are materially distinguishable as they involve

26  situations where FDA approval was years away.  In *Telectronics Pacing Systems,*

27  *Inc. v. Ventritex*, 982 F.2d 1520 (Fed. Cir. 1992), the defendant "had only recently

28  begun clinical trials, and was years away from potential FDA approval."  *Id*. at

1527.  Ivantis has already completed clinical trials and is at most months away from

FDA approval, not years.  Complaint ¶¶ 3, 25; Galt Decl. ¶¶ 7, 9.  Similarly, in

*Medical Diagnostic Laboratories LLC v. Protagonist Therapeutics, Inc.*, --- F.

Supp. 3d. ---, No. 17-cv-05572-EMC, 2018 WL 784456 (N.D. Cal. Feb. 7, 2018),

the defendant had not yet obtained clinical trial results or FDA approval, and had

not even decided whether or not to commercialize the product.  *Id*. at *7.  Ivantis has

completed and submitted its clinical trials, is at the final stages of FDA approval,

and has already announced its plans to commercialize the Hydrus as early as July

2018.

Moreover, even if the exact date of FDA approval is uncertain, the immediacy

and reality requirements do not require absolute certainty, much less clairvoyance.

*Lifescan*, 2012 WL 2979028, at *6.  Regardless of the exact date, Ivantis does not

even attempt to deny any of its own prior statements regarding its expectations of

FDA approval and launch.  For example, Ivantis does not dispute any of its own

prior statements that it expects to receive FDA approval in the third quarter of 2018,

that it intends to execute a U.S. commercial sales launch immediately upon

approval, that it is ready for commercialization, and that these events are estimated

to occur early in the third quarter of 2018.[5]  Accordingly, there is no factual dispute

as to the imminence and reality of Ivantis's planned infringement.

3.  Declaratory Judgment Jurisdiction Does Not Undermine the Safe Harbor

Ivantis also argues that allowing Glaukos to bring a declaratory judgment suit

would undermine the safe harbor by restricting the ability of competitors to

promptly launch their product upon patent expiration.  The Federal Circuit has

---

[5] If Ivantis's motion could be construed as disputing these facts, Glaukos requests jurisdictional discovery, including documents and a 30(b)(6) deposition regarding the current status of Ivantis's request for FDA approval, its activities preparing for launch in the U.S. or abroad, and related communications to customers and investors.  *Laub v. Dep't of Interior*, 342 F.3d 1080, 1093 (9th Cir. 2003).

already rejected Ivantis's argument.  In *Glaxo*, the patentee Glaxo sued Novopharm

for a declaratory judgment that, upon receiving FDA approval of its Abbreviated

New Drug Application ("ANDA"), Novopharm would infringe Glaxo's method-of-

production patent.  *Glaxo*, 110 F.3d at 1570.  The Federal Circuit held that "the

district court properly exercised its jurisdiction to consider Glaxo's declaratory

judgment claim."  *Id.* at 1571.  The court explained that "the protected status of

Novopharm's activities leading to its submissions to the FDA does not by itself

prevent the district court from considering Glaxo's request for declaratory relief

because such relief is directed to the time ***after*** the ANDA is approved, when

§ 271(e)(1) ***no longer provides a shelter*** against infringement liability."  *Id.*

(emphasis added).  In other words, Ivantis cannot invoke the protection of the safe

harbor for future infringing activities that clearly fall outside the safe harbor.

Glaukos is not required to sit by and wait until Ivantis has already begun

infringing Glaukos's rights and eroding its market share before it can initiate a

complaint.  Nor does exercising declaratory judgment jurisdiction create any

"dilemma," because competitors are still free to work toward FDA approval and

launch upon the expiration of the relevant patents.  In such cases, there is no

prospect of imminent infringement because a commercial launch does not infringe

where the patent has already expired.  This case is materially different, because

Ivantis plans to launch the Hydrus while Glaukos's patents are still in force.  Under

the circumstances Glaukos is within its rights to bring a declaratory judgment action

and request a determination of the parties' respective rights.

### 4.   Dismissal Would Serve No Purpose Other Than Delay

The exercise of declaratory judgment jurisdiction is clearly appropriate here,

where FDA approval is imminent, and Ivantis stands ready to commercialize the

Hydrus immediately upon FDA approval.  "Although the district court is given the

discretion, in declaratory judgment actions, to dismiss the case, there are boundaries

to that discretion.  'When there is an actual controversy and a declaratory judgment

would settle the legal relations in dispute and afford relief from uncertainty or insecurity, in the usual circumstance the declaratory judgment is not subject to dismissal.'" *SanDisk Corp. v. STMicroelectronics, Inc.*, 480 F.3d 1372, 1383 (Fed. Cir. 2007) (quoting *Genentech v. Eli Lilly & Co.*, 998 F.2d 931, 937 (Fed. Cir. 1993)).  These circumstances are present here.

Further, based on the immediacy of this action, dismissing Glaukos's complaint, only for Glaukos to re-file when Ivantis's U.S. launch is even more "imminent," would create inefficiencies and would make little sense in terms of judicial economy.  *See Envirocare Int'l., Inc. v. Essroc Cement Corp.*, No. 09-909, 2010 WL 1979365, at *5 (W.D. Pa. May 17, 2010) (denying accused infringer's motion to dismiss since granting a partial dismissal of the infringement claims only to have the patentee reintroduce them later would be inefficient).  Such delay would also offer an unfair tactical advantage to Ivantis, which has launched attacks against Glaukos's patents in IPR and opposition proceedings in the U.S. and Europe.[6] Moreover, the parties are already engaged in discussions regarding scheduling and case management.  The relief that Ivantis seeks would serve no purpose other than to delay, and prejudice Glaukos by delaying recourse for Ivantis's infringement.

## IV.   CONCLUSION

For the foregoing reasons, Glaukos respectfully requests that the Court deny Ivantis's motion to dismiss.  In the alternative, Glaukos respectfully requests discovery, as outlined above, and leave to amend.

---

[6] Ivantis filed its opposition to a related Glaukos patent in Europe several months before this complaint was even filed.  *See* <https://register.epo.org/application?number=EP10183760>.  Ivantis has also filed IPR petitions more recently against the two patents-in-suit.

Dated: June 4, 2018

Respectfully submitted,

IRELL & MANELLA LLP
Morgan Chu
Lisa S. Glasser
David McPhie
Stephen M. Payne


By: /s/ Lisa S. Glasser
    Lisa S. Glasser

Glaukos's Opposition to Ivantis's Motion to Dismiss,
Case No. 8:18-cv-00620-JVS-JDE