1  IRELL & MANELLA LLP
   Lisa S. Glasser (223406)
2  lglasser@irell.com
   David McPhie (231520)
3  dmcphie@irell.com
   840 Newport Center Drive, Suite 400
4  Newport Beach, California 92660-6324
   Telephone:  (949) 760-0991
5  Facsimile:  (949) 760-5200

6  Morgan Chu (70446)
   mchu@irell.com
7  Stephen Payne (310567)
   spayne@irell.com
8  1800 Avenue of the Stars, Suite 900
   Los Angeles, California 90067-4276
9  Telephone:   (310) 277-1010
   Facsimile:   (310) 203-7199
10
   Attorneys for Plaintiff
11 GLAUKOS CORPORATION

<span style="color:red">REDACTED
VERSION OF
DOCUMENT
FILED
CONDITIONALLY
UNDER SEAL</span>

12                    **UNITED STATES DISTRICT COURT**

13                  **CENTRAL DISTRICT OF CALIFORNIA**

14                          **SOUTHERN DIVISION**

15

16 GLAUKOS CORPORATION, a            ) Case No. 8:18-cv-00620-JVS-JDE
   Delaware Corporation,             )
17                                   )
              Plaintiff and Counter- ) **MEMORANDUM IN SUPPORT OF**
18            Defendant              ) **GLAUKOS CORPORATION'S**
                                     ) **MOTION FOR SUMMARY**
19       v.                          ) **JUDGMENT OF NON-**
                                     ) **INFRINGEMENT (BERLIN**
20                                   ) **PATENTS)**
                                     )
21 IVANTIS, INC, a Delaware          )
   Corporation,                      ) Date: Dec. 10, 2018
22                                   ) Time: 1:30 p.m.
              Defendant and          ) Courtroom: 10C
23            Counterclaimant        ) Judge: Hon. James V. Selna
                                     )
24 _____ )

25

26

27

28

# **TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ........................................................................................1

II. FACTUAL BACKGROUND ......................................................................2

    A.    The Human Eye ...............................................................................2

    B.    Prosecution of the Berlin Patents ...................................................4

III. SUMMARY JUDGMENT OF NON-INFRINGEMENT SHOULD BE GRANTED ...............................................................................8

    A.    Glaukos Does Not Infringe the '659 Patent..................................10

        1.    The Undisputed Facts Regarding The Inject's Dimensions Relative To Schlemm's Canal ............................11

        2.    Ivantis's Additional Admissions of Non-Infringement................................................................................16

    B.    Glaukos Does Not Infringe The '741 Patent .................................18

    C.    Glaukos Does Not Infringe The '357 Patent .................................18

IV. THE PROSECUTION HISTORY PROVIDES AN INDEPENDENT BASIS FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT ...............................................................................19

V. NO INFRINGEMENT UNDER THE DOCTRINE OF EQUIVALENTS .........................................................................................24

VI. CONCLUSION .........................................................................................25

# <u>TABLE OF AUTHORITIES</u>

**Page**

**Cases**

*ACCO Brands, Inc. v. Micro Sec. Devices, Inc.*,
   346 F.3d 1075 (Fed. Cir. 2003) ............................................................ 10

*Biogen, Inc. v. Berlex Labs., Inc.*,
   318 F.3d 1132 (Fed. Cir. 2003) ............................................................ 11

*Cybor Corp. v. FAS Techs.*, Inc.,
   138 F.3d 1448 (Fed. Cir. 1998) (en banc) ............................................. 9

*ERBE Elektromedizin GmbH v. Canady Tech. LLC*,
   629 F.3d 1278 (Fed. Cir. 2010) ...................................................... 20, 22

*Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*,
   344 F.3d 1359 (Fed. Cir. 2003) ............................................................ 25

*Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*,
   535 U.S. 722 (2002) ...................................................................... 24, 25

*Heuft Systemtechnik GMBH v. Industry Dynamics Co.*,
   282 F. App'x 836 (Fed. Cir. 2008) ...................................................... 24

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*,
   475 U.S. 574 (1986) ............................................................................... 8

*Ormco Corp. v. Align Tech., Inc.*,
   498 F.3d 1307 (Fed. Cir. 2007) ...................................................... 23, 24

*Regents of Univ. of Minn. v. AGA Medical Corp.*,
   717 F.3d 929 (Fed. Cir. 2013) ............................................................. 16

*SmithKline Diagnostics, Inc. v. Helena Labs. Corp.*,
   859 F.2d 878 (Fed. Cir. 1998) ............................................................... 9

*Southwall Techs., Inc. v. Cardinal IG Co.*,
   54 F.3d 1570 (Fed. Cir. 1995) ............................................................. 24

*Springs Window Fashions LP v. Novo Indus., L.P.*,
   323 F.3d 989 (Fed. Cir. 2003) ...................................................... 20, 21

**Page**

*Telemac Cellular Corp. v. Topp Telecom, Inc.*,
   247 F.3d 1316 (Fed. Cir. 2001) ............................................................ 8

*U.S. Surgical Corp. v. Ethicon, Inc.*,
   103 F.3d 1554 (Fed. Cir. 1997) ............................................................ 9

*Universal Electronics, Inc. v. Logitech, Inc.*,
   11-CV-010056-JVS-AN, Dkt. 144, 2012 WL 13028642 (C.D. Cal.
   May 9, 2012) .................................................................................... 9, 21

*Verizon Servs. Corp. v. Vonage Holdings Corp.*,
   503 F.3d 1295 (Fed. Cir. 2007) .......................................................... 23

*Vivid Techs., Inc. v. Am. Sci. & Eng'g, Inc.*,
   200 F.3d 795 (Fed. Cir. 1999) ............................................................ 9

*Whirlpool Corp. v. LG Electronics, Inc.*,
   2006 WL 2035215 (W.D. Mich. July 18, 2006) ......................... 16, 17

**Rules**

Fed. R. Civ. P. 56(a) ................................................................................ 8

## I. **INTRODUCTION**

Plaintiff and Counter-Defendant Glaukos Corporation ("Glaukos") moves for summary judgment that it does not infringe U.S. Patent Nos. 8,540,659, 9,603,741, and 9,833,357 (the "Berlin Patents"). As a direct response to Glaukos's infringement suit, Defendant and Counter-Claimant Ivantis, Inc. ("Ivantis") purchased the Berlin Patents and asserted them against Glaukos's second-generation product, the iStent *inject*® ("Inject"). The undisputed facts demonstrate that Glaukos does not and cannot infringe the Berlin Patents.

This motion focuses on just one of the many reasons that Glaukos does not infringe. Specifically, the Inject does not satisfy the requirement in each asserted claim that the implant avoid contact with the outer wall of "Schlemm's canal" (a structure within the eye). The portion of the Inject designed to be placed between the inner and outer walls of Schlemm's canal is 150 microns long. The space between the inner and outer walls of Schlemm's canal indisputably is much smaller. Indeed, the scientific texts that Berlin, the applicant for the Berlin Patents, provided to the Patent Office during prosecution describe the distance between the inner and outer walls as 30 microns or less. Ivantis offers no factual support or explanation for how the Inject could possibly fit into this space much narrower than 150 microns without contacting the outer wall. To the contrary, Ivantis's Infringement Contentions cite a scientific article that unmistakably shows the Inject pressing against the outer wall of Schlemm's canal and dilating the canal. Because there is no genuine dispute regarding these facts, summary judgment should be granted.

Moreover, summary judgment is also appropriate because, during prosecution of the Berlin Patents, the applicant specifically represented to the Patent Office that his invention excluded devices the size of the Inject. Berlin's application was originally rejected by the Patent Office as invalid based on Glaukos's prior art patents. To distinguish Glaukos's "Lynch" patent, Berlin told the Patent Office that Lynch's disclosure of portions within Schlemm's canal ranging in size from "100 microns to

500 microns" cannot satisfy the claims because they would "impinge the outer wall of Schlemm's canal most, if not all, of the time." The Inject's 150-micron head falls squarely within the "100 microns to 500 microns" range that the applicant represented was outside the scope of the patent. This is an independent ground upon which summary judgment of non-infringement should be granted.

## II.   FACTUAL BACKGROUND

### A.   The Human Eye

In a human eye, the iris (with the pupil at its center) partitions the eye into two chambers. The "anterior chamber" is the smaller, externally-facing chamber. It has a window called the "cornea" that lets light in. The iris and the pupil together modulate how much light goes into the back (or "posterior") region for the retina to register and send to the brain for visual perception. The iris is encircled by a structure called "Schlemm's canal."  The basic layout of these eye structures is illustrated below:

 

In a healthy eye, a clear substance called "aqueous humor" flows into Schlemm's canal from the anterior chamber through a network of cell layers called the "trabecular meshwork," then drains out of the eye through "collector channels." When the flow of aqueous humor is impeded, as in the case of glaucoma, intraocular pressure ("IOP") within the eye increases. If not properly treated, this can result in vision impairment or even blindness.

10592754

1    The diagram at right, excerpted from

2 TEXTBOOK OF GLAUCOMA (4th ed. 1998),[1]

3 shows a cross-section of Schlemm's canal and

4 one of several dozen collector channels

5 (labeled "Outlet Channel") on the outer wall.

6 The side of the canal where the collector

7 channels are located is the "outer wall."

8 Opposite the outer wall is the "inner wall,"

9 which is closest to the anterior chamber.



10 As this diagram reflects, Schlemm's canal has a cross-section that is narrow and

11 elongated.

12    The distance between the inner and outer wall (the minor axis) of Schlemm's

13 canal is extremely small. The applicant for the Berlin Patents explained to the Patent

14 Office during prosecution that it is about 30 microns (30 μm) or less.[2] For example,

15 the provisional application to which the Berlin Patents claim priority describes the

16 distance as "less than about 30 microns." Ex. J at p. 16. The scientific texts that Berlin

17 submitted to the Patent Office during prosecution also repeatedly describe the distance

18 between the inner and outer walls of Schlemm's canal as about 30 microns or less.

19 Ex. K at GKOS00008399 ("minor axis (distance between inner and outer wall)

20 varying between 1 and 30 μm, depending on the IOP"), GKOS00008432 ("30 μm at

21 low IOP"). Indeed, in glaucoma patients, the distance is usually even smaller due to

22 high IOP. As explained in a scientific text that Berlin submitted to the Patent Office,

23

24

25    [1] This figure is part of a scientific text submitted by Berlin to the Patent
26 Office during prosecution of the '659 Patent.  Ex. K ('659 File History) at
    GKOS00008373.  All "Ex." citations herein are to the Declaration of Lisa Glasser
27 ("Glasser Decl."), filed herewith.

28    [2] "μm" is the abbreviation for "micron," and the terms are used
interchangeably herein.

1  the lumen of Schlemm's canal yet further narrows "as IOP increases." *Id.* at
2  GKOS00008432.

3      Glaukos's Inject product reduces the elevated IOP associated with glaucoma.
4  Specifically, the Inject is approved by the FDA "for the reduction of intraocular
5  pressure (IOP) in adult patients with mild to moderate
6  primary open-angle glaucoma." Ex. D at 3 (Indications
7  for Use). Using a pre-loaded injector, two Inject devices



8  are inserted into "Schlemm's canal" of a patient's eye
9  during routine cataract surgery, which enhances
10  aqueous flow. *See id.* The Inject is 360 microns by 230
11  microns, including its conical "head" which measures
12  150 microns. Ex. E. Each Glaukos Inject device is barely visible to the human eye, as
13  illustrated by the photograph above right of two Inject devices on a penny.

14      The head of the Inject (150 microns) can be placed inside the even smaller
15  space between the inner and outer walls of Schlemm's canal because the structure of
16  the canal is pliable. The canal can be expanded, for example, by injecting it with
17  viscoelastic fluids (*see* Ex. K at GKOS00008530, '659 patent at col. 16, lns. 26-28
18  ("an appropriate viscoelastic fluid may be injected or coaxially infused so as to inflate
19  or expand the canal")) or, as in the case of the Inject, by a metal stent pressing against
20  its walls. The Inject is designed to press against the outer wall of Schlemm's canal,
21  dilating the canal and thus further enabling flow of aqueous humor.

22  **B.    Prosecution of the Berlin Patents**

23      On May 19, 2000, Michael Berlin filed a provisional patent application,
24  describing methods for treating glaucoma using photoablation. The provisional
25  application describes the distance between the inner and outer walls of Schlemm's
26  canal as "***less than about 30 microns wide*** at its maximum." Ex. J at p. 16.[3]

27

28  _____
   [3] All ***bold/italics*** herein has been added for emphasis, unless otherwise noted.

On January 7, 2008, Berlin filed a divisional application, which claimed priority to the provisional application and a May 21, 2001 utility patent application. Ex. K (file history) at GKOS00008034.[4] Berlin initially sought broad claims. However, Berlin's claims were repeatedly rejected by the Patent Office, primarily in view of three prior art references: Glaukos's Lynch and Bergheim patents, and a third-party patent, Ritch. Ex. K at GKOS00008140-47, 8193-98, 8273-81, and 8342-59.

For almost five years, Berlin attempted without success to overcome the Patent Office's rejections. *See id.*  Ultimately, on December 19, 2012, Berlin cancelled all pending claims and added new independent claims that included the following limitations:

**Claim 70 (re-numbered claim 1 in the '659 patent)**:

"inserting an intraocular implant from the anterior chamber of the eye through the trabecular meshwork, the juxtacanulicular trabecular meshwork and the inner wall of Schlemm's canal *without substantially impinging the outer wall* of Schlemm's canal"

"the distal end being positioned adjacent the inner wall of Schlemm's canal and *spaced from the outer wall* of Schlemm's canal"

"securing the intraocular implant in place so that the implant is *unlikely to impinge the outer wall* of Schlemm's canal"

**Claim 84 (re-numbered claim 15 in the '659 patent)**:

"a fastening member for securing the implant in place so as *not to impinge the outer wall* of Schlemm's canal, thereby avoiding trauma to the outer wall of Schlemm's canal and reducing the likelihood of stimulating an inflammatory cascade and subsequent scar tissue"

Ex. K at GKOS00008365-8367.

After amending the claims, Berlin sought to distinguish them from Glaukos's prior art Lynch patent, which discloses embodiments with portions in Schlemm's

---

[4] Berlin's priority claims are unsupported, but the issue of priority is not relevant to disposition of this motion and thus is not further addressed here.

canal measuring 100 microns. *Id*. at GKOS00008369-71. As discussed below, Berlin represented to the Patent Office that the distance between the inner and outer walls of Schlemm's canal is approximately 30 microns or less, significantly smaller than the dimensions of the embodiments disclosed in Lynch.

For example, one scientific reference (Johnson & Erikson) that Berlin presented to the Patent Office describes Schlemm's canal as having "the appearance of a highly elongated ellipse in cross-section," with the "distance between inner and outer wall[]"—the shorter of the two dimensions—"varying between 1 and 30 μm [micron], depending on the IOP." *Id*. at GKOS00008399. Berlin presented another reference (Johnson & Johnson) confirming that the shorter dimension of Schlemm's canal, between the inner and outer wall, is typically no more than 30 microns. *Id*. at GKOS00008432 ("the canal is oval in shape, with dimensions of approximately 280 μm by 30 μm at low IOP"). Berlin further presented an image of Schlemm's canal, annotating in handwriting his calculation that the dimension shown in the image is just 15-20 μm:



10592754

1

2   *Id.* at GKOS00008440 (handwriting in original prosecution history; red (outer wall)

3   and yellow (inner wall) lines added for emphasis).

4       After submitting these texts, Berlin represented to the Patent Office that: "***the***

5   ***size or shape (or both) of each [Lynch] embodiment***, taken together with the lack of

6   any 'fastening member for securing the implant in place' means that ***all the implant***

7   ***embodiments are likely to impinge the outer wall of Schlemm's canal most, if not***

8   ***all, of the time***." *Id*. at GKOS00008370.

9       As a result of Berlin's representations to the Patent Office that the distance

10  between the inner and outer walls is much smaller (about 30 microns or less) than the

11  relevant portion of the Lynch embodiments (100 microns), the '659 patent finally

12  issued. The Notice of Allowance expressly states that the allowed claims are limited

13  to devices "***spaced from the outer wall of Schlemm's canal***":

14          "The instant claims are drawn to an intraocular implant and method for
            inserting said implant. The implant is configured to be implanted and
15          secured such that the proximal end is disposed within the anterior
16          chamber and the <u>distal end is disposed adjacent the inner wall of</u>
            <u>Schlemm's canal and spaced from the outer wall of Schlemm's canal,</u>
17          thereby allowing aqueous humor to be transferred from the anterior
18          chamber, through the trabecular meshwork, and into Schlemm's canal."

19  *Id*. at GKOS00008453, 8469 (emphasis in original).

20      Prosecution of the '741 and '357 patents proceeded similarly. Berlin again

21  initially proposed broad claims, and those claims were rejected based on Lynch,

22  Bergheim, and Ritch. Ex. L at GKOS00008573-79, GKOS00008632-38; Ex. M at

23  GKOS00009851, GKOS00010165-67. The claims again were allowed only after

24  Berlin added limitations requiring that the implant inhibit contact with the outer wall.

25  The Notices of Allowance emphasize this claim requirement, and further state that

26  the claims are allowable for reasons similar to the '659 patent:

27  **'741 Patent Notice of Allowance**: "The instant claims are allowable
28  for substantially the same reasons as the parent application

MEMO ISO GLAUKOS'S MOTION FOR SUMMARY
JUDGMENT OF NON-INFRINGEMENT
Case No. 8:18-cv-00620-JVS-JDE

(11/970,488; issued as US Patent No. 8,540,659), which correspond to pages 11-12 of applicant's arguments filed in the instant application on 7/12/16. The prior art does not teach or suggest an implant having a distal portion that is configured to <u>substantially inhibit contact with the outer wall of Schlemm's canal</u> when the contact surface of the distal portion engages the inner wall of Schlemm's canal and self-retains the implant with the inner wall of Schlemm's canal."

Ex. L at GKOS00009737-8 (emphasis added).

**'357 Patent Notice of Allowance**: "The following is an examiner's statement of reasons for allowance: The instant claims are allowable for similar reasons as discussed in parent application 14/028,460 (issued as US Patent No. 9,603,741). The closest prior art (Bergheim, cited in the previous office action) does not teach or suggest an implant that is configured to <u>contact only the inner wall of Schlemm's canal (i.e. inhibit contact with the outer wall of Schlemm's canal</u>). By only contacting the inner wall and inhibiting contact with the outer wall, the instant invention allows prevents collector channels on the outer wall of Schlemm's canal from being blocked."

Ex. M at GKOS00010352 (emphasis added).

### III.   <u>SUMMARY JUDGMENT OF NON-INFRINGEMENT SHOULD BE GRANTED</u>

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). To demonstrate a genuine issue, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . [T]he nonmoving party must come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) (quotations and citations omitted).

Summary judgment of non-infringement should be granted "where the patent owner's proof is deficient in meeting an essential part of the legal standard for infringement, since such failure will render all other facts immaterial." *Telemac*

1    *Cellular Corp. v. Topp Telecom, Inc.*, 247 F.3d 1316, 1323 (Fed. Cir. 2001) (internal

2    citation omitted). The infringement inquiry has two steps: first, resolving any relevant

3    disputes regarding the meaning of the claim. *Cybor Corp. v. FAS Techs.*, Inc., 138

4    F.3d 1448, 1454 (Fed. Cir. 1998) (en banc) and second, determining "whether the

5    claims, as properly interpreted, cover the accused device or process." *SmithKline*

6    *Diagnostics, Inc. v. Helena Labs. Corp.*, 859 F.2d 878, 889 (Fed. Cir. 1998).

7        On summary judgment, the Court need only construe claims to the extent

8    necessary to resolve the motion. *Universal Electronics, Inc. v. Logitech, Inc.*, 11-CV-

9    010056-JVS-AN, Dkt. 144, 2012 WL 13028642, at *8 (C.D. Cal. May 9, 2012)

10   ("claim construction is a matter of resolution of *disputed* meanings and technical

11   scope, to clarify and *when necessary* to explain what the patentee covered by the

12   claims.") (emphasis in original) (quoting *U.S. Surgical Corp. v. Ethicon, Inc.*, 103

13   F.3d 1554, 1568 (Fed. Cir. 1997)); *see also Vivid Techs., Inc. v. Am. Sci. & Eng'g,*

14   *Inc.*, 200 F.3d 795, 803 (Fed. Cir. 1999) ("only those terms need be construed that are

15   in controversy, and only to the extent necessary to resolve the controversy."). In

16   *Universal*, the only claim construction issue relevant to granting summary judgment

17   of non-infringement was whether the patentee had disclaimed "remote controls"

18   during prosecution. *Id*. Therefore, this Court limited its inquiry to "whether the term

19   'information presentation device' at least means a device that is not a remote control."

20   *Id.* After concluding that remote controls were disclaimed, this Court granted

21   summary judgment. *Id*. at *10-12.

22       Here, non-infringement can be determined without engaging in full-scale claim

23   construction. Indeed, during the meet-and-confer process for this motion, Ivantis was

24   unable to identify any claim construction issue upon which the motion would depend.

25   Under any rational reading of the claims, it is indisputable that a 150-micron metal

26   object designed to be inserted into the much smaller space between the inner and outer

27   walls of Schlemm's canal does not satisfy them. Further, as in *Universal*, the

28

MEMO ISO GLAUKOS'S MOTION FOR SUMMARY
JUDGMENT OF NON-INFRINGEMENT
Case No. 8:18-cv-00620-JVS-JDE

patentee's statements during prosecution (here, distinguishing prior art in the range of "100 microns to 500 microns") are independently dispositive. *See* Section IV, below.

### A.  Glaukos Does Not Infringe the '659 Patent

The '659 patent has two independent claims, method claim 1 and device claim 15. Claim 15 requires, among other things, "a fastening member for securing the implant in place so as ***not to impinge the outer wall*** of Schlemm's canal, thereby avoiding trauma to the outer wall of Schlemm's canal and reducing the likelihood of stimulating an inflammatory cascade and subsequent scar tissue." Claim 1 is a method claim that similarly requires, among other limitations:

> "inserting an intraocular implant from the anterior chamber of the eye through the trabecular meshwork, the juxtacanulicular trabecular meshwork and the inner wall of Schlemm's canal ***without substantially impinging the outer wall*** of Schlemm's canal";

> "the distal end being positioned adjacent the inner wall of Schlemm's canal and ***spaced from the outer wall*** of Schlemm's canal";

> "securing the intraocular implant in place so that it ***does not ordinarily impinge the outer wall*** of Schlemm's canal."

'659 Patent (Ex. K, at GKOS00008534, col. 18, ln. 38-58 (claim 1), GKOS00008535, at col. 19, ln. 35 to col. 20, ln. 8 (claim 15)) (emphasis added).

As the '659 patent's Notice of Allowance states, these claims all require that the implant be "spaced from the outer wall of Schlemm's canal." Ex. K at GKOS00008453, 8469 (emphasis in original). This "makes clear that the examiner and the applicant understood that the invention requires" spacing, particularly given the applicant's extensive submissions in support of his position that the prior art was too large to satisfy the claims. *See, e.g., ACCO Brands, Inc. v. Micro Sec. Devices, Inc.*, 346 F.3d 1075, 1079 (Fed. Cir. 2003) (claims must be construed in accordance with the reasons for allowance where they correspond to the applicant's arguments, even where the claims are not all worded identically) (affirming summary judgment

of non-infringement); *Biogen, Inc. v. Berlex Labs., Inc.*, 318 F.3d 1132, 1139 (Fed. Cir. 2003) (granting summary judgment of non-infringement where "the examiner recognized that the only supportable scope of the claims was for [a feature not found in the accused product]. This scope was recited in the Reasons for Allowance").

A reasonable jury could not find based on the undisputed facts that the Inject is spaced from the outer wall of Schlemm's canal. To the contrary, the undisputed facts compel the conclusion that the Inject directly contacts the outer wall.

1.    The Undisputed Facts Regarding The Inject's Dimensions Relative To Schlemm's Canal

For purposes of this motion, there is no dispute about which part of the Inject resides in Schlemm's canal (the "head"), where it is placed (extending from the inner wall towards the outer wall), or its dimensions (approximately 150 microns in length). Ivantis's Patent Local Rule 3-1 disclosures ("Infringement Contentions") identify the "head" of the Inject as the "distal portion," and allege that it extends from the inner wall of Schlemm's canal towards the outer wall:



Figure 2. iStent *inject* Model GTS400 Design

*E.g.*, Ex. A at '741 patent chart, pp. 12, 21, 37, 40, 69, 79 (image above) (identifying the head as "Distal portion" and alleging that the wider end of the head "contact[s] inner wall of Schlemm's canal"); *see also, e.g.*, *id*. at '357 patent chart, pp. 12, 14, 37.

1    *See also id.* at '659 patent chart, p. 12 ("Head – resides in Schlemm's Canal") (image

2    below):



9         The size of the Inject's head is also undisputed. It is 150 microns long, with a

10   diameter of 230 microns at its base and 80 microns at its tip. *Id.* (The Inject "is 230

11   μm in diameter, 360 μm in height, and the central inlet and outlet lumen has a diameter

12   of 80 μm (Figure 1). The head of the stent has four side outlets that each have a

13   diameter of 50 μm"). Although Ivantis's Infringement Contentions do not expressly

14   state the 150 micron measurement, it accords with all of Ivantis's statements regarding

15   the related dimensions of the device (including, for example, Ivantis's identification

16   of the side outlets, which are one-third the length of the head, as 50 microns).

17        Glaukos's specifications confirm that the head is approximately 150 microns:

Ex. E (GKOS00007843).

1     Ivantis's Infringement Contentions do not attempt to explain how the Inject's

2   150 micron head could possibly avoid contacting the outer wall when inserted

3   between two walls of Schlemm's canal approximately 30 microns apart. Ivantis's

4   Infringement Contentions are conspicuously silent on this dispositive issue.

5     As its ***only*** alleged evidence on the limitations at issue on this motion, Ivantis

6   cites just two documents: (1) a snippet of an article by a third-party Canadian

7   researcher, Le et al., Clinical Ophthalmology 2014:8 1937–1945 ("Le")), and (2) an

8   image from a YouTube animation. Neither supports infringement in any respect.

9     From the Le article, Ivantis relies on a quote about the wrong product. Ivantis

10   quotes the following language: "The approach to entry into Schlemm's canal should

11   be similar to venipuncture: a sharper initial approach to puncture the trabecular

12   meshwork followed by a flattened approach to slide into Schlemm's canal without

13   abutting against the outer wall of Schlemm's canal." *E.g*., Ex. A at '659 patent claim

14   chart, pp. 6, 9. As the very next sentence of Le states, however, this comment is

15   specific to "the iStent"—Glaukos's first-generation product. *See* Ex. B (Le article) at

16   1939. The iStent not accused of infringement. The iStent is a different product, with

17   a different shape, size, and method of insertion. *See id*. at 1938 (iStent image). As the

18   Le article expressly states, the accused product (the Inject) is ***not*** inserted via this

19   "sideways sliding" approach, but rather released straight into the canal. *Id*. at 1940

20   (the Inject "is released into Schlemm's canal, so that sideways sliding is not

21   required").

22     In attempting to rely on a portion of the Le article discussing a different product,

23   Ivantis ignores the parts of the article that actually discuss the relevant issue:  the

24   accused Inject product and its relationship with the outer wall of Schlemm's canal. In

25   fact, the Le article includes multiple images of actual Inject devices implanted in

26   Schlemm's canal, each of which clearly illustrates that the Inject ***contacts the outer***

27   ***wall***.  *See* Ex. B (Le article) at 1939, Figs. 5 and 6.

28

1      For example, Figure 6 of the Le article
2  (image at right) shows "Three dimensional
3  micro-computed tomography views showing
4  ***dilation of Schlemm's canal (SC)*** after
5  implantation of the iStent inject." Ex. B at
6  1939. In addition to expressly stating that the
7  Inject "dilat[es]" the canal, these images
8  clearly show the Inject ***pressing against the***
9  ***outer wall*** of Schlemm's Canal (SC) and
10 extending into the sclera (SL). *Id.*



11 Additionally, Le identifies the source for these images as "Bahler, et al., Second-
12 generation trabecular meshwork bypass stent (iStent inject) increases outflow facility
13 in cultured human anterior segments. Am J Ophthalmol. 2012; 153(6):1206–1213"
14 ("Bahler"). Bahler further explains that the Inject causes "***separation between inner***
15 ***and outer walls, resulting in dilation***." Ex. C at p. 1210.

16     Similarly, the Le article includes as Figure 5 (images below), "electron
17 microscope views of the iStent inject positioned within the trabecular meshwork (TM)
18 and Schlemm's canal (SC)." Ex. B at p. 1939. These images also depict the Inject
19 squarely pressing against the outer wall and dilating the canal:





These views of actual Inject devices in Schlemm's canal again confirm two dispositive facts. First, the Inject's head is much larger than the distance between the inner and outer walls. *See id*. (in the above image, compare the width of "SC" with the 100 µm scale at bottom right). Second, because the Inject's head is much larger than the space between the inner and outer walls, the Inject presses against the outer wall of Schlemm's canal and expands it. As Bahler explains regarding these images, "***cell disruption is noted on inner and outer walls of Schlemm canal***." Ex. C at p. 1209. Further, dilation of Schlemm's canal was confirmed at the point where the Inject's head directly contacts the outer wall as well as "the region surrounding the stent head." *Id*. at 1211.

The only other document that Ivantis cites in its Infringement Contentions regarding the claim limitations at issue is a cartoonized image that Ivantis counsel captured from "a video on youtube," on which Ivantis counsel annotated, "Outer wall of Schlemm's canal (not impinged)." *E.g.,* Ex. A at '659 patent chart, claim 1, p. 4. Of course, counsel's words are not evidence. And unlike the electron microscope views above, the YouTube image does not purport to show an actual Inject device or the anatomy of a human eye to scale, and thus cannot create a genuine issue regarding the dimensions of the Inject and Schlemm's canal. Indeed, it does not contain ***any***

1    dimensions, any scale, or even any words. *See, e.g., Regents of Univ. of Minn. v. AGA*

2    *Medical Corp.*, 717 F.3d 929, 939 (Fed. Cir. 2013) (affirming summary judgment of

3    non-infringement) (no reasonable jury could find infringement based on statements

4    in "sales literature" because such statements could not alter the undisputed facts about

5    the actual composition of the product); *Whirlpool Corp. v. LG Electronics, Inc.*, 2006

6    WL 2035215, at *8 (W.D. Mich. July 18, 2006) (summary judgment of non-

7    infringement where the patentee's only evidence was marketing materials, which

8    "cannot override the actual operation of the [accused product]").

9                                   2.    Ivantis's Additional Admissions of Non-Infringement



10   Further evidence of non-infringement

11   comes directly from Ivantis's documents.

12   For example, in a presentation for "key

13   opinion leader" surgeons, Ivantis shows

14   actual images of Schlemm's canal. As with

15   all of the other images discussed above,

16   they again confirm that Schlemm's canal in

17   its natural state is very narrow between its

18   inner and outer walls (*see* top left image).

19   Ex. H at IVNTS_00005314, Ex. G at IVNTS_00004945.

20          Further, these images from Ivantis's documents also again confirm that the 150

21   micron Inject head is much larger than the space between the inner and outer walls.

22   Ivantis states that its own "Hydrus" device, measuring 185 microns in the direction

23   between the inner and outer walls, "**expand[s] the natural diameter [of Schlemm's**

24   **canal] 4-5x**." Ex. F at IVNTS_00002726 (185 micron dimension), Ex. G at

25   IVNTS_00004949.  Of course, if a device measuring 185 microns is so much larger

26   than the space between the inner and outer walls of Schlemm's canal that it expands

27   it *4-5 times*, the Inject's 150 micron head is also much larger than this space. As such,

28   the Inject certainly presses into the outer wall, expanding the canal.

Ivantis confirmed exactly that fact—that the 150 micron head of the Inject presses into the outer wall, expanding the canal—in presentations identifying the similarities and alleged differences between the Inject and the Hydrus. Under the heading, "**Key Message #1**," Ivantis depicts two Injects implanted in Schlemm's canal. With red arrows, Ivantis points to the head of each Inject, which is clearly depicted *pressing against the outer wall of Schlemm's canal* (shown in pink), expanding Schlemm's canal:



*Id*. at IVNTS_00004953 (image above); *see also* Ex. H at IVNTS_00005313.

In summary, there is no evidence that the Inject is spaced from, or avoids contact with, the outer wall. To the contrary, all of evidence (including the undisputed fact that the Inject's head is substantially larger than the distance from the inner to outer wall, the Le and Bahler articles, and Ivantis's own documents) is that the Inject presses into the outer wall, expanding the canal. Because no jury could find infringement, summary judgment should be granted.

**B.     Glaukos Does Not Infringe The '741 Patent**

Summary judgment should be granted for the '741 patent, for substantially similar reasons. Ivantis has asserted four independent claims of the '741 patent: method claims 1 and 33, and device claims 14 and 29. Each was initially rejected, and issued only after Berlin added limitations similar to the '659 patent, including:

> "the distal portion configured to ***substantially inhibit contact with the outer wall of Schlemm's canal*** when the contact surface of the distal portion engages the inner wall of Schlemm's canal and self-retains the implant with the inner wall of Schlemm's canal" (claims 1 and 14)

> "the distal portion is sized and shaped to engage [a distal portion of the implant engages] a wall of Schlemm's canal and wherein ***engagement of the wall of Schlemm's canal is limited to [engagement of] an inner wall of Schlemm's canal***" (claims 29 and 33)

'741 Patent (Ex. L, at GKOS00009833-34, col. 19, ln. 1 to col. 22, ln. 36).

The Notice of Allowance states that the "claims are allowable for substantially the same reasons as the parent application (11/970,488; issued as US Patent No. 8,540,659)." Ex. L at GKOS00009737. The Notice of Allowance further states that the claims all require "having a distal portion that is configured to <u>substantially inhibit contact with the outer wall of Schlemm's canal</u>." *Id*.

Summary judgment should be granted because there is no evidence that the Inject is configured to substantially inhibit contact with the outer wall. To the contrary, the evidence discussed above (*see* Section III.A) affirmatively shows the opposite. The Inject is configured ***to*** contact the outer wall, and the images of actual Inject devices after implantation into Schlemm's canal uniformly show the Inject pressing into the outer wall and expanding the canal.

**C.     Glaukos Does Not Infringe The '357 Patent**

The '357 patent has two independent claims, method claim 1 and device claim 13.  Like the '741 patent, the '357 patent's claims were originally rejected, and issued only after Berlin amended the claims to add limitations similar to the '659 patent. For

1   example, Berlin amended all claims to require a "distal portion sized and shaped to
2   substantially inhibit contact with collector channels on the outer wall of the
3   Schlemm's canal when the contact surface of the distal portion engages the inner wall
4   of the Schlemm's canal and self-retains the implant with engagement of the inner wall
5   of the Schlemm's canal." '357 Patent (Ex. M, at GKOS00010412, cols. 19-20).

6   Berlin represented during prosecution, and the Notice of Allowance states,
7   "The closest prior art (Bergheim, cited in the previous office action) does not teach or
8   suggest an implant that is configured to contact only the inner wall of Schlemm's
9   canal (*i.e.* inhibit contact with the outer wall of Schlemm's canal). By ***only contacting***
10  ***the inner wall and inhibiting contact with the outer wall***, the instant invention
11  prevents collector channels on the outer wall of Schlemm's canal from being
12  blocked." *Id*. at GKOS00010352. The Notice of Allowance states that the "claims
13  are allowable for substantially the same reasons as the parent application." *Id*.

14  Just as for the '659 and '741 patent, Ivantis has not and cannot identify evidence
15  to meet its burden on these limitations. There is no evidence that the Inject is sized
16  and shaped to inhibit contact with the outer wall of Schlemm's canal where the
17  collector channels are located, or that the Inject engages only with the inner wall. To
18  the contrary, the undisputed facts confirm that the Inject is sized ***to*** contact and press
19  into the outer wall, expanding the canal. *See* Section III.A, above.

20  **IV.   THE PROSECUTION HISTORY PROVIDES AN INDEPENDENT**
21  **BASIS FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT**

22  The undisputed facts discussed above independently require summary
23  judgment. Given that the Inject's head indisputably is larger than the space into which
24  it is inserted, no reasonable jury could find infringement. But even if Ivantis could
25  somehow create a dispute regarding these facts, summary judgment would still be
26  appropriate because the prosecution history bars any attempt by Ivantis to argue that
27  the Inject's 150 micron distal portion infringes.

28

A patentee who distinguishes prior art during prosecution, based on specific characteristics, surrenders any argument that the claims cover products with those characteristics. "[B]y distinguishing the claimed invention over prior art, an applicant is indicating what the claims do not cover, he is by implication surrendering such protection." *Springs Window Fashions LP v. Novo Indus., L.P.,* 323 F.3d 989, 994 (Fed. Cir. 2003) (quotations and citations omitted). "The prosecution history constitutes a public record of the patentee's representations concerning the scope and the meaning of the claims, and competitors are entitled to rely on those representations when ascertaining the degree of lawful conduct." *Id*. at 995.

Summary judgment of non-infringement is regularly granted where features or dimensions distinguished during prosecution are common to the prior art and the accused product. In *ERBE Elektromedizin GmbH v. Canady Tech. LLC*, 629 F.3d 1278 (Fed. Cir. 2010), for example, the claims required a "low flow rate." During prosecution, the inventor distinguished one of the defendant's prior art patents, representing to the Patent Office that its "tubes produced flow rates of 1 to 12 liters per minute leading to laminar jet gas flow velocities of 19 [k]m/h to 229 km/h." *Id*. at 1286. This representation constituted a disclaimer that "the claimed flow rates were limited to less than 1 liter per minute and produced velocities less than 19 km/hr." *Id*. The Federal Circuit affirmed this conclusion—and, accordingly, summary judgment of non-infringement—because there was no evidence that the accused devices "exhibit velocities less than 19 km/hr." *Id*. at 1287.

Similarly, in *Springs Window*, the patentee distinguished prior art during prosecution on the ground that it had multiple cutting edges on a single plate, which it told the Patent Office did not meet the claim limitation of "separate." 323 F.3d at 994. The accused product had multiple blades, but affixed them to a single plate, which the defendant argued was not "separate." *Id*. at 993. The district court granted summary judgment of non-infringement, and Federal Circuit affirmed, noting that "[g]iven that the [prior art] reference and [accused] device are nearly identical with

1  respect to the arrangement of their cutting edges, it is clear that the applicant

2  disclaimed coverage of [the accused] device." *Id*. at 994.

3      As another example, this Court applied the doctrine of prosecution disclaimer

4  to grant summary judgment of non-infringement in *Universal Electronics, Inc. v.*

5  *Logitech, Inc.*, 11-CV-010056-JVS-AN, Dkt. 144, 2012 WL 13028642 (C.D. Cal.

6  May 9, 2012). In *Universal*, to respond to rejections based on a prior art reference

7  (Goldstein), the patentee made a number of statements communicating that "the

8  invention is not a remote control or controller." *Id*. at *11. These statements "appear

9  aimed at demonstrating the device has an element or limitation that Goldstein does

10  not. Thus, not being a remote controller was an additional limitation and the applicant

11  disclaimed his invention being a remote control." *Id*. Because the accused device was

12  a remote control, it could not infringe as a matter of law and summary judgment of

13  non-infringement was granted.  *Id*.

14      Here, this established doctrine of prosecution disclaimer is an independent

15  basis for granting summary judgment of non-infringement. During prosecution,

16  Berlin acknowledged to the Patent Office that Glaukos's Lynch patent discloses

17  implant portions in Schlemm's canal with diameters ranging from "100 micron to 500

18  micron" for each embodiment.  Ex. K at GKOS00008371 ("the outer diameter of the

19  distal portion 25 is taught to be 'about 0.1 mm to 0.5 mm, or about 0.3 mm,' that is,

20  100 microns to 500 microns"). In other words, as Berlin acknowledged, Lynch's

21  embodiments include portions that extend 100 microns across the canal from the inner

22  wall towards the outer wall. *Id*. To distinguish Lynch, Berlin provided to the Patent

23  Office multiple scientific texts showing that the distance between the inner and outer

24  walls is narrower than 100 microns, on the order of 20-30 microns or less. *See* Section

25  II.B, above. Berlin also argued, without citation, that "the interior dimension between

26  the inner and outer walls of Schlemm's canal typically varies from 20 microns to 400

27  microns during ordinary pulsating of the tissue."  Ex. K at GKOS00008371.

28

After submitting these multiple scientific texts identifying the distance between the inner and outer walls as about 20-30 microns or less, Berlin then argued that the Lynch embodiments cannot satisfy the claims, including because their size (ranging from "100 microns to 500 microns") means that they will impinge the outer wall, "most, if not all, of the time":

> "Discussion took place as to whether the Lynch implant embodiments would satisfy this element. Applicant contends that they will not satisfy the element because *the size or shape (or both) of each embodiment*, taken together with the lack of any 'fastening member for securing the implant in place' means that *all the implant embodiments are likely to impinge the outer wall of Schlemm's canal most, if not all, of the time*. The Examiner acknowledged the merit of this position."

Ex. K at GKOS00008370. These arguments and representations constitute a clear disclaimer of devices with distal portions of 100 microns or larger. *ERBE*, 629 F.3d at 1286 ("the prosecution history establishes that the Canady prior art patent was distinguished based on this 'low flow rate' limitation and thus this term as it appears in the asserted claims is limited."). Further, the disclaimed characteristics are common to the Inject.  To illustrate, one Lynch embodiment (based on Figure 2 of Lynch) and the Inject are shown below (size annotations added):



In Figure 2, "distal portion 25" is placed lengthwise (circumferentially) along Schlemm's canal. *See* Ex. I (Lynch) at Fig. 2, Fig. 5B; *see also id.* at col. 10, lns. 4-5 (in Figs. 1-4, "distal portion 25 is oriented in the plane of Schlemm's canal").

Given the applicant's representation that even the smallest Lynch embodiments "impinge" the outer wall, the Inject with its larger 150 micron "head" necessarily impinges the outer wall as well. This is illustrated above using the example of Figure 2. Moreover, the same is true for many other Lynch embodiments, including those that are entirely open along the outer wall facing the collector channels, and those that include features on the proximal portion that "anchor" the device in place. *See, e.g., id.* at Figs. 3D, 4, and 5D; col. 7, lns. 12-20 ("The invention contemplates many different configurations of distal portions, including those that are "trough-like" or "fenestrated"); col. 8, lns. 43-46 ("non-tubular trough-like aspects are oriented posteriorly on the outer wall of the canal to facilitate aqueous humor drainage to the collecting channels of the eye"); col. 11, lns. 43-50 (describing proximal portions that "provide an anchoring function to stabilize the overall implant device, in addition to providing fluid communication from the anterior chamber to Schlemm's Canal").

Berlin's representation to the Patent Office that none of the Lynch embodiments practice the '659 patent because each would impinge the outer wall "most, if not all, of the time" forecloses any attempt by Ivantis to argue that the 150 micron "head" of Glaukos's Inject satisfies the claims. Further, these statements apply equally to the '741 and '357 patents. It is well established that the prosecution history of one patent in a family limits the claims of subsequent patents in the same family addressed to the same subject matter. *Verizon Servs. Corp. v. Vonage Holdings Corp.*, 503 F.3d 1295, 1306 (Fed. Cir. 2007) ("[A] statement made by the patentee during prosecution history of a patent in the same family as the patent-in-suit can operate as a disclaimer."); *Ormco Corp. v. Align Tech., Inc.*, 498 F.3d 1307, 1314-15 (Fed. Cir. 2007) (applying prosecution disclaimer based on "statements from prosecution of a familial patent relating to the same subject matter" and sharing the same

1   specification); *id*. at 1316-17 (affirming summary judgment of non-infringement

2   when, "in light of the specification of the Ormco patents and statements from the

3   prosecution history of the parent '562 patent, the claims [of child patents] specified

4   above require automatic computer determination…."); *Heuft Systemtechnik GMBH v.*

5   *Industry Dynamics Co.*, 282 F. App'x 836, 841 (Fed. Cir. 2008) (applying prosecution

6   disclaimer to subsequent patents issuing in the same family because their limitations

7   "related to the same subject matter."). Here, the relevant limitations of the three

8   asserted patents all regard the same subject matter—the spatial dimensions of the

9   implant in relationship to the outer wall of Schlemm's canal—and all were added

10  during prosecution to overcome rejections.  Indeed, the Notices of Allowance for the

11  '741 and '357 patents expressly state that they issued for substantially similar reasons

12  as the '659 patent. Exs. L at GKOS00009737, M at GKOS00010352. Thus, the

13  patentee's representations regarding the "100 microns to 500 microns" range of Lynch

14  made during prosecution of the '659 patent apply to the '741 and '357 patents as well.

15       In summary, because the Inject's 150 micron head falls squarely within the

16  "100 microns to 500 microns" range that the patentee made clear during prosecution

17  was *not* part of the claimed invention, the Inject cannot infringe the Berlin Patents.

18  **V.     NO INFRINGEMENT UNDER THE DOCTRINE OF EQUIVALENTS**

19       As demonstrated above, there is no evidence of literal infringement. Ivantis has

20  not asserted any arguments based on the doctrine of equivalents. *See* Ex. A. Even if

21  Ivantis had done so, such arguments would be meritless. The doctrine of equivalents

22  is unavailable because the limitations at issue were all added during prosecution, to

23  overcome rejections. "[P]rosecution history estoppel limits the range of equivalents

24  available to a patentee by preventing recapture of subject matter surrendered during

25  prosecution of the patent." *Southwall Techs., Inc. v. Cardinal IG Co.*, 54 F.3d 1570,

26  1579 (Fed. Cir. 1995). "[A] narrowing amendment made to satisfy any requirement

27  of the Patent Act may give rise to an estoppel." *Festo Corp. v. Shoketsu Kinzoku*

28  *Kogyo Kabushiki Co.*, 535 U.S. 722, 736 (2002). When a patentee narrows a claim in

response to a rejection, the patentee "may not argue that the surrendered territory comprised unforeseen subject matter that should be deemed equivalent to the literal claims of the issued patent." *Id.* at 733-34. Where, as here, the patentee does not rebut the presumption, "prosecution history estoppel bars the patentee from relying on the doctrine of equivalents for the accused element." *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 344 F.3d 1359, 1367 (Fed. Cir. 2003).

## VI.   **CONCLUSION**

For the foregoing reasons, Glaukos respectfully requests that its motion for summary judgment of non-infringement be granted.

Dated: November 9, 2018                     IRELL & MANELLA LLP

By: /s/ *Lisa S. Glasser*

Attorneys for Plaintiff
Glaukos Corporation