IRELL & MANELLA LLP
Lisa S. Glasser (223406)
lglasser@irell.com
David McPhie (231520)
dmcphie@irell.com
840 Newport Center Drive, Suite 400
Newport Beach, California 92660-6324
Telephone:  (949) 760-0991
Facsimile:  (949) 760-5200

Morgan Chu (70446)
mchu@irell.com
Stephen Payne (310567)
spayne@irell.com
1800 Avenue of the Stars, Suite 900
Los Angeles, California 90067-4276
Telephone:   (310) 277-1010
Facsimile:   (310) 203-7199

Attorneys for Plaintiff
GLAUKOS CORPORATION

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### SOUTHERN DIVISION

| | |
|---|---|
| GLAUKOS CORPORATION, a Delaware Corporation,<br><br>　　　　　Plaintiff and Counter-Defendant,<br><br>　　v.<br><br>IVANTIS, INC., a Delaware Corporation,<br><br>　　　　　Defendant and Counterclaimant. | Case No. 8:18-cv-00620-JVS-JDE<br><br>**JOINT STIPULATION REGARDING GLAUKOS'S MOTION TO COMPEL IVANTIS TO RESPOND TO REQUEST FOR PRODUCTION NOS. 27, 28, 29, 31, and 39**<br><br>Hearing Date: January 24, 2019<br>Hearing Time: 10:00 a.m.<br>Courtroom: 6A<br><br>Discovery Cut-off: June 24, 2019<br>Pre-trial conference: Jan. 13, 2020<br>Trial date:  February 4, 2020<br><br>[Discovery Document: Referred to Magistrate Judge John D. Early] |

10623974.

# TABLE OF CONTENTS

**Page**

GLAUKOS'S INTRODUCTORY STATEMENT .....................................................1

IVANTIS'S INTRODUCTORY STATEMENT ........................................................2

Disputed Issue #1: Whether Ivantis should promptly comply with Request for Production Nos. 27 and 28 by producing documentation identifying the entities involved in each aspect of manufacturing, exporting, and importing the accused Hydrus product and their geographic locations. ...............5

GLAUKOS'S CONTENTIONS REGARDING THE DISPUTED ISSUE ...........................................6

IVANTIS'S CONTENTIONS REGARDING THE DISPUTED ISSUE.................8

Disputed Issue #2: Whether Ivantis should be required to promptly comply with Request for Production Nos. 29 and 31 by producing historical financial information and by producing documentation of its plans to target Glaukos customers. ...................................................................12

GLAUKOS'S CONTENTIONS REGARDING THE DISPUTED ISSUE ...........................................13

IVANTIS'S CONTENTIONS REGARDING THE DISPUTED ISSUE...............15

Disputed Issue #3: Whether Ivantis should be required to promptly produce selected documents responsive to Request for Production No. 39 .........................................................................19

GLAUKOS'S CONTENTIONS REGARDING THE DISPUTED ISSUE ............19

IVANTIS'S CONTENTIONS REGARDING THE DISPUTED ISSUE...............21

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Cybiotronics, Ltd. v. Golden Source Elecs. Ltd.*,
   130 F. Supp. 2d 1152 (C.D. Cal. 2001) .................................................. 10

*Georgia-Pacific Corp. v. United States Plywood Corp.*,
   318 F. Supp. 1116 (S.D.N.Y. 1970) .......................................... 13, 18, 20

*Hanson v. Alpine Valley Ski Area, Inc.*,
   718 F.2d 1075 (Fed. Cir. 1983) ..................................................... 13, 14

*Infinity Headware & Apparel v. Jay Franco & Sons*,
   No. 15-CV-1259, 2015 WL 6444655 (S.D.N.Y. Oct. 23, 2015) ......................... 18

*LaserDynamics, Inc. v. Quanta Computer, Inc.*,
   694 F.3d 51 (Fed. Cir. 2012) ................................................................. 18

*Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*,
   711 F.3d 1348 (Fed. Cir. 2013) ............................................................. 10

*Read Corp. v. Portec, Inc.*,
   970 F.2d 816 (Fed.Cir.1992) ......................................................... 20, 22

*Rite-Hite Corp. v. Kelley Co.*,
   56 F.3d 1538 (Fed. Cir. 1995) ............................................................... 18

*Rotec Industries, Inc. v. Mitsubishi Corporation*,
   215 F.3d 1246 (Fed. Cir. 2000) ............................................................. 10

*Sonos, Inc. v. D&M Holdings Inc.*,
   No. CV 14-1330-WCB, 2017 WL 5633204 (D. Del. Nov. 21, 2017)
   (Bryson, C.J.) .............................................................................. 22

*Standard Havens Prods., Inc. v. Gencor Indus., Inc.*,
   953 F.2d 1360 (Fed. Cir. 1991) ............................................................. 18

*Ultra Athlete, LLC v. Aruajo*,
   14-17-cv-00237 (S.D. Ind. June 22, 2018) ................................................ 8

**Page**

**Statutes**

35 U.S.C. § 271 ................................................................................. 7, 10

35 U.S.C. § 284 ....................................................................................... 13

**Other Authorities**

Local Civil Rule 37-2.1 ............................................................................. 1

Pursuant to Local Civil Rule 37-2.1, Plaintiff Glaukos Corporation ("Glaukos") and Defendant Ivantis, Inc. ("Ivantis") hereby submit the following joint stipulation in connection with Glaukos's concurrently filed Notice of Motion to Compel Ivantis to Respond to Request for Production Nos. 27, 28, 29, 31, and 39. Attached hereto as Exhibit A is a copy of the current scheduling order, Docket No. 50-1.

## GLAUKOS'S INTRODUCTORY STATEMENT

Plaintiff Glaukos was founded nearly two decades ago in Laguna Hills, California, with a vision of changing the standard of care for glaucoma treatment. Using its patented technology, Glaukos envisioned that the effects of glaucoma could be relieved by surgically inserting into "Schlemm's canal" of the eye a tiny, specially designed medical implant. After years of effort and more than $300 million in funding, Glaukos's vision became a reality with the FDA's 2012 approval of Glaukos's patented "iStent®" for treatment of mild-to-moderate glaucoma. More than 400,000 eyes worldwide have been treated using Glaukos's patented technology.

In April of 2018, Glaukos filed this patent infringement action against Defendant Ivantis, Inc. ("Ivantis"), which was then in the process of seeking FDA approval for a competing product to be used in Schlemm's canal, known as the "Hydrus." Dkt. 1. Ivantis has made no secret of its hope to use the infringing Hydrus product to free ride on Glaukos's extensive investments in creating a market for the patented technology. In a public presentation that Glaukos located on the Internet from December of 2017, Ivantis displays a chart showing $164 million (Glaukos's estimated 2017 revenue) as its definition of the market, identifies Glaukos's iStent as the only product then on the market for use in Schlemm's canal, and "thanks" Glaukos for "building this category to date." Payne Decl. ¶ 2, Exs. 1, 2. In August of 2018, Ivantis's "Hydrus" product was approved by the FDA, and Ivantis appears to have begun distributing a small number of commercial "Hydrus" units in the United States.

On August 7, 2018, Glaukos served discovery requests seeking, among other things, basic information about Ivantis's infringing activities, Ivantis's financials, and

Ivantis's communications with the inventors of Glaukos's patents, including RFP Nos. 27, 28, 29, 31, and 39 discussed herein.

The parties' counsel held a telephone conference on October 15, 2018 regarding these and other requests. Payne Decl. ¶ 4. Glaukos sent several follow-up letters after the call. Payne Decl. ¶ 6, Exs. 4-6. However, it has now been more than two months and Ivantis still has not addressed the deficiencies that Glaukos identified. *Id*. On December 20, 2018, the parties held a second telephone conference, but Ivantis still refused to commit to producing the documents at issue. Ivantis's delay is seriously impairing Glaukos's ability to present damages contentions (which are due January 14[1]) and prepare for depositions. Payne Decl. ¶¶ 8, 9.

There are many deficiencies in Ivantis's discovery responses that the parties are continuing to discuss, but this motion focuses narrowly on selected requests that address threshold issues relevant to the upcoming damages contention deadline. Glaukos very much appreciates the Court's assistance with these matters.

### **IVANTIS'S INTRODUCTORY STATEMENT**

Glaukos's introductory statement mischaracterizes the merits of the case with little discussion of the discovery issues raised in its motion. On the merits of the case, let it suffice to say that: (1) discovery exchanged thus far shows that Ivantis's Hydrus® device is clinically superior to Glaukos's iStent product and promises to be able to treat many patients who could not be treated with the iStent; and (2) Ivantis strongly contests Glaukos's accusations of infringement and will show, moreover, that the asserted claims of Glaukos's patents are invalid.

As for the discovery issues, these are narrow issues that Glaukos raises now to distract from Ivantis's contemporaneously filed motion to compel, which raises disputes of actual urgency. Indeed, for most of the issues that Glaukos raises, it is not

---

[1] The deadline was set as January 4 by the Scheduling Order, but the parties stipulated to extend their respective damages contention deadlines to January 14.

1  clear what exactly the dispute is—Ivantis has either already complied with the request

2  or has agreed to do so.

3      In this respect, Glaukos's description of the meet-and-confer process is

4  misleading. The parties' October 15, 2018 phone call was initiated by Ivantis to

5  discuss Ivantis's own discovery requests (with which Glaukos still has not complied).

6  During the call, Glaukos pointed to its own discovery requests to justify its failure to

7  produce discovery in response to Ivantis's requests. *See* Santacana Decl., ¶ 3.  Weeks

8  later (on November 7, 2018) Glaukos sent a 15-page letter addressing more than 50

9  discovery requests on the part of both parties, with no focus on the specific requests

10 raised in the current Motion.  Nor did Glaukos suggest that it needed any of the

11 discovery that it discussed prior to the deadline for damages contentions.

12     Since that time, Ivantis has produced thousands of documents, well in excess

13 of Glaukos's production in both scope and volume. *Id.*, ¶ 8. It was not until December

14 18, 2018, however, in response to Ivantis's written arguments in support of its motion

15 to compel, that Glaukos identified the discovery raised in its Motion as necessary for

16 the preparation of damages contentions; the parties held another call on December 20,

17 and Glaukos initiated the motion to compel process the following day, before Ivantis

18 had adequate time to address the issues raised in the Motion. *Id.*, ¶¶ 6–7.

19     If Glaukos had conferred on these issues and identified them in a more timely

20 manner, its present Motion would have been narrowed, if not obviated.  In particular,

21 although Ivantis disputes the relevance of "historical cost information" (that is, cost

22 information for development and/or manufacture of Hydrus® prior to commercial

23 launch), it will produce responsive documents in short order.  Similarly, now that

24 Glaukos has, for the first time in this submission, conclusively identified a narrowed

25 scope of its Document Request Number 39 (which asks for all documents relating to

26 Glaukos or its patents) to three specific categories of information, Ivantis will also

27 produce responsive documents.

28

One key remaining dispute, however, is whether Glaukos should be allowed to leverage the discovery process in this case for the improper purpose of initiating new proceedings against Ivantis's foreign business partners. Glaukos's Request No. 28 (*i.e.*, the second sub-part of Disputed Issue #1) seeks to obtain the locations and activities of Ivantis' foreign manufacturing partner(s). Ivantis has already produced very extensive documentation regarding its overseas manufacturing process, and Glaukos does not raise a single inadequacy in that production. Moreover, information relating to the specific locations and identities of Ivantis' foreign manufacturing partners is irrelevant to any claim of infringement that Glaukos has alleged. Nevertheless, Glaukos insists on knowing the names and locations of these manufacturers so that it can initiate new proceedings against them—a tactic that would violate the Protective Order's prohibition against use of a party's confidential information for purposes of other proceedings.

Finally, Glaukos's sudden claim of urgency—that it needs the documents at issue to prepare damages contentions—is false. If Glaukos truly needed these documents to prepare damages contentions, it would have raised these issues weeks earlier. Additionally, Glaukos fails to explain why the specific information at issue— such as the details of Ivantis's manufacturing process—is necessary for the preparation of damages contentions, and no plausible explanation exists. Notably, Glaukos only raised the argument that it needed the documents at issue for damages contentions *after* it learned that Ivantis intended to submit its own motion to compel. Santacana Decl., ¶¶ 6–7.

For these reasons, which are discussed in more detail below, Glaukos's motion to compel should be denied.

**Disputed Issue #1: Whether Ivantis should promptly comply with Request for Production Nos. 27 and 28 by producing documentation identifying the entities involved in each aspect of manufacturing, exporting, and importing the accused Hydrus product and their geographic locations.**

The text of the requests at issue and Ivantis's responses are below.

**REQUEST FOR PRODUCTION NO. 27:** Documents sufficient to show the manufacturing, assembly, or production process for the Hydrus device, including all materials used and all manufacturing and assembly steps, and any changes to the materials used or the manufacturing and assembly steps.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 27:** Ivantis incorporates its general objections. Ivantis objects to the extent this Request seeks information subject to the attorney-client privilege, work product doctrine, and/or other applicable privilege. Subject to the foregoing objections, Ivantis invites Glaukos to meet and confer concerning the proper scope of this Request, if any.

**REQUEST FOR PRODUCTION NO. 28:** Documents sufficient to show the geographic locations for design, assembly, manufacture, use, sale, offer for sale, importing, or exporting of the Hydrus (and each component thereof), and the timing and extent of activities at each such location.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 28:** Ivantis incorporates its general objections. Ivantis objects to the extent this Request seeks information subject to the attorney-client privilege, work product doctrine, and/or other applicable privilege. Ivantis also objects to the extent this Request seeks information on foreign activities unconnected to manufacture, use, sale, or offer for sale of accused products in the United States. Subject to the foregoing objections, Ivantis will produce non-privileged, nonduplicative documents in its possession and/or control

1  responsive to this Request pertaining to manufacture, use, sale, offer for

2  sale, import, or export of the Hydrus in the United States.

3  **GLAUKOS'S CONTENTIONS REGARDING THE DISPUTED ISSUE**

4  RFP Nos. 27 and 28 seek basic information needed to determine the scope of

5  Ivantis's infringement and the specific involvement of Ivantis affiliates or third parties

6  therein. These requests followed an earlier request served on June 27, 2018, RPF No.

7  13, which sought documents sufficient to show "the geographic location(s) of

8  [Ivantis's] manufacturing, assembling, and inventory." Ivantis similarly did not

9  identify its manufacturers or produce geographic information responsive to that

10  request. To ensure that the specific entities involved in each step of the infringing

11  activities were identified, Glaukos served RFP Nos. 27 and 28 on August 7, 2018.

12  In its written responses to RFP Nos. 27 and 28, Ivantis never objected that the

13  requests are burdensome or disproportionate to the needs of the case. Indeed, Ivantis

14  served a very similar request to Glaukos, RFP No. 21 seeking documents "sufficient

15  to identify all entities involved in the design, development, manufacture, fabrication,

16  testing, installation, and/or assembly of any Glaukos Product that embodies any

17  invention described and/or claimed in Glaukos's Asserted Patents."  Payne Decl. ¶ 4.

18  In response, Glaukos produced a summary of its own manufacturing vendors and their

19  geographic locations.  Payne Decl. ¶¶ 4, 5.

20  Ivantis nonetheless asserts in its written responses that it will not produce any

21  responsive documents relating to "foreign activities." (It appears that most or all of

22  Ivantis's manufacturers and distributors are overseas, as Ivantis has produced little or

23  no information about third parties engaged in domestic manufacture or distribution.)

24  There is no basis for Ivantis to withhold information about the participants in

25  manufacture and distribution of Ivantis's accused products merely because their

26  activity occurs in whole or in part in a foreign country. Foreign manufacturing and

27  distribution activity is centrally relevant to patent infringement.  That is especially so

28  here, as Ivantis has represented to the Court that at least some of the accused Hydrus

- 6 -

products are manufactured overseas and then imported into the United States for assembly and sale. *See* Dkt. 23, p. 4 at ¶ 13 (Ivantis declaration stating, "Ivantis does not manufacture the Hydrus® Microstent in the United States. The Hydrus devices…were manufactured outside of the United States and combined with their delivery applicators in California").

**First**, Glaukos should not be required to simply take at face value Ivantis's generalized assertion that manufacturing (or some of it) is performed overseas by unspecified entities. Rather, Ivantis should provide documentation of specifically where, and by whom, each aspect of the manufacturing is performed.

**Second**, if some or all of the accused devices are manufactured overseas, that does not render them non-infringing. The Patent Act expressly defines infringement to include, among other things, importation into the United States of products and components made in foreign countries. *See* 35 U.S.C. § 271 (a) (importation of a patented product manufactured overseas is an act of patent infringement); *see also* 35 U.S.C. § 271 (c) (importation of components of an infringement product can be an act of infringement) § 271 (f) (supplying components to be assembled overseas can be an act of infringement). It is important for Glaukos to know which products are made overseas and imported in the United States, which are made in the United States, whether any are made in part in the United States and in part elsewhere (and who is engaged in each activity) so it can properly frame its infringement case against the each infringing act and entity.

**Third**, it is essential for Ivantis to disclose where and by whom its accused products are manufactured and distributed is so that Glaukos can take any necessary discovery from the third parties. Indeed, it may be necessary to bring additional parties into this action or initiate separate actions depending on exactly which entities are engaged in which aspects of manufacture and distribution of the accused devices. With foreign entities, that process would need to be started soon, as it can take months to obtain discovery under the treaties applicable to third party discovery in foreign

countries. *See, e.g.,* Federal Judicial Center International Litigation Guide (2015) at p. 9 ("It may take six months or more to receive a response pursuant to a letter of request submitted pursuant to the Hague Convention procedures."). Knowing who the third parties are and which specific foreign country they operate in are essential to that process. For these and other reasons, the identities of the manufacturers of an infringing product are clearly discoverable. *See, e.g.*, *Ultra Athlete, LLC v. Aruajo*, 14-17-cv-00237 (S.D. Ind. June 22, 2018 (rejecting argument that "the identity of manufacturers is not relevant because they are foreign" and holding that "all documents the defendants have that concern the manufacturer clearly are relevant.").

At the meet and confer, Glaukos offered to accept a single spreadsheet created by Ivantis listing the identities and locations of each participant in manufacturing, importing, and exporting its infringing Hydrus product (and the role of each participant), but Ivantis refused even this very narrow proposal. Because the information sought is relevant and Ivantis has asserted no valid objection, Ivantis should be ordered to promptly respond in full to Request Nos. 27 and 28—and at a very minimum to provide the spreadsheet proposed by Glaukos as a compromise setting forth the identities, locations, and roles of each entity involved in manufacturing the accused Hydrus products.

### IVANTIS'S CONTENTIONS REGARDING THE DISPUTED ISSUE

Glaukos's Request No. 27 seeks documents "*sufficient to show* the manufacturing, assembly, or production process for the Hydrus device" and Ivantis has produced a full complement of responsive documents satisfying this request. For example, Ivantis has produced the Hydrus Manufacturing Master Validation Report (IVNTS_0009396-411) and manufacturing Process Flow Charts for the original and current Hydrus designs (IVNTS_00008975-980 and IVNTS_00009405-408). In addition, Ivantis has produced "Manufacturing Procedure" documents that provide the complete steps for manufacturing, assembly, and production processes for the Hydrus *See* IVNTS_00006156-392.

The manufacturing procedures described in documents such as these are accompanied by graphics and/or photographs that depict the steps.    Specifically, Ivantis has produced the Manufacturing Procedure for the Side Interlock Cannula Hub Subassembly at IVNTS_00006229-233, the Manufacturing Procedure for the Side Interlock Rack Subassembly at IVNTS_00006234-237, Manufacturing Procedure for the Subassembly of the Delivery System at IVNTS_0006238-245, the Manufacturing Procedure for the Subassembly of the Hydrus Microstent at IVNTS_00006175-186, the Manufacturing Procedure for the Finished Device of the Hydrus Microstent at IVNTS_00006342-357.

Ivantis has also produced schematic drawings and specifications of the parts and subassemblies of the Hydrus. These documents provide the material of the part and include notes regarding, for example, the part's source, certification, inspection, packaging, dimensions, and descriptions and dates of revisions. *See, e.g.*, IVNTS_00005403-415,       IVNTS_00005429-501,       IVNTS_00005511-562, IVNTS_00005576-630,       IVNTS_00005643,       IVNTS_00005645-649, IVNTS_00005659-696,       IVNTS_00005710-716,       IVNTS_00005718-724, IVNTS_00005748,       IVNTS_00005759-766,       IVNTS_00005777-833, IVNTS_00005835-927,       IVNTS_00005929-997,       IVNTS_00008504-590, IVNTS_00005998-155. Ivantis has further produced Lot History Records for finished Hydrus device lots and subassembly lots that similarly provide steps for manufacturing, assembly, and inspection procedures as well as the materials and parts involved. *See, e.g.*, IVNTS_00001241 to IVNTS_00003155.

The documents described above relating to manufacturing, assembly, and production more than satisfy Glaukos's request for documents "sufficient to show" these processes.  Indeed, Glaukos has not raised any substantive concern about the sufficiency of these documents.

With respect to Glaukos Request No. 28, "the only activities that are relevant to direct infringement are those activities that take place within the borders of the

United States.  Extraterritorial activities are irrelevant." *Cybiotronics, Ltd. v. Golden Source Elecs. Ltd.*, 130 F. Supp. 2d 1152, 1163–64 (C.D. Cal. 2001) (citing *Rotec Industries, Inc. v. Mitsubishi Corporation*, 215 F.3d 1246, 1251 (Fed. Cir. 2000)); *see also Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 711 F.3d 1348, 1371 (Fed. Cir. 2013) ("It is axiomatic that U.S. patent law does not operate extraterritorially to prohibit infringement abroad.").   Accordingly, to the extent Glaukos's Request for Production No. 28 seeks the specific "geographic locations" of extraterritorial activities, the request seeks information that is irrelevant and, thus, not discoverable.  Contrary to Glaukos's assertions, the particular geographic locations of extraterritorial activities are irrelevant to whether Ivantis "imports **into the United States** any patented invention," 35 U.S.C. § 271(a), or "imports **into the United States** a component of a patented [invention]," 35 U.S.C. § 271(c)—all that matters is what Ivantis imports.  Evidence of Ivantis's domestic activities, much of which has already been produced, is wholly sufficient to address such inquiries.  Furthermore, although Glaukos cites to 35 U.S.C. § 271(f) in its above statement, Glaukos has never alleged, either in its complaint or its infringement contentions, infringement under that provision.   Thus, Glaukos should not be permitted to seek discovery related to § 271(f).  Nevertheless, the geographic locations of extraterritorial activities are also irrelevant to whether Ivantis "supplies or causes to be supplied **in or from the United States** all or a substantial portion of the components of a patented invention."  35 U.S.C. § 271(f).  *See Cybiotronics*, 130 F. Supp. 2d at 1163–64.[2]

Notably, neither of Glaukos's requests actually call for the identity of Ivantis's foreign business partners. Request No. 27 asks for the details of the manufacturing process, which Ivantis has produced, and Request No. 28 asks for geographic

---

[2] Glaukos attempts to equate its Requests with Ivantis's own Request No. 21 propounded on Glaukos, relating to entities involved in the development, manufacture, testing, and/or assembly of its accused products.  But Ivantis has never pressed Glaukos on the details of its foreign activities and Ivantis is willing to produce information regarding its domestic business partners.

locations and the timing and extent of activities. For that reason alone, Glaukos is not entitled to the identities of Ivantis's foreign business partners.

Moreover, Glaukos's insistence, in the present motion, that Ivantis identify entities involved in extraterritorial activities so that Glaukos might seek discovery from, or bring legal action against, third parties is a thinly veiled attempt to impede Ivantis's operations by interfering in its relationships with its foreign business partners.  As described above, Ivantis has already produced a significant volume of documents regarding its manufacturing process. Nevertheless, Glaukos has not identified any deficiency in that production, nor has Glaukos identified what further discovery it might propound from Ivantis's foreign business partners that Ivantis has not itself already produced. In any event, just as Glaukos is not entitled to seek irrelevant information from Ivantis related to extraterritorial activities, Glaukos is not entitled to seek irrelevant information from third parties related to such activities.  It is therefore clear that Glaukos does not seek legitimate discovery from these third parties.

Rather, as Glaukos admits, it seeks to "initiate separate actions" against these third parties—which would be an improper use of discovery in this case and a clear violation of the Protective Order.  Santacana Decl., Ex. A (D.I. 36) (Stip. & Prot. Order) § 9.1 ("A Receiving Party may use Protected Material . . . in connection with this Action only for prosecuting, defending or attempting to settle this Action."). Moreover, Glaukos has not alleged, nor can it allege, that any foreign entity has engaged in activity that would amount to infringement pursuant to any provision of § 271, or that would justify joining that entity as a defendant in this case. And in any event, the deadline to amend the pleadings has passed. Glaukos's plan to harass third parties and to obtain information irrelevant to this case cannot be disguised as a proper discovery request, and Glaukos's attempt to do so should be denied.

**Disputed Issue #2: Whether Ivantis should be required to promptly comply with Request for Production Nos. 29 and 31 by producing historical financial information and by producing documentation of its plans to target Glaukos customers.**

The text of the requests at issue and Ivantis's responses are below.

**REQUEST FOR PRODUCTION NO. 29:** Documents sufficient to show the cost, projected cost, profit, projected profit, revenue, projected revenue, margins, projected margins, or other business metrics or projected business metrics associated with producing and selling the Hydrus.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 29:** Ivantis incorporates its general objections. Ivantis objects to the extent this Request seeks information subject to the attorney-client privilege, work product doctrine, and/or other applicable privilege. Ivantis also objects to the extent this Request seeks information associated with the production and sale of products outside the United States. Subject to the foregoing objections, Ivantis will produce non-privileged documents in its possession and/or control sufficient to show the cost, projected cost, profit, projected profit, revenue, projected revenue, margins, and projected margins for accused products manufactured or sold in the United States.

**REQUEST FOR PRODUCTION NO. 31:** Your financial statements, business plans, sales plans, and marketing plans relating to the Hydrus.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 31:** Ivantis incorporates its general objections. Ivantis objects to the extent this Request seeks information subject to the attorney-client privilege, work product doctrine, and/or other applicable privilege. Ivantis also objects to this Request to the extent it is not limited to the United States. Subject

1  to the foregoing objections, Ivantis will produce responsive
2  nonprivileged, non-duplicative documents in its possession and/or
3  control.

4  **GLAUKOS'S CONTENTIONS REGARDING THE DISPUTED ISSUE**

5  RFP Nos. 29 and 31 seek information that is indisputably relevant to (among
6  other things) damages. Ivantis does not dispute that these requests are relevant, or
7  make any other objection to complying with the requests.  Indeed, Ivantis purported
8  to agree to fully comply with Request No. 31 in its response, which was served on
9  September 6, 2018.  However, more than three months and multiple unanswered
10  letters and e-mails later, Ivantis has not done so.

11  For example, Ivantis has produced no documentation of Ivantis's historical
12  revenue sources and costs (such as research and development, sales, testing, and
13  regulatory costs) related to the Hydrus product. This information is highly relevant to
14  Glaukos's efforts to fully quantify the financial advantages that Ivantis has reaped
15  from its infringement of Glaukos's patents, other facts relevant to the parties'
16  positions at the time of a hypothetical "reasonable royalty" negotiation, and the extent
17  of Glaukos's lost profits from Ivantis's infringement. *See, e.g.*, 35 U.S.C. Sec. 284
18  ("the court shall award the claimant damages adequate to compensate for the
19  infringement but in no event less than a reasonable royalty for the use of the invention
20  by the infringer"); *Georgia-Pacific Corp. v. United States Plywood Corp.*, 318 F.
21  Supp. 1116, 1120 (S.D.N.Y. 1970) (citing factors relevant to a reasonable royalty
22  including "established profitability of the product made under the patent; its
23  commercial success; and its current popularity," the "utility and advantages of the
24  patent property over the old modes or devices," and the "extent to which the infringer
25  has made use of the invention; and any evidence probative of the value of that use");
26  *Hanson v. Alpine Valley Ski Area, Inc.*, 718 F.2d 1075, 1078 (Fed. Cir. 1983) ("If the
27  record permits the determination of actual damages, namely, the profits the patentee
28  lost from the infringement, that determination accurately measures the patentee's

loss."); *id.* at 1080-81 ("Reliance upon estimated cost savings from use of the infringing product is a well-settled method of determining a reasonable royalty.").

Ivantis similarly has not made any meaningful production of documents reflecting internal business, marketing, or sales plans discussing its targeting of Glaukos customers. This omission is particularly concerning given that Glaukos was able to find on the public Internet presentations in which Ivantis touted its similarity to Glaukos's iStent® products and described its plan to take share from Glaukos in the market that Glaukos created.  Payne Decl. ¶ 2, Exs. 1, 2.  Ivantis has also recently hired two Glaukos salespersons with detailed knowledge of Glaukos's customer base and pricing, Dave Olson and Tim Gregory. Furthermore, a Board of Directors presentation produced by Ivantis includes a page indicating that Ivantis has been collecting information about specific Glaukos customers and their dealings with Glaukos (including specific volumes and average sales price) as part of Ivantis's efforts to take business from Glaukos using Ivantis's infringing product. Payne Decl. Ex. 3 (IVNTS_00020338)). Yet Ivantis has not produced any other documents regarding its targeting of Glaukos customers. For example, Ivantis has not produced its communications with the Glaukos customers identified in the Board of Directors presentation, internal discussions about how to target these and other current Glaukos customers, or any emails or other documents from the two Ivantis salespersons that Ivantis recently hired from Glaukos (Mr. Olson and Mr. Gregory).

During meet and confer and its correspondence leading up to the meet and confer, Glaukos asked that Ivantis promptly:

(1) provide its historical financial data setting forth revenue/funding sources and categories of expenses (such as research and development, sales, and regulatory costs) related to the Hydrus product, by quarter (or month, if available), and

(2) conduct a reasonable search of e-mail and non-e-mail sources for documents discussing its plans to compete with Glaukos, including without limitation all documents regarding contact with Ivantis with Glaukos customers, or internal

- 14 -

discussions regarding Glaukos's customers, volumes, and pricing (this is category is also responsive to RFP No. 39, discussed below).

With respect to the first category, Ivantis offered only vague statements that it would "look into" the issue, but refused to commit to any particular supplementation or a timeframe for doing so. With respect to the second category, Ivantis refused to disclose whether it had conducted any such searching to date (claiming that the topic was "privileged") and did not commit to complying with the proposal.

It is imperative that Ivantis make a full production regarding its historical data and its attempts to target Glaukos customers without further delay, given the direct relevance of both categories to both quantification of damages and willfulness. Glaukos therefore respectfully requests that its motion to compel be granted.

**IVANTIS'S CONTENTIONS REGARDING THE DISPUTED ISSUE**

Glaukos's Request No. 29 seeks documents sufficient to show the cost, profit, revenue, margins, or other business metrics associated with producing and selling the Hydrus, or projections thereof.  Ivantis agreed to and produced documents fulfilling this request, including a chart with revenue, cost of goods sold (COGS), gross profit, and units sold since Ivantis began commercial sale of Hydrus in the United States following FDA approval in August 2018 (IVNTS_00011685); inventory balances spreadsheets providing Hydrus unit costs for raw materials, subassembly, WIP, and finished product (IVNTS_00011615); spreadsheets of customer pricing (IVNTS_00012422-425); presentations and spreadsheets providing actual and projected U.S. sales, units, and average selling price (ASP) (IVNTS_0012426-433, IVNTS_00012495-502, IVNTS_00012438, IVNTS_00012494; IVNTS_00020875, IVNTS_00022430, IVNTS_00022221, and IVNTS_00022295); an operating plan for 2018 showing net sales, COGS, gross margin, and operating expenses, including breaking out expenses for Research and Development, Operations, Regulatory, Clinical, and Sales and Marketing (IVNTS_00012437); a balance sheet and inventory valuation summary spreadsheet for 2018 (IVNTS_00011614); weekly sales report

(IVNTS_00012503-509); consolidated income sheets, providing net revenues, cost of sales, gross profit, operating expenses broken out to show clinical, manufacturing, marketing, operations, quality, regulatory, research and development, and sales expenses, other income or loss, and net income or loss (IVNTS_00022608-609); and spreadsheets containing operating plan details for 2018-2022, including net sales, COGS, gross margin, operating expenses, other income or expenses, net loss, quarterly sales projections, U.S. MIGS and Ivantis market share projections, five-year P&L, monthly P&L, sales forecast of units sold and revenues, and COGS analysis, including costs for materials, labor, and overhead (IVNTS_00020417, IVNTS_00020740, IVNTS_00022183, IVNTS_00022345, IVNTS_00020850, IVNTS_00020864, IVNTS_00020801, IVNTS_00020760, and IVNTS_00020869).

Glaukos's Request No. 31 seeks Ivantis's financial statements, business plans, sales plans, and marketing plans relating to the Hydrus.  In response, Ivantis has produced extensive financial documents showing actual and projected sales, revenue, and market share as noted above.  In addition, Ivantis has produced an Operating Plan Summary presentation showing a P&L summary, sales ramp, and quarterly and annual market share for 2018-2022.  *See* IVNTS_00012468-473.  The P&L summary shows a financial summary of net sales, COGS, gross margin, operating expenses, including research and development, regulatory, clinical, and sales and marketing expenses, other income, and net loss.  Ivantis produced Operation Plan Update presentations showing P&L summaries and operating budgets.  *See* IVNTS_00020396-416 and IVNTS_00020418-428.  Ivantis also produced a lengthy and detailed presentation for Ivantis's September 2018 Board of Directors Meeting that includes a financial update showing July 2018 financial highlights, August 2018 sales, and U.S. market share analysis based on U.S. revenue in the operating plan; a marketing plan section providing a MIGS market update, including information regarding Glaukos's inject launch, a physician and sales training plan, a Hydrus reimbursement update, and promotional materials for Ivantis's advertising campaign;

and slides regarding U.S. commercial roll-out, including certification and targets for new accounts. *See* IVNTS_00020283-389. Ivantis further produced U.S. Market Share Analysis presentations showing projections for Ivantis U.S. sales and market share based on market scope, conservative market growth, and moderate market growth. *See* IVNTS_00012474-493. Ivantis also produced Marketing Plan Update presentations showing Ivantis's marketing strategy, Hydrus Microstent launch preparation, Ivantis's key messages regarding the Hydrus, Hydrus Microstent customer targeting, market entry timing, and Hydrus campaign theme. *See* IVNTS_00004926-938 and IVNTS_00004940-959.

In contrast to Ivantis's extensive productions in response to Request Nos. 29 and 31, Glaukos to date has provided only the highest-level financial information for its corporation, contained mostly in publicly available SEC filings and through a scattered assortment of rough graphical representations of sales figures. Aside from a pricing and reimbursement models for the line of iStent products, Glaukos has produced no documentation reflecting the costs associated with manufacturing the devices, nor any documents reflecting the costs borne in the research and development, sales, marketing, testing, and regulatory phases of product development. Unlike Ivantis's production, the documents produced fail to meaningfully demonstrate Glaukos's cost of goods sold, operating costs, variable costs, and annual profit margins, all of which Ivantis has requested and is entitled to.

Glaukos now vaguely complains that Ivantis has failed to produce "historical revenue sources and costs," which it contends are responsive to its requests. As an initial matter, numerous documents in Ivantis's production speak to Hydrus "historical" costs prior to commercial launch. *See, e.g.,* IVNTS_00012459-464) (spreadsheets of vendor deposits, showing costs from March, April, May, June, and July 2018 prior to commercialization); IVNTS_00012465(spreadsheet of clinical study accruals for March, April, May, June, and July 2018). Moreover, Glaukos has

1   yet to articulate why or how such "historical costs" would be relevant to Glaukos's
2   potential damages in this case.

3        To the extent that Glaukos intends to seek "lost profits" damages, Ivantis's
4   costs are irrelevant entirely insofar as the inquiry turns on "the amount of profit the
5   patent owner would have made." *Standard Havens Prods., Inc. v. Gencor Indus.,*
6   *Inc.*, 953 F.2d 1360, 1373 (Fed. Cir. 1991); *see also Rite-Hite Corp. v. Kelley Co.,* 56
7   F.3d 1538, 1545 (Fed. Cir. 1995) ("[T]he general rule for determining actual damages
8   to a patentee that is itself producing the patented item is to determine the sales and
9   profits lost to the patentee because of the infringement."); *Infinity Headware &*
10  *Apparel v. Jay Franco & Sons*, No. 15-CV-1259, 2015 WL 6444655, at *1 (S.D.N.Y.
11  Oct. 23, 2015) (denying motion to compel accused infringer's sales information from
12  prior to infringement (patent issuance) because the information is irrelevant to lost
13  profits).  If Ivantis decides to pursue lost profits, its pre-launch costs are also irrelevant
14  (unless they were to be factored in post-launch financials, in which case they have
15  been or will be produced).  For the same reason, pre-launch costs are not relevant to
16  the "established profitability of the product made under the patent" under *Georgia-*
17  *Pacific Corp. v. United States Plywood Corp.*, 318 F. Supp. 1116 (S.D.N.Y. 1970).
18  *See, e.g., Infinity Headware*, 2015 WL 6444655, at *1 (rejecting assertion that sales
19  information prior to infringement is relevant to *Georgia-Pacific* factors cited by
20  Glaukos).  Indeed, given that the hypothetical negotiation is to occur at the date of
21  first infringement, Glaukos has failed to show why "historical" cost information and
22  unrelated "revenue sources" would have any bearing on the hypothetical negotiation.
23  *See LaserDynamics, Inc. v. Quanta Computer, Inc.*, 694 F.3d 51, 75 (Fed. Cir. 2012)
24  ("In general, the date of the hypothetical negotiation is the date that the infringement
25  began.").

26       Despite the lack of relevance of Glaukos's amorphous request for "historical"
27  documentation, Ivantis will produce historical cost documents in short order, within
28  30 days, to avoid burdening the Court with this issue.

Finally, to the extent Glaukos is asking Ivantis to perform a general and non-email search for the alleged "targeting of Glaukos customers," this falls outside of the scope of both Request No. 29 (requesting documents sufficient to show certain financial information) and 31 (requesting financial statements, business plans, marketing plans, and sales plans). This issue is addressed below, however, with respect to Glaukos's Disputed Issue #3.

**Disputed Issue #3: Whether Ivantis should be required to promptly produce selected documents responsive to Request for Production No. 39.**

The text of the requests at issue and Ivantis's responses are below.

**REQUEST FOR PRODUCTION NO. 39:** All documents and communications referring or relating to Glaukos, this lawsuit, any Glaukos Patents-in-Suit, or any inventor of the Glaukos Patents-in-Suit.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 39:** Ivantis incorporates its general objections. Ivantis objects to this Request to the extent it seeks "All" documents as overly broad and unduly burdensome, and disproportional to the needs of the case. Ivantis objects to this Request to the extent it seeks "[a]ll documents and communications referring or relating to Glaukos" as overly broad, unduly burdensome, and disproportional to the needs of the case. Ivantis also objects to the extent this Request seeks information subject to the attorney-client privilege, work product doctrine, and/or other applicable privilege. Subject to the foregoing objections, Ivantis invites Glaukos to meet and confer concerning the proper scope of this Request, if any.

**GLAUKOS'S CONTENTIONS REGARDING THE DISPUTED ISSUE**

Ivantis has produced few or no documents responsive to this request. Although Glaukos is willing to discuss narrowing portions of the request (and the parties have been discussing a potential global resolution involving a similar Ivantis request to

reduce burden for both sides),[3] given the passage of time and need to prepare damages contentions, Glaukos cannot simply continue to wait for production of indisputably relevant documents directly relevant to damages. Accordingly, during the most recent correspondence and the last conference of counsel, Glaukos requested that Ivantis immediately produce the following subparts of the request:

- Documents relating to efforts by Ivantis to target Glaukos's existing customers and/or hire Glaukos employees knowledgeable about Glaukos's customers and pricing (see also discussion of RFP No. 31, above);

- Documents relating to Glaukos's financial metrics or regulatory strategy, including without limitation documents using Glaukos's past or current financial metrics or regulatory strategy as a reference or input to Ivantis's plans or projections (see also RFP 29, above);

- Communications with investors, potential investors, customers, potential customers, employees, and potential employees regarding similarities between the Hydrus and Glaukos's products or patents;

Ivantis has not disputed that these documents are relevant and proportionate to the needs of the case, nor could it. Intent to copy the patentee's technology and business model is highly relevant to willfulness, which serves as the predicate for enhancing damages. *See, e.g.*, *Read Corp. v. Portec, Inc.*, 970 F.2d 816, 826-27 (Fed.Cir.1992) (listing factors relevant to willfulness including "deliberate copying" as part of competitive scheme). Further, it is axiomatic that a defendant's attempts to leverage the patentee's own use of the patented technology to gain an advantage in the marketplace and the extent to which the defendant is seeking to take existing customers from the patentee are centrally relevant to damages. *See, e.g.*, *Georgia-Pacific*, 318 F. Supp. at 1120 (S.D.N.Y. 1970) (evidence relevant to reasonable

---

[3] The parties will continue to meet and confer regarding the other portions of the request, including those relevant to infringement and to invalidity issues.

1  royalty includes "extent to which the infringer has made use of the invention; and any

2  evidence probative of the value of that use").  Ivantis therefore should be ordered to

3  produce these highly relevant documents without further delay.

4  **IVANTIS'S CONTENTIONS REGARDING THE DISPUTED ISSUE**

5  Glaukos's Request for Production No. 39 is incredibly broad.  It seeks "*[a]ll*

6  documents and communications referring or relating to Glaukos," essentially seeking

7  production of every single company document that mentions Glaukos, a major player

8  in the narrow MIGS[4] field where Ivantis operates.  It is likely many, if not most, of

9  these documents would contain only passing references to Glaukos and have no

10 relevance to the claims and defenses in this case.  Ivantis properly objected to this

11 request as burdensome and disproportional to the needs of the case.  Tellingly, even

12 though Ivantis has propounded a request seeking Glaukos's documents relating to

13 Ivantis, other than publicly available documents such as SEC filings, Glaukos has

14 produced only 15 internal documents that even mention Ivantis, and has not produced

15 any emails mentioning Ivantis or Hydrus. Thus, Glaukos has made little, if any, effort

16 to comply with Ivantis's corresponding request.

17 On September 6, 2018, Ivantis invited Glaukos to meet and confer to narrow

18 the scope of its request.  Since then, Glaukos made no effort to meaningfully refine

19 Request No. 39 until December 17, 2018, shortly before Glaukos served Ivantis with

20 its portion of this Joint Stipulation. But even that December 17 letter does little to

21 address the overbreadth. To this day, Glaukos still has not agreed to limit the scope

22 of the request to the narrowed categories. *See supra* at 19 ("Glaukos is willing to

23 discuss narrowing portions of the request…"). Moreover, Glaukos's supposed

24 narrowing of the request is articulated differently in the December 17 letter and in this

25 stipulation. *Compare, e.g.*, Payne Decl., Ex. 6 at 5 ("Documents relating to

26 positioning the FDA approval strategy for the Hydrus to track approaches used by

27

28 ―――――――――――
[4] MIGS refers to Minimally Invasive Glaucoma Surgery.

Glaukos") *with supra* at 20 ("Documents relating to Glaukos's…regulatory strategy"). Glaukos's tactic of making an unreasonably broad request and then moving to enforce sub-parts of it at a moment's notice is an unreasonable approach to discovery and should be rejected outright.

Nevertheless, Glaukos currently seeks to pursue three sub-categories of Request No. 39: (1) documents relating to alleged efforts by Ivantis to "target" Glaukos customers, including through hiring of Glaukos employees knowledgeable about those customers; (2) documents relating to Glaukos finances and regulatory strategy; and (3) communications regarding "similarities" between the Hydrus and Glaukos's products or patents.

Glaukos has not identified any plausible relevance for category (1), contending only that alleged efforts to target Glaukos customers is relevant to "deliberate copying," which the Court can consider when enhancing damages after a finding of willful infringement. However, the only relevant "copying" for enhanced damages would be copying of Glaukos's patent or a "commercial embodiment" of them. *Read Corp. v. Portec, Inc.*, 970 F.2d 816, 827 & n.7 (Fed. Cir. 1992); *see also Sonos, Inc. v. D&M Holdings Inc.*, No. CV 14-1330-WCB, 2017 WL 5633204, at *2-3 (D. Del. Nov. 21, 2017) (Bryson, C.J.) (permitting, on a motion in limine, admission of evidence of copying patentee's "commercial embodiments of the patents-in-suit," but excluding evidence of "copying that is unconnected to the commercial embodiments of the patent—such as marketing, branding, and websites"). Glaukos category (1) is not directed to copying relevant to willful patent infringement, but instead appears directed to a business tort or trade secret claim, which Glaukos has not pleaded. Glaukos's motion should be denied with respect to category (1).

With respect to categories (2) and (3) of Request No. 39, although Glaukos has not articulated a clear relevance, Ivantis will produce responsive non-privileged documents in short order within 30 days. However, Ivantis does request that the Court

- 22 -

1  find that Glaukos may not later re-narrow Request No. 39 to focus on new subsets of

2  documents beyond those identified in this Stipulation.

3

4  Dated:  January 3, 2019                  Respectfully submitted,

5                                           IRELL & MANELLA LLP

6

7                                           /s/ Lisa S. Glasser

8                                           Attorneys for Plaintiff GLAUKOS
                                            CORPORATION
9

10

11  Dated:  January 3, 2019                 KEKER, VAN NEST & PETERS LLP

12

13                                          /s/ David Silbert

14                                          Attorneys for Defendant IVANTIS, INC.

15

16

17

18

19

20

21

22

23

24

25

26

27

28