1  KEKER, VAN NEST & PETERS LLP
2  ROBERT A. VAN NEST - # 84065
   rvannest@keker.com
3  DAVID SILBERT - # 173128
   dsilbert@keker.com
4  LEO L. LAM - # 181861
   llam@keker.com
5  AJAY S. KRISHNAN - # 222476
   akrishnan@keker.com
6  633 Battery Street
   San Francisco, CA 94111-1809
7  Telephone:  415 391 5400
   Facsimile:   415 397 7188
8
   Attorneys for Defendant
9  IVANTIS, INC.

ARNOLD & PORTER KAYE
SCHOLER LLP
John Ulin - # 165524
john.ulin@arnoldporter.com
777 South Figueroa St, 44th Floor
Los Angeles, CA 90017-5844
Telephone:  1.213.243.4228
Facsimile:   1.213.243.4199

ARNOLD & PORTER KAYE
SCHOLER LLP
John Nilsson (*admitted pro hac vice*)
john.nilsson@arnoldporter.com
601 Massachusetts Avenue, NW
Washington, DC 20001-3743
Telephone:  1.202.942.5000
Facsimile:   1.202.942.5999

13  UNITED STATES DISTRICT COURT
14  CENTRAL DISTRICT OF CALIFORNIA
15  SOUTHERN DIVISION-SANTA ANA

16  GLAUKOS CORPORATION, a
    Delaware Corporation,

                        Plaintiff,

        v.

    IVANTIS, INC., a Delaware
    Corporation,

                        Defendant.

Case No. 8:18-cv-00620-JVS-JDE

**IVANTIS'S SUPPLEMENTAL
MEMORANDUM IN OPPOSITION
TO GLAUKOS'S MOTION FOR
SUMMARY JUDGMENT OF NON-
INFRINGEMENT (BERLIN
PATENTS)**

Date: March 11, 2019
Time: 1:30 p.m.
Courtroom: 10C
Judge: Hon. James V. Selna

Date Filed:  April 14, 2018
Trial Date:   February 4, 2020

**REDACTED VERSION OF**

**DOCUMENT PROPOSED TO BE FILED UNDER SEAL**

# TABLE OF CONTENTS

**Page(s)**

I.    INTRODUCTION ........................................................................................ 1

II.   LEGAL STANDARD ................................................................................. 2

III.  ARGUMENT ............................................................................................. 3

    A.  Discovery Has Revealed New Evidence Confirming that
        Material Fact Disputes Preclude Summary Judgment Under
        Either Party's Proposed Constructions. ........................................... 3

        1.  There are numerous material fact disputes about
           whether the Inject "substantially inhibits contact" with
           the outer wall of Schlemm's canal. ................................... 3

           a.  ████████████████████ ject
               ████████ uter wall of Schlemm's
               canal. .................................................................... 3

           b.  Glaukos consistent
               "central outlet" as ████████████
               – which means the ████████████ y
               so that the outlet would be blocked as Glaukos
               originally asserted. .............................................. 7

    B.  Properly Construed, Summary Judgment Should Be Denied
        Because There Is No "Impingement" – i.e., Damage or
        Injury – to the Outer Wall (Even If There Were Contact). ............... 12

        1.  The claims and specification all show that "impinge"
           means not just contact, but also injure. ......................... 12

        2.  The prosecution history supports Ivantis's
           construction – and contradicts Glaukos's disclaimer
           argument. ........................................................................ 14

           a.  Berlin's prosecution statements do not form
               clear and unmistakable disclaimer. ................... 15

           b.  The prosecution history supports Ivantis's
               construction of "impinge." ................................ 16

        3.  There are numerous material fact disputes about
           whether the Inject "impinges" the outer wall of
           Schlemm's canal. ............................................................ 17

           a.  ████████████████████████
               ████████████████ ............... 18

           b.  Glaukos differentiates the Inject from ████████

i

1
2 ................................ 20
3
  (i) ................................ 21
4
5 (ii)
6 ................................ 23
7 IV.    CONCLUSION ................................................................................. 25

8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1

## <u>TABLE OF AUTHORITIES</u>

2

<u>Pages(s)</u>

3

**Federal Cases**

4

*Alfred E. Mann Found. v. Cochlear Corp.*,

5

    841 F.3d 1334 (Fed. Cir. 2016) ........................................................................ 15

6

*ATD Corp. v. Lydall, Inc.*,

    159 F.3d 534 (Fed. Cir. 1998) .......................................................................... 3

7

8

*Cole v. Kimberly-Clark Corp.*,

    102 F.3d 524 (Fed. Cir. 1996) .......................................................................... 3

9

10

*Continental Circuits LLC v. Intel Corp.*,

    --- F.3d ----, 2019 WL 489069 (Fed. Cir. Feb. 8, 2019) ................................... 12

11

12

*Core Wireless Licensing S.A.R.L. v. LG Elecs., Inc.*,

    880 F.3d 1356 (Fed. Cir. 2018) ........................................................................ 14

13

14

*Deere & Co. v. Bush Hog, LLC*,

    703 F.3d 1349 (Fed. Cir. 2012) ........................................................................ 13

15

16

*Digital-Vending Servs. Int'l, LLC v. Univ. of Phoenix, Inc.*,

    672 F.3d 1270 (Fed. Cir. 2012) ........................................................................ 13

17

18

*Honeywell Int'l, Inc. v. Univ. Avionics Sys. Corp.*,

    493 F.3d 1358 (Fed. Cir. 2007) ........................................................................ 15

19

20

*IMS Tech., Inc. v. Haas Automation, Inc.*,

    206 F.3d 1422 (Fed. Cir. 2000) ........................................................................ 17

21

*Masco Corp. v. United States*,

    303 F.3d 1316 (Fed. Cir. 2002) ........................................................................ 13

22

23

*Mycogen Plant Science v. Monsanto Co.*,

    243 F.3d 1316 (Fed. Cir. 2001) ........................................................................ 13

24

25

*Omega Eng'g, Inc, v. Raytek Corp.*,

    334 F.3d 1314 (Fed. Cir. 2003) ............................................................. 15, 16, 17

26

27

*Ormco Corp. v. Align Tech., Inc.*,

    498 F.3d 1307 (Fed. Cir. 2007) ........................................................................ 14

28

iii

*Phillips v. AWH Corp.*,
    415 F.3d 1303 (Fed. Cir. 2005) (*en banc*).............................................. 12, 13, 14

*Randall May Int'l Inc. v. Pearl Corp.*,
    2014 WL 2930725 (C.D. Cal. Mar. 11, 2014) .................................................. 15

*SanDisk Corp. v. Memorex Prods., Inc.*,
    415 F.3d 1278 (Fed. Cir. 2005) .................................................................. 15, 17

*SPEX Techs., Inc. v. Kingston Tech. Corp.*,
    2017 WL 5495149 (C.D. Cal. Oct. 18, 2017) .............................................. 15

*T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*,
    809 F.2d 626 (9th Cir. 1987) ....................................................................... 7

*United States v. Diebold, Inc.*,
    369 U.S. 654 (1962) ...................................................................................... 3

*Ventana Med. Sys. v. Biogenex Labs., Inc.*,
    473 F.3d 1173 (Fed. Cir. 2006) .................................................................. 15

iv

Defendant and Counter-Plaintiff Ivantis, Inc. ("Ivantis") submits the following Supplemental Memorandum in Opposition to the Motion for Summary Judgment ("Motion") filed by Plaintiff and Counter-Defendant Glaukos Corporation ("Glaukos").

## I.   INTRODUCTION

In December, the Court deferred Glaukos's early Summary Judgment Motion and allowed Ivantis to take discovery into whether Glaukos's Inject device "inhibits contact with" and/or avoids "impinging" the outer wall of Schlemm's canal. That discovery has confirmed that there are ***multiple*** material factual disputes about how the Inject works in relation to the outer wall of Schlemm's canal. Moreover, this new evidence produced by Glaukos contradicts many of Glaukos's earlier representations. Specifically:

- Glaukos initially disclaimed the animation depicting how the Inject sits in Schlemm's canal when implanted, dismissing it as something that "appears to have been created by a third-party vendor."[1] But discovery has now revealed that Glaukos [2] This Glaukos ————meaning that the tip is not pressed into the outer wall of Schlemm's canal, as Glaukos asserted in its Motion.

- Numerous Glaukos documents—from internal design documents, to ▮▮▮▮▮▮▮▮▮▮, to Glaukos's current web site—confirm that

---

[1] *See* Decl. of Ajay Krishnan in support of [Initial] Opp'n, Ex. 15 at p. 222 (Dkt. 65-15) (regarding RFP No. 107).

[2] *See* Decl. of David Silbert in Support of Supplemental Opp'n, ("Silbert Decl.") Ex. 1 (Fed. R. Civ. P. 30(b)(6) Dep. of Glaukos, Ex. 8).

the "central outlet" on the Inject's head functions as the central ████

██████████████████████████████████████████

████████   Again, fluid could not so exit if the central outlet were

pressed against the outer wall, and therefore blocked, which is the

premise of Glaukos's summary judgment motion.

- Glaukos designed the Inject ███████████████████
████████████████████████████████████████████

- Glaukos designed its second-generation Inject device ████████
████████████████████████████████████████████

████████████—exactly as the Berlin patents claim.

- Glaukos differentiates the Inject ██████████████████
██████████████████████████████████████
██████████████████████████████████████████
██████████████████████."

Especially when viewing this evidence in the light most favorable to Ivantis, as the Court must, these admissions by Glaukos demonstrate that the Inject does **not** contact or damage the outer wall in living patients. Based on this evidence, the jury not only may find, but is likely to find, that the Inject device "substantially inhibits contact" with the outer wall and does not "impinge" upon it.

Glaukos cannot prevail on summary judgment by telling the Court something different than what it tells patients, doctors, researchers, and regulators. Because material factual disputes exist on how the Inject is situated vis-à-vis the outer wall, the Court should deny Glaukos's motion.

## II.   LEGAL STANDARD

As set forth in Ivantis's first opposition,[3] a court may grant summary judgment of non-infringement where, "upon construction of the claims and with all reasonable factual inferences drawn in favor of the non-movant, it is apparent that

---

[3] Ivantis hereby incorporates its initial opposition by reference. *See* Dkt. 63.

only one conclusion as to infringement could be reached by a reasonable jury." *ATD Corp. v. Lydall, Inc.*, 159 F.3d 534, 540 (Fed. Cir. 1998). "A district court should approach a motion for summary judgment on the fact issue of infringement with great care." *Cole v. Kimberly-Clark Corp.*, 102 F.3d 524, 528 (Fed. Cir. 1996). Further, all inferences drawn from the underlying facts "must be viewed in the light most favorable to the party opposing the motion." *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

## III.   ARGUMENT

### A.   Discovery Has Revealed New Evidence Confirming that Material Fact Disputes Preclude Summary Judgment Under Either Party's Proposed Constructions.

#### 1.   There are numerous material fact disputes about whether the Inject "substantially inhibits contact" with the outer wall of Schlemm's canal.

Discovery that Glaukos withheld during the prior briefing shows that, even under Glaukos's claim constructions, material factual disputes exist concerning whether the Inject "substantially inhibits contact" with the outer wall of Schlemm's canal, or even contacts the outer wall.[4]

#### a.   own ▮▮▮▮▮▮▮▮ —sh ▮▮▮▮▮▮▮▮ he of Schlemm's canal.



In its opening brief, Glaukos faulted Ivantis's infringement contentions for including "a cartoonized image that Ivantis counsel captured from 'a video on youtube,'" noting, among other things, that the animation did not have words. Mot. at 15. After the Court deferred ruling on Glaukos's pending summary judgment motion, and after a protracted meet and confer process, Glaukos revealed that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. *See*

---

[4] Of Ivantis's asserted claims, all independent claims of U.S. Patent Nos. 9,603,741 and 9,833,357 include the "substantially inhibit contact" term. The independent claims of U.S. Patent No. 8,540,659 include "imping[e]" – which according to Glaukos, means "contact." Claim 1 of the '659 patent also requires that the device be "spaced from" the outer wall during insertion.

IVANTIS'S SUPPL. OPP'N TO GLAUKOS'S MOT. FOR SUMM. JUDGMENT OF NON-INFRINGEMENT
CASE NO. 8:18-CV-00620-JVS-JDE
1319786

1  Silbert Decl. Ex. 2 (Dep. Ex. 3 (GKOS00034058)), *id.* Ex. 3 (Dep. Ex. 5
2  (GKOS00034056)).  Not only did Glaukos ███████████████████████████
3  █████████████████████████████████████████████████████████████
4  ████████████████████████████████████████████████. As
5  discussed during the initial Court hearing on this motion, ██████████████
6  █████████████████████████████████████████████████████████████
7  █████████████████████████████████████████████████████████████
8  ██████████████████████████████████████████ directly
9  contradicts the entire premise of its summary judgment motion.
10    Specifically, ██████████████████████████████████
11  ████████████████████████████████████████████████████
12  ███████████████████████ Silbert Decl. Ex. 4 (Dep. Tr. At 31:20-23);
13  *see also id.* Ex. 5 (Dep. Ex. 6 (███████████████████████████
14  ██████████████[5]



15  ███████████████████
16  ███████████████████
17  ███████████████████
18  █████████████████
19  ███████████████████
20  ██████████████████ *See*
21  *id.* Ex. 3 (███████████████████████
22  ████████████ *see also id.* Ex. 4
23  (Dep. Tr. at 36:9 (█████████████████
24  █████████████████████
25    In fact, on the Friday afternoon before this Supplemental Opposition was
26  [5]██████████████████████████████████████████████████████
27  █████████████████████████████████████████████████████████████
28  ████████████████████████████████████████████

1319786

1   due, Glaukos's

2   counsel – who

3   also represents

4   ████████████

5   ███████

6   ██████

7   ████████████████████████████. *See* Silbert Decl., ¶

8   8 & Ex. 7 (Rendia 2008 animation, RENDIA00000003, stills at 2:21 and 2:23

9   depicted above). ███████████████████████

10   █████████████████████ the Inject was

11   not designed to "press against" or tent open the outer wall, rending the central

12   outlet non-functional.

13       After █████████████████████

14   █████████████████████████

15   Silbert Decl. Ex. 4 (Dep. Tr. at 36:24-25).  In fact, ████████████

16   █████████████████████████

17   █████████████████ *Id.* at 37:11-13. ████████

18   ████████████ *See, e.g., id.*, Ex. 8, (Dep. Ex. 7, May 21, 2009

19   █████████████████████████

20   ████████████████████████

21   ███████████████████████

22   ████████████████████████

23   █████████████████████████

24   ██████████████████████████

25   █████████████████████████

26   █████████████████████████

27   █████████████████████████

28



During the recent 30(b)(6) deposition of Glaukos, Glaukos's designee

asserted

1 █████████████████████████████████████████████

2 █████████████████████████████████████████████

3 ██████████████████████████████  The Court should not credit

4 Glaukos's self-serving assertions – or at the very least, should credit Ivantis's

5 evidence if any of Glaukos's evidence conflict with it.  *See e.g.*, *T.W. Elec. Serv.,*

6 *Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630–31 (9th Cir. 1987) ("[I]f

7 direct evidence produced by the moving party conflicts with direct evidence

8 produced by the nonmoving party, the judge must assume the truth of the evidence

9 set forth by the nonmoving party with respect to that fact.").

10    In sum, discovery has confirmed that █████████████████████

11 ██████████████████████████████████████████

12 ███████████████████████████████████████████████

13 and therefore "substantially inhibit[ing] contact" with the outer wall (and collector

14 channels on the outer wall), and not "impinging" the outer wall.  █████████████

15 ████████████████████████████  directly contradicting the premise

16 of Glaukos's motion.  Stamper Decl., ¶ 47; *see also* Stamper Decl., ¶¶ 13, 32 ("The

17 150 μm length of the Inject head is such that it can fit within the 190 μm to 370 μm

18 diameter of Schlemm's canal without pressing into or expanding the outer wall.").

19    **b.    Glaukos cons**█████████**'s "central**
   **outlet" as an** █████████████ **which means**

20    **the Inject wa**████████████**he outlet**
   **would be blocked as Glaukos originally asserted.**

21    Glaukos has now produced a great deal of additional evidence confirming

22 that the Inject's "central outlet" █████████████████████, by which

23 aqueous humor flows out of the device.

24    For example, █████████████████████████

25 ████████████████████████████████████████████████

26 █████████████████████████████████████

27 ████████████████████████████████████████████████

28

IVANTIS'S SUPPL. OPP'N TO GLAUKOS'S MOT. FOR SUMM. JUDGMENT OF NON-INFRINGEMENT
CASE NO. 8:18-CV-00620-JVS-JDE

1319786

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28



IVANTIS'S SUPPL. OPP'N TO GLAUKOS'S MOT. FOR SUMM. JUDGMENT OF NON-INFRINGEMENT
CASE NO. 8:18-CV-00620-JVS-JDE

1319786



Again, this admission—in

—directly contradicts Glaukos's assertions in its motion.

At deposition, Glaukos's only explanation for this contradiction was that

Moreover, the witness's self-serving assertion is demonstrably false. Glaukos describes the "central outlet" as the "central outlet" in a host of documents – including on the current version of its own web site. *See* Glaukos, iStent inject, https://www.glaukos.com/healthcare-professionals/istent-inject/ (showing "central outlet" as depicted above); *id.* Ex. 14; *see also* Stamper Decl., ¶¶ 34-38 (explaining that "the Inject is designed so that the passageway extending from the central inlet to the central outlet serves as a path for fluid traveling through the device" and identifying supporting documents).[9]

Older documents confirm that Glaukos intended the Inject's central outlet to

---

[9]

1  be the main outlet, or exit, from the very beginning. █████████████████

2  ██████████████████████████████

3  ████████████████████████████████████████

4  ████████████████████████████

5  ██████████████████████████████████

6  ████████████████████████████████████

7  ███████████████████████████████████

8        ████████████████████████████████████

9  ████████████████████████████

10 ████████████████████████████████████

11 ████████████████████████████████████

12 ██████████████████████████████████

13 ████████████████████████████████████

14 ████████████████████████████████████

15 ██████████████████████████████████████

16 ████████████████████████████████

17 ████████████████████████████████████████

18 ████████████████████████████████████

19 ████████████████████████████████████

20 ████████████████████████████

21 ████████████████████████████████

22 ██████████████████████████████

23        Glaukos now claims that ████████████████████████

24 ████████████████████"[10] – but this was *not* an isolated

25 description.  To the contrary, the peer-reviewed publication on which Glaukos

26 relies to explain fluid flow through the Inject *also* describes:

27 ─────────────                    ████████████████████████
   [10]

28 █████       ████████████████████████████████████

> In preprocessing [for the flow experiment], the mesh was configured such that *only two of the four "side" outlets maintained flow*; this assumed that when placed in Schlemm's canal, the other outlets would be blocked by tissue contact. ***While additional outlets may be unblocked in situ***, modeling it in this way ***represents a worst-case scenario.***

Glasser Decl. Ex. 2 in Opp'n to Ivantis's 56(d) Motion, Dkt. 69-3 at p. 15 (GKOS00010776) (emphasis added); *see also* Silbert Decl. Ex. 13 at GKOS00030506, GKOS00030509 (Dep. Ex. 12) (same).  The article goes on to repeatedly note that it was looking at "flow through the iStent *inject* under the *worst-case assumption* made above of only two side ports unobstructed."  *See id.* Dkt. 69-3 at p. 15 (emphasis added); *see also id.* (describing how article studied "[a] worst-case scenario for examining the [stent's] performance"); *id.* at p. 14 (GKOS00010775) ("[W]e assumed that only two side ports were unobstructed by tissue.").

Given the assumption on which the Glaukos's fluid dynamics article is based, it is surprising – to say the least – that Glaukos's counsel cited to this study as proof that there is no flow out of the central outlet.  In Glaukos's Opposition to Ivantis's 56(d) Motion to Defer Summary Judgment, Glaukos's counsel wrote that the "study . . . (like all of the other evidence) affirmatively supports non-infringement.  As shown below, the modelling shows fluid flowing out of the side ports of the Inject, with little to no fluid flow form the hole at the distal end (the end that is pressed against the outer wall)."  Dkt. 69 at p. 13.  Glaukos's brief then reproduces a heat map from the article showing fluid flow.  But of course, as explained above, the study could *never* have revealed whether fluid exits from the "hole at the distal end" – *i.e.*, the central outlet – because the study *assumed* that the central outlet was blocked in a "worst-case scenario."  That Glaukos modeled such a worst-case scenario in no way proves that this is the normal mode in which the Inject would operate.

### B.   Properly Construed, Summary Judgment Should Be Denied Because There Is No "Impingement" – *i.e.*, Damage or Injury – to the Outer Wall (Even If There Were Contact).

The parties' disclosures and earlier briefing indicate that they dispute, among other things, the construction of the term "impinge."  Ivantis contends the term means "damage" or "injure," while Glaukos contends it means "contact."  *See* Silbert Decl. Exs. 16 & 17.  As explained below, Ivantis's construction is faithful to the claim language, specification, and prosecution history, while Glaukos's is not.  The Court should therefore deny summary judgment on the '659 patent claims because there are material fact disputes about whether the Inject "damages" or "injures" – *i.e.*, impinges upon – the outer wall.  (As discussed above, the Court should also deny summary judgment on *all* claims because under any construction there are material fact disputes about whether the Inject contacts the outer wall.)

### 1.   The claims and specification all show that "impinge" means not just contact, but also injure.

Claim construction begins with an examination of the claims and patent specification, which is the "single best guide" to the meaning of disputed terms. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1315 (Fed. Cir. 2005) (*en banc*) (claims and specification are "usually" dispositive).  Claim terms should generally be given their "ordinary and customary meaning, which is 'the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention.'"  *Continental Circuits LLC v. Intel Corp.*,  --- F.3d ----, 2019 WL 489069, at *5 (Fed. Cir. Feb. 8, 2019) (citation omitted).

Ivantis's construction is consistent with the plain and ordinary meaning of the term.  According to The New Oxford Dictionary of English (1998), the term "impinge" means to "have an effect or impact, especially a damaging or negative one . . . ."  Dkt. 65-17 at p. 229.  As the patent makes clear, the term "impinge" was intended to have the negative connotation of injury or damage that mere "contact" does not.  *See, e.g.*, '659 at 3:42-43 ("if damage occurs to the outer wall"), 15:32 ("less likely to injure the outer wall"), 16:30-31 ("avoid damaging

the outer wall), 15:33 ("to protect the outer wall"), 16:51-52 ("prevent injury to its outer wall"); *see also Masco Corp. v. United States*, 303 F.3d 1316, 1325 (Fed. Cir. 2002) (construction of "drive" needed to take into account the word's "directional connotations," which "move" lacked).  Berlin's choice of a term with a specific meaning cannot be ignored—had he intended to use neutral language, such as "contact," he could have done so.

The "surrounding claim language" is also important; here, it shows that Ivantis's proposed construction is correct.  *See Digital-Vending Servs. Int'l, LLC v. Univ. of Phoenix, Inc.*, 672 F.3d 1270, 1275 (Fed. Cir. 2012).  In two of the three instances where "imping[e]" appears, other harm-related limitations clarify what it means.  *See* '659 at 18:55-58; 20:5-8 (claimed inventions must not only avoid "impinging," but must also "thereby avoid[] trauma . . . and reduc[e] the likelihood of stimulating an inflammatory cascade").  Although Glaukos argues that the term "trauma" cuts in favor of its claim construction (on the theory that "trauma" would be redundant if "impinge" implied harm, *see* Reply at 13:23-25), these claim terms are consistent with, and not identical to, each other.  "Impinge" describes the immediate act of a device coming into harmful contact with tissue.  The "trauma" (and "inflammatory cascade") language describes the resulting injury.  Thus, the terms are not redundant.[11]  *See, e.g., Deere & Co. v. Bush Hog, LLC*, 703 F.3d 1349, 1354 (Fed. Cir. 2012) ("engagement" and "secured to" were not redundant because they had different connotations).[12]

The patent specification also makes clear that minimizing tissue damage, and specifically damage to the outer wall of Schlemm's canal, is the goal of the

---

[11] Glaukos' redundancy argument operates more powerfully against its own proffered construction.  Claim 1 of the '659 patent requires inserting an implant "without substantially impinging the outer wall," and that the implant be "spaced from the outer wall."  '659 at 18:49-50.  Under Glaukos's reading of "impinge" (*i.e.*, "contact"), those phrases would be redundant.  *See Philips*, 415 F.3d at 1313.

[12] Moreover, "[t]he doctrine of claim differentiation cannot be used to overcome the plain language of the claims themselves."  *Mycogen Plant Science v. Monsanto Co.*, 243 F.3d 1316, 1329 (Fed. Cir. 2001).

claimed inventions – and an element that distinguishes them from the prior art. *See Core Wireless Licensing S.A.R.L. v. LG Elecs., Inc.*, 880 F.3d 1356, 1365 (Fed. Cir. 2018) (construing term in light of the invention's focus and the concerns that gave rise to it). For instance, the Background identifies shortcomings in prior art procedures, including problems with damage to the outer wall. '659 at 3:42-46. The specification also discusses embodiments that could better achieve the goal of protecting the outer wall. *See, e.g.,* '659 at 4:23-24 ("Schlemm's canal may be inflated to . . . protect[] outer wall structures."), 15:29-39 (same); 16:25-52 (discussing how to "prevent injury to . . . outer wall"). Many additional passages confirm Berlin's intent to minimize damage in general, and outer-wall damage in particular. *See* Silbert Decl. Ex. 18 [Ivantis Claim Constr. Discl.] at 1-6.

In short, "impinge" means "injure" because that construction "most naturally aligns with the patent's description of the invention." *Ormco Corp. v. Align Tech., Inc.*, 498 F.3d 1307, 1313 (Fed. Cir. 2007) (construing term in light of inventors' "primary basis for distinguishing their invention" over the prior art); *see also Phillips*, 415 F.3d at 1316 ("The construction that stays true to the claim language and most naturally aligns with the patent's description of the invention will be, in the end, the correct construction.") (citation and quotations omitted).

### 2. The prosecution history supports Ivantis's construction – and contradicts Glaukos's disclaimer argument.

If terms remain ambiguous after reviewing the patent claims and specification, a court may consider the prosecution history, with the proviso that "because the prosecution history represents an ongoing negotiation between the PTO and the applicant, rather than the final product of that negotiation, it often lacks the clarity of the specification and thus is less useful for claim construction purposes." *Phillips*, 415 F.3d at 1317.

Glaukos improperly asserts the same disclaimer argument against all three Berlin patents. It is clear, though, that Berlin's statements in the course of

prosecuting the '659 patent should not be used to limit the scope of the new and
different claim language used in the '751 and '357 patents.  *See Ventana Med. Sys.
v. Biogenex Labs., Inc.*, 473 F.3d 1173, 1182 (Fed. Cir. 2006) ("[T]he doctrine of
prosecution disclaimer generally does not apply when the claim term in the
descendant patent uses different language."); *see also* Opp'n at 20:10-21:2.  Even
as to the '659 patent, however, Glaukos's disclaimer argument fails.

### a.   Berlin's prosecution statements do not form clear and unmistakable disclaimer.

There is a "high standard for finding a disclaimer of claim scope" based on
an applicant's prosecution statements.  *Honeywell Int'l, Inc. v. Univ. Avionics Sys.
Corp.*, 493 F.3d 1358, 1365 (Fed. Cir. 2007).  The Federal Circuit has repeatedly
emphasized that only "***clear and unmistakable***" statements can give rise to
prosecution history disclaimer, *see, e.g., SanDisk Corp. v. Memorex Prods., Inc.*,
415 F.3d 1278, 1286-87 (Fed. Cir. 2005), and has "consistently rejected
prosecution statements too vague or ambiguous to qualify as a disavowal of claim
scope."  *Omega Eng'g, Inc, v. Raytek Corp.*, 334 F.3d 1314, 1325-26 (Fed. Cir.
2003) (citing cases).  As this Court has repeatedly noted, only those positions that
the "*applicant*" took during prosecution limit the scope of the claim.  *See SPEX
Techs., Inc. v. Kingston Tech. Corp.,* 2017 WL 5495149, at *8 (C.D. Cal. Oct. 18,
2017) (emphasis in original); *Randall May Int'l Inc. v. Pearl Corp.*, 2014 WL
2930725, at *4 (C.D. Cal. Mar. 11, 2014) (same); *see also Alfred E. Mann Found.
v. Cochlear Corp.*, 841 F.3d 1334, 1341 (Fed. Cir. 2016) ("[A]n examiner's
unilateral statement does not give rise to a clear disavowal of claim scope by the
applicant.").  Thus, Glaukos's citations to the examiner's notices of allowance are
unavailing, *see* Mot. at 7:12-:13, as Berlin never agreed with those statements.
*See, e.g.*, *Alfred E. Mann*, 841 F.3d at 1341; Opp. at 20:1-8 & n.6.

Contrary to Glaukos's assertion, none of Berlin's own statements constituted
"a clear disclaimer of devices with distal portions of 100 microns or larger."  Mot.

1319786

at 22:11-12.  Glaukos relies primarily upon Berlin's statement that "*the size or shape (or both)* of each [prior-art] embodiment, *taken together with the lack of any 'fastening member for securing the implant in place'* means that all the implant embodiments are likely to impinge the outer wall of Schlemm's canal most, if not all, of the time."  *See* Mot. at 22:1-12 (emphasis added); Glasser Ex. K at p. 656.  But as Ivantis previously explained, this statement is not a "clear and unmistakable" disclaimer of all devices based solely on their size.  *See* Opp. at 18:28-19:25.  Instead, Berlin's statement explicitly reflects an analysis of *multiple* factors – size, shape, lack of fastening member to secure the implant.  Berlin's statement suggests, for instance, that shape could become less significant as size decreases, and vice versa.  His statement also suggests that size alone,[13] or shape alone, or both may result in impingement – but that all those characteristics should be examined in light of whether there is a fastening member.  His statement is a far cry from a "clear and unmistakable" disclaimer based on size alone.

### b.    The prosecution history supports Ivantis's construction of "impinge."

Moreover, Berlin's prosecution statements make the most sense when "impinge" is interpreted to mean "damage" (as Ivantis suggests), rather than "contact" (as Glaukos suggests).  Then, it becomes clear that Berlin was distinguishing the claimed inventions from the Lynch prior art based on his belief that the Lynch embodiments, for reasons including size, shape and/or lack of a fastening member, damage the outer wall of Schlemm's canal "most, if not all, of the time."  Ultimately, Berlin's distinction focused less on the device's physical characteristics and more on its effect on the outer wall.

The Federal Circuit addressed a similar situation in a case dealing with laser sighting systems.  *Omega Eng'g*, 334 F.3d at 1318.  In *Omega Engineering*, the

---

[13] Glaukos's argument that *any* device with a distal portion over 100 microns is also misleading – because the prior art in question included distal portions from 100 *to 500* microns.  *See* Opp'n at 19 & n.4 (Dkt. 63).

1  alleged infringer argued that the patentee had disclaimed devices that directed

2  energy to the interior of the device's field of view (known as the "energy zone")

3  based on the patentee's statement that "[t]he clear advantage offered by [the

4  claimed invention] is that it only directs energy at the edge of the energy zone to be

5  measured to outline same and, as such, has virtually no effect on the temperature

6  measurement to be taken."  *Id*. at 1326.  The Federal Circuit held, however, that

7  that statement ***did not disavow all*** devices directing light into the center of the

8  energy zone, but instead underlined that the "crucial feature" of the invention is

9  that it "would not add appreciable heat."  *Id.*; *see also IMS Tech., Inc. v. Haas*

10  *Automation, Inc*., 206 F.3d 1422, 1434 (Fed. Cir. 2000) (applicant's statements did

11  not disclaim all use of specific code; claimed invention covered use of that code so

12  long as the user utilized the crucial claimed interactive process).

13       Here, as in *Omega Engineering,* the focus of Berlin's statement (and indeed

14  the claim language itself) was not on the physical attributes of the device alone, but

15  rather on its effect.  Far from operating as a disclaimer of claim scope, the

16  statement is consistent with—and offers further support for—Ivantis's claim

17  construction, and thus falls squarely within the Federal Circuit's statement that

18  "[t]here is "no 'clear and unmistakable' disclaimer if a prosecution argument is

19  subject to more than one reasonable interpretation, ***one of which is consistent with***

20  ***a proffered meaning of the disputed term***."  *See SanDisk*, 415 F.3d at 1287

21  (emphasis added).[14]

22           ### 3.   There are numerous material fact disputes about whether the Inject "impinges" the outer wall of Schlemm's canal.

23       To the extent the Inject substantially inhibits ***contact*** with the outer wall, it

24  necessarily also avoids impinging, or damaging, the outer wall.[15]  *See* Stamper

25

_____

26  [14] Glaukos's other highlighted statement is even less on point, as it only points out
    that the device's shape and size and/or the absence of a fastening mechanism may
27  render impingement more likely, but does not state that impingement ***necessarily***
    ***results*** from those characteristics, or that the invention excludes those
28  characteristics.  *See* Glasser Decl. Ex. K at GKOS00008371; Reply at 5:18-6:7.

[15] The Inject is also sized and shaped to "substantially inhibit contact with ***collector***

1319786

Decl., ¶¶ 31-33, 39-57.  Even more evidence shows that the Inject also avoids *damaging* the outer wall.

<blockquote>
a.      **Glaukos designed the Inject to protect the outer wall more effectively than its first-generation device did.**
</blockquote>

Glaukos's second-generation Inject device avoids "impinging" the outer wall more effectively than did the first-generation device.  For example, ████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ █████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████ █████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ █████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████ █████████████████████████████████████████████████████ █████████████████

Indeed, in the ████████████████████████████████████████ ██████████████████████████████████████████████████ █████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ██████████████████████████████████████████████████████

---

*channels*" as required by the '357 patent.  While the Inject's distal diameter is about 80 μm, collector channels are spaced on the outer wall at intervals of about 300 μm to 2800 μm.  Stamper Decl., ¶ 14.  Accordingly, the probability of contacting a collector channel is very low.  *Id.*, ¶ 57.

1319786

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

16

IVANTIS'S SUPPL. OPP'N TO GLAUKOS'S MOT. FOR SUMM. JUDGMENT OF NON-INFRINGEMENT
CASE NO. 8:18-CV-00620-JVS-JDE

1319786

1  ████████████████████████████████████████████████████████

2  ████████

3          This internal Glaukos evidence squares with Glaukos's patents.  Glaukos

4  states on its web site that the Inject system practices U.S. Patent Number 9,554,940

5  (Haffner, et al.).  *See* Silbert Decl. Ex. 24 (reproduction of Glaukos web page,

6  Patents, https://www.glaukos.com/patents/).  This '940 patent covers "[s]ystems

7  and methods for delivering multiple ocular implants to reduce intraocular pressure

8  . . . ."  *Id,* Ex. 25 ('940 patent).  The patent's lead inventor is David Haffner,

9  Glaukos's Senior Vice President of New Technologies.  And the specification

10 explains that "[t]he desired delivery velocity [of the injector device] can be . . .

11 sufficient to position the implant so that the distal end of the implant resides within

12 Schlemm's canal 122 (***but not so far within Schlemm's canal 122 that the distal***

13 ***end of the implant comes in contact with the outer wall of Schlemm's canal 122***

14 … as shown in FIG. 18)."  *Id.* at col. 19:56-64 (emphasis added).

15 Correspondingly, Figure 18 depicts an embodiment that appears to be the Inject not

16 ████████████████████████████  touching—and certainly not damaging—the

17 ████████████████████████████  outer wall of Schlemm's canal 122.  *See id.* at

18 ████████████████████████████  Fig. 18 (shown above).[17]

19 ████████████████████████████  **b.**

20 ████████████████████████████  ██████████████████████████████████

21 ████████████████████████████  ████████████████████████████."

22 ████████████████████████████          For purposes of its motion, Glaukos

23 ████████████████████████████  claims that the Inject stretches Schlemm's

24 canal, damaging the outer wall.  But in the past, ████████████████████

25 ████████████████████████████████████████████████████████████

26

27 [17] Although the specification also mentions embodiments in which the distal
portion touches the outer wall of Schlemm's canal and/or the axial (central) outlet
28 is non-functional because of that contact, those embodiments are not depicted in
the patent and do not appear to be the main embodiment of the invention.



**(i)**

For the purposes of this Motion, Glaukos claims that "[t]he Inject is designed to press against the outer wall of Schlemm's canal, dilating the canal and thus further enabling flow of aqueous humor."  Mot. at 4:20-21; *see also id.* at 17:6-7 (citing an Ivantis document that, Glaukos argues, "depict[s the Inject] pressing against the outer wall of Schlemm's canal . . . , expanding Schlemm's canal").  But in internal documents, Glaukos claims that

21



is described in Glaukos's '290 patent.  *See* Opp'n at 8:21-9:10 (summarizing Glaukos's '290 patent).  The '290 patent explains how aqueous humor flowing out of stent outlets can "push and hold the surrounding tissue away [from] the stent, . . . preventing tissue adhesion . . . [and] holding the space open and enlarging it" – *i.e.,* how fluid flow can create a "'hydrodynamic scaffold' effect."  Although Ivantis sought discovery on the phenomenon described in this patent, Glaukos has refused to produce it.[19]  *See* Silbert Decl. ¶ 31 & Ex. 30 (Glaukos's Resp. to Ivantis's Fourth Set of RFPs).

Here again, Glaukos's description of ▮▮▮▮▮▮▮▮▮g," as

---

[18]

[19] Glaukos argues that because the '290 patent describes a stent in an alternate path for aqueous humor, it is irrelevant and not discoverable.  But as Dr. Stamper explains, because of the flexible nature of the inner wall, "any fluid that exited the central outlet . . . would [tend] to push the Inject away from the outer wall," an effect similar to the one described in the '290 patent.  Stamper Decl. ¶ 48.

1  ████████████████████," was not an isolated event.  Glaukos has

2  emphasized the Inject's "████████████████████████████████████

3  ███████████████████████████████████████████████

4  ███████████████████████████████████████████

5  ██████████████████████████████████████████

6  ████████████████████████████████████████████████

7  ███████████████████████████████████████████

8  ███████████████████████████████████████████████████

9  █████████████████████████████████████████████████

10 █████████████████  ██████████████████████████████

11 ████████████████████████████████████████████████████

12 ██████████████████████[21]

13              **(ii)   Glaukos's internal documents repeatedly**
                 **emphasize that the Inject causes little to no**
14               **damage to the outer wall.**

15       Glaukos relies almost exclusively on the 2012 Bahler article (including the

16 Le article, which cites Bahler) to show that the Inject apparently damages the outer

17 wall of Schlemm's canal.  *See, e.g.*, Mot. at 13-15.  ██████████████████████

18 █████████████████████████████████████████████████████

19 ███████████████████████████████████████████████

20 ████████████████████████████████████████████████

21 ██████████████████████████████████████████████

22 ███████████████████████████████████████████████

23   █████████████████████████████████████████████████████

24   ████████████
     [20] ██████████████████████████████████████████████████

25   ████████████████████████████████████████████

26   [21] █████████████████████████████████████████████████

27   ███████████████████████████████████████████████ has

28 ████████████████████████Schlemm's canal, an anatomical fact that supports
   Ivantis's arguments – while Glaukos ignores this anatomy.



24

[24] *See also* Stamper Decl., ¶ 13 (explaining that, historically, measurements of Schlemm's canal "may not have accurately reflected those of a living human eye . . . because such measurements have been largely made on post mortem eyes").

24

IVANTIS'S SUPPL. OPP'N TO GLAUKOS'S MOT. FOR SUMM. JUDGMENT OF NON-INFRINGEMENT
CASE NO. 8:18-CV-00620-JVS-JDE

1319786

[redacted]. For example, an article by Hady Saheb and Iqbal Ahmed (a Glaukos consultant) cited the "Poster" on Bahler's study, explaining that "[l]ight and scanning electron microscopy showed minimal endothelial disruption of Schlemm's canal outer wall" after implanting Inject. *See* Silbert Decl. Ex. 6 (GKOS00034732 at 4735).

## IV. CONCLUSION

In sum, discovery has revealed new evidence confirming that material fact disputes preclude summary judgment on whether the Inject "substantially inhibits contact" with, and avoids "impinging," the outer wall of Schlemm's canal. Furthermore, the Court should construe "impinge" as "injure" (and reject Glaukos's disclaimer argument because Berlin did not make any "clear and unmistakable" statements supporting such disclaimer). For the foregoing reasons, including material factual disputes over how the Inject interacts with the outer wall, the Court should deny Glaukos's Motion for Summary Judgement of Non-infringement.

Dated: February 25, 2019

KEKER, VAN NEST & PETERS LLP

By: */s/David Silbert*
Robert A. Van Nest
David Silbert
Leo L. Lam
Ajay S. Krishnan

ARNOLD & PORTER KAYE SCHOLER LLP

JOHN ULIN
JOHN NILSSON (*admitted pro hac vice*)

Attorneys for Defendant
IVANTIS, INC.

[25] [redacted]