IRELL & MANELLA LLP
Lisa S. Glasser (223406)
lglasser@irell.com
David McPhie (231520)
dmcphie@irell.com
840 Newport Center Drive, Suite 400
Newport Beach, California 92660-6324
Telephone: (949) 760-0991
Facsimile: (949) 760-5200

Morgan Chu (70446)
mchu@irell.com
Stephen Payne (310567)
spayne@irell.com
1800 Avenue of the Stars, Suite 900
Los Angeles, California 90067-4276
Telephone: (310) 277-1010
Facsimile: (310) 203-7199

Attorneys for Plaintiff
GLAUKOS CORPORATION

<span style="color:red">Redacted Version of Document
Filed Conditionally Under Seal</span>

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## SOUTHERN DIVISION

| | |
|---|---|
| GLAUKOS CORPORATION, a Delaware Corporation,<br><br>　　　　Plaintiff and Counter-Defendant,<br><br>　　v.<br><br>IVANTIS, INC., a Delaware Corporation,<br><br>　　　　Defendant and Counterclaimant. | Case No. 8:18-cv-00620-JVS-JDE<br><br>**MEMORANDUM IN REPLY TO IVANTIS, INC.'S SUPPLEMENTAL OPPOSITION TO SUMMARY JUDGMENT**<br><br>Date: March 11, 2019<br>Time: 1:30 p.m.<br>Courtroom: 10C<br>Judge: Hon. James V. Selna<br><br>Date Filed: April 14, 2018<br>Trial Date: Feb. 4, 2020 |

# **TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION ....................................................................................1

II.   SUMMARY OF THE UNDISPUTED FACTS...................................3

    A.   Undisputed Facts Regarding the Berlin Patents ....................3

    B.   Undisputed Facts Regarding The Inject And Schlemm's
       Canal ......................................................................................5

III.  NO GENUINE DISPUTES EXIST REGARDING
    INFRINGEMENT ...............................................................................7

    A.   '659 Patent, Claim 1: "distal end being positioned adjacent
       the inner wall of Schlemm's canal and spaced from the
       outer wall of Schlemm's canal" ............................................8

    B.   '659 Patent, Claim 15: "fastening member for securing the
       implant in place so as not to impinge the outer wall of
       Schlemm's canal"; *see also* Claim 1: "does not ordinarily
       impinge the outer wall" .......................................................10

    C.   '741 Patent, claims 1 and 14: "distal portion configured to
       substantially inhibit contact with the outer wall of
       Schlemm's canal" .................................................................15

    D.   '741 Patent, claims 29 and 33: "the distal portion is sized
       and shaped to engage a wall of Schlemm's canal and
       wherein engagement of the wall of Schlemm's canal is
       limited to engagement of an inner wall"...............................16

    E.   '357 Patent, all claims: "distal portion sized and shaped to
       substantially inhibit contact with collector channels on the
       outer wall".............................................................................17

IV.   IVANTIS'S ATTEMPT TO CREATE "DISPUTES" FAIL.......................18

    A.   There Is No Material Dispute Regarding "Fluid Flow" ....................18

    B.   Ivantis's Arguments Regarding a 2010 Animation Have
       No Merit ................................................................................20

    C.   Ivantis's "Garden Hose" Argument Is Not A Genuine
       Dispute ..................................................................................23

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*ACCO Brands, Inc. v. Micro Sec. Devices, Inc.*,
   346 F.3d 1075 (Fed. Cir. 2003) ........................................................... 12

*ERBE Elektromedizin GmbH v. Canady Tech. LLC*,
   629 F.3d 1278 (Fed. Cir. 2010) ........................................................... 10

*Heuft Systemtechnik GMBH v. Indus. Dynamics Co.*,
   282 F. App'x 836 (Fed. Cir. 2008) ...................................................... 16

*Invitrogen Corp. v. Clontech Laboratories, Inc.*,
   429 F.3d 1052 (Fed. Cir. 2005) ........................................................... 15

*Kruse Tech. P'ship v. Daimler AG*,
   2012 WL 12888110 (C.D. Cal. Mar. 21, 2012) .................................... 23

*MAG Aerospace Industries, Inc. v. B/E Aerospace, Inc.*,
   816 F.3d 1374 (Fed. Cir. 2016) ..................................................... 18, 22

*Omega Engineering, Inc. v. Raytek Corp.*,
   334 F.3d 1314 (Fed. Cir. 2003) ........................................................... 12

*Ormco Corp. v. Align Technologies, Inc.*,
   498 F.3d 1307 (Fed. Cir. 2007) ..................................................... 16, 17

*Pazandeh v. Yamaha Corp. of Am.*,
   2017 WL 6940551 (C.D. Cal. Jul. 25, 2017) .................................. 13, 23

*Phillips v. AWH Corp.*
   415 F.3d 1303 (Fed. Cir. 2005) ........................................................... 13

*Regents of Univ. of Minn. v. AGA Medical Corp.*,
   717 F.3d 929 (Fed. Cir. 2013) ....................................................... 18, 22

*Springs Window Fashions LP v. Novo Indus., L.P.*,
   323 F.3d 989 (Fed. Cir. 2003) ......................................................... 3, 10

*TechSearch, LLC v. Intel Corp.*,
   286 F. 3d 1360 (Fed. Cir. 2002) ............................................................ 9

*Telemac Cellular Corp. v. Topp Telecom, Inc.*,
    247 F.3d 1316 ............................................................................................ 6

*Transbay Auto Serv., Inc. v. Chevron USA Inc.*,
    807 F.3d 1113 (9th Cir. 2015) .................................................................. 9

*Universal Elec., Inc. v. Logitech, Inc.*,
    2012 WL 13028642 (C.D. Cal. May 9, 2012)........................................ 11

*Whirlpool Corp. v. LG Electronics, Inc.*,
    2006 WL 2035215 (W.D. Mich. July 18, 2006) ............................... 18, 22

**Rules**

Fed. R. Evid. 801 ............................................................................................ 9

# I.    **INTRODUCTION**

There is no genuine dispute that the Inject's "head" is too large to satisfy the asserted claims. The Inject's head is placed between the inner and outer walls of Schlemm's canal, and is 150 microns long. RSS 1-2.[1] The space between the inner and outer walls is much smaller—about 30 microns or less. RSS 4-6. As a result, the sharp surface of the Inject's head necessarily presses against the outer wall.

Supplemental discovery has not altered these facts. To the contrary, it revealed ███████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████ ██████ These are exactly the same facts established by the prosecution history and the Mayo Clinic images in the article cited in Ivantis's Infringement Contentions.

At the prior hearing, Ivantis admitted that in the image at right, "the [I]nject is shown…pushing against the bottom light area, which would be the outer wall of Schlemm's canal…it's certainly something they could say is an argument supporting noninfringement."). Ex. N at 10:4-8, 21-22. Ivantis argued that, if given additional time, it could discredit  the Mayo Clinic images. Just the opposite has occurred. Ivantis's own expert does not even mention the Mayo Clinic study in his declaration, and did not perform any study of his own. Ivantis resorts to citing cartoons rather than images of actual implanted stents. Meanwhile, supplemental discovery revealed that ██████████████████ ███████████████████. In fact, Ivantis features ***exactly the same image*** that Ivantis argued at the prior hearing is not reliable evidence of how the Inject works, in Ivantis's description to ████████████████ of "***How [the Inject] works***." Ex. O.

---

[1] "RSS" refers to Glaukos's Reply Separate Statement. Exhibits designated by letters refer to the Exhibits to the Glasser Declaration (Dkt. 54-3) (Exs. A-M) and the Supplemental Glasser Declaration filed herewith (Exs. N-V).

1
2
3
4
5
6
7
8
9

## iStent inject: How it works

IVANTIS



Figure 1 Illustration of iStent® (Glaukos Corporation, Laguna Hills, CA, USA) (A) and iStent inject® (Glaukos Corporation) (B).

FIGURE 5. Dilation of Schlemm canal following insertion of iStent inject. Insertion of the head of the iStent inject into Schlemm canal increased separation between inner and outer walls, resulting in dilation. (Top) Seventy-five µm from iStent inject. (Top middle) 25 µm from iStent inject. (Bottom middle) edge of iStent inject. (Bottom) middle of iStent inject. TM = trabecular meshwork; SC = Schlemm canal; SL = sclera.

10
11       Unable to dispute—indeed, having expressly admitted—the material facts,
12   Ivantis's supplemental brief adopts a strategy of distraction. Ivantis largely focuses
13   on setting up a straw man "dispute" about whether fluid exits from the central hole
14   used to load the Inject onto the insertion trocar. The purported dispute is immaterial,
15   since merely showing a possibility of fluid flow would not establish any of the claim
16   requirements. Glaukos has never argued that the Inject creates a watertight seal when
17   it contacts the wall, and it would not necessarily do so especially given that the wall
18   indisputably is not uniformly flat. Ex. K at GKOS00008371 (Berlin representation to
19   the Patent Office that the wall is curved and "naturally pulsating").

20       Ivantis's other main argument is based on a decade-old cartoon rendering of
21   the Inject. Ivantis does not even argue it is anatomically precise, rendering immaterial
22   the debate over whether the artist accurately captured the Inject contacting the outer
23   wall. The actual facts about the Inject's relationship to the outer wall are not in
24   dispute. Indeed, in an exhibit that Ivantis cites, Glaukos expressly instructed the artist:
25   "*[t]here should be no space* and it [Schlemm's canal] should be *snug against the*
26   *device*."[2] Silbert Decl. Ex. 1 at GKOS00034755. Ivantis's failure to identify a genuine
27   dispute about the material facts requires summary judgment.

28
_____

[2] All bold/italics herein has been added for emphasis, unless otherwise noted.

Further, the prosecution history provides an independent basis for summary judgment. To distinguish Glaukos's prior art Lynch patent, Berlin (1) represented to the Patent Office that Schlemm's canal is 30 microns or less between the inner and outer walls, and (2) disclaimed all embodiments of Lynch, representing that none could satisfy the claims due to their "size or shape (or both)." Lynch discloses a distal portion size range of 100 microns to 500 microns *and* openings from which fluid exits towards the outer wall. *See* Section II.A. Ivantis does not, and cannot, reconcile Berlin's representations to Patent Office with its current infringement arguments. Under settled Federal Circuit law, Ivantis cannot maintain infringement claims by repudiating the patentee's representations to the Patent Office. "[B]y distinguishing the claimed invention over prior art, an applicant is indicating what the claims do not cover[.]" *Springs Window Fashions LP v. Novo Indus., L.P.*, 323 F.3d 989, 994 (Fed. Cir. 2003) (summary judgment granted where the accused device had the same features as the disclaimed prior art).

## II.  **SUMMARY OF THE UNDISPUTED FACTS**

### A.  **Undisputed Facts Regarding the Berlin Patents**

The Berlin patents describe an implant that resides *only in the inner wall of Schlemm's canal*. It "self-retains in the inner wall" and optionally "extends into and through the trabecular meshwork." Ex. K at GKOS00008533, '659 patent at 16:59-61; Fig. 15 (embodiment extending from inner wall into the trabecular meshwork) (above right, yellow highlighting added to



FIG. 15

implant). It is either a plain tube, or optionally a tube with tiny "foldable legs" that are "released into the proximal inner wall of Schlemm's canal." *Id*. at 17:43-44. This "inner wall"-only design reflected the inventor's belief that it is important to avoid "contact with or breaching of the distal [outer] wall." *Id*. at 15:45-46.

As discussed in Glaukos's opening brief, Berlin filed a purported continuation application in 2007 attempting to broadly claim a Schlemm's canal implant, without requiring the implant to avoid contact with the outer wall. The Patent Office repeatedly rejected the claims, primarily based on two prior art Glaukos patents (Bergheim and Lynch). Lynch discloses implants having proximal portions in the anterior chamber and distal portions in Schlemm's canal, including optional features such as openings at the distal end and anchoring elements. *E.g.*, Ex. I at 9:14-19 ("fenestrations and openings [which] may be round, ovoid, or other shapes as needed for optimum aqueous humor channeling"), 11:48-49, Figs. 2, 4D.

After years of rejections, Berlin added the claim language at issue in this motion to what became the '659 patent. Berlin then argued to the Patent Office that the amended claims are patentable because, "in the present invention where the implant is positioned to abut the inner wall of Schlemm's canal but ***spaced from the outer wall*** a very significant advantage is achieved." Ex. K at GKOS00008306. In support of this argument, Berlin presented "supplemental information" describing the distance from the inner to outer wall as about 20-30 microns or less. RSS 5-7; Ex. K at GKOS00008399 (1 to 30 microns "depending on the IOP"), 8432 (30 microns at low IOP), 8440 (15-20 microns).

Berlin then provided the Patent Office a list of reasons that Lynch allegedly did not anticipate the claims, specifically including Lynch's disclosure of distal portion sizes ranging from "100 microns to 500 microns." According to Berlin, due to "size or shape (or both)," each Lynch embodiment is "likely to impinge the outer wall of Schlemm's canal most, if not all, of the time." Ex. K at GKOS00008370-71. Following an interview between the Examiner and Berlin, the Examiner allowed the claims. The "Reasons for Allowance" explained that the Examiner interpreted ***all claims*** to require a distal end "spaced from the outer wall." *Id.* at GKOS00008453.

Prosecution of the '741 and '357 patents proceeded similarly. Berlin again proposed broad claims, which again were rejected based on Glaukos's prior art. The

Examiner allowed the claims only after Berlin added limitations requiring that the implant inhibit contact with the outer wall. RSS 14-15 (patents allowable for "substantially the same reasons," including requirement to "substantially inhibit contact" and "*only contact the inner wall and inhibit contact with the outer wall*."). As discussed below, no reasonable jury could find that these limitations, added specifically to distinguish Glaukos prior art, are present in the Glaukos Inject.

### B.   Undisputed Facts Regarding The Inject And Schlemm's Canal

Ivantis's Infringement Contentions identify the Inject's "head" as the "distal portion" that "resides in Schlemm's canal" and allege that the head extends 150 microns from the inner wall of Schlemm's canal towards the outer wall. RSS 1-2. The distal end of the head is sharp. Ex. E ("SHARP EDGE").

The applicant expressly represented to the Patent Office that the distance between the inner and outer walls of Schlemm's canal is about 30 microns or less (much smaller than the Inject's 150-micron head). *See* Section II.A. Even if Ivantis could now "dispute" this anatomical fact from the prosecution history, Ivantis's exhibits uniformly confirm it. For example, Ivantis submitted a scientific article with a "scanning electron micrograph of a human sample cut in cross section." Dkt 65-23 at 335 (excerpt at right with added annotations in red, including line segment showing distance between inner wall ("IW") and outer wall ("OW")). As seen  from the "50 μm" scale, this image again confirms that the canal is ***about 30 μm between the IW (inner wall) and OW (outer wall)***, with a longer major axis. *Id. See also* Dkt. 65-24 at 348 (scientific article submitted by Ivantis, confirming that the minor axis dimension of Schlemm's canal is "20 μm").

The below Ivantis exhibits also confirm that the canal is about 20-30 microns between the inner/outer walls, with a longer major axis:



Dkt. 65-26 at 371 (added annotations in red; as stated in the text, "SC" identifies Schlemm's canal, with "10 µm" scale bar); Dkt. 65-31 at 408 (added annotations in red; as stated in the text, "S" identifies Schlemm's canal and "bar = 50 µm").

Ivantis now submits an expert declaration, but the expert does not purport to have measured Schlemm's canal (or to have even surveyed the academic literature). The expert does not discuss any of the publications shown above or in the prosecution history. Instead, he merely notes that a 1971 article describes the canal "diameter" as in the range of 190-370 microns. Stamper Decl. ¶ 13. This obviously refers to the larger major axis, not the minor axis (extending from the inner to outer wall). Indeed, the expert pointedly omits any dimension for the minor axis, even though he admits that the canal is not round but rather "slit-like." *Id*. The declaration is clearly insufficient to create a genuine issue. *Telemac Cellular Corp. v. Topp Telecom, Inc*., 247 F.3d 1316, 1329 (rejecting expert testimony that was contrary to admissions of the party presenting the expert) ("Broad conclusory statements offered by [] experts are not evidence and are not sufficient to establish a genuine issue of material fact."). *See also* Glaukos's Objections to Evidence.

On page 19 of its brief, Ivantis also excerpts two sketches which it suggests show the Inject as smaller than the canal, but stops short of arguing this is actual evidence of their relative size. Indeed, other sketches in the same exhibit show the Inject as much larger than the canal, confirming that relative size was not the focus of

1  the person sketching. Silbert Decl. Ex. 23 at GKOS000024321.

2          Other supplemental discovery yet further solidifies the indisputable fact that

3  the 150-micron Inject is much larger than the space between the inner and outer walls.

4  ████████████████████████████████████████████████████████████

5  ██████████████████████████████. Glaukos's documents are in accord. Ex.

6  Q at GKOS00019295 (Inject Design History File "Key Dimensions" including

7  "Width of Schlemm's Canal" as "*15-25 µm*"); Ex. R at GKOS00033948-49 (Inject is

8  "fixed against [the] rear wall" of Schlemm's canal), Ex. S at GKOS00019637 ("[a]fter

9  placement of the [Inject] stent in an eye, it is assumed that the central 80µm hole will

10  be pressed up against the back scleral wall of Schlemm's canal").

11  ████████████████████████████████████████████████████████████

12  ████████████████████████████████████████████████████████████

13  ████████████████████████████████████████████████████████████

14  █████████████████████████████████████████

15  ████████████████████████████████████████████████████████████
16  ████████████████████████████████████████████████████████████
17  ████████████████████████████████████████████████████████████
18  ████████████████████████████████████████████████████████████
19  ████████████████████████████████████████████████████████████
20  ████████████████████████████████████████████████████████████
21  ████████████████████████████████████████████████████████████
22  ████████████████████████████████████████████████████████████
23  ████████████████████████████████████████████████████████████

24  ## III.  <u>NO GENUINE DISPUTES EXIST REGARDING INFRINGEMENT</u>

25          As discussed below, the undisputed facts cannot support infringement of the

26  asserted claims, properly construed. Indeed, Ivantis did not disclose in its

27

28

1  Infringement Contentions, and has not disclosed here, any basis to find infringement
2  even if Ivantis's own (erroneous) claim constructions are adopted.

3      **A.    '659 Patent, claim 1: "distal end being positioned adjacent the inner wall of Schlemm's canal and <u>spaced from the outer wall</u> of Schlemm's canal"**
4

5          The analysis of this element is straightforward because Ivantis does not even
6  argue that the Inject's distal end is adjacent to the inner wall and spaced from the outer
7  wall, as claim 1 requires. Ivantis does not address this element in its supplement brief
8  at all. Because the inner and outer walls are significantly less than 150 microns apart,
9  the distal end of the head is not "spaced from" the outer wall. The Le article cited in
10 Ivantis's Infringement Contentions contains high-resolution images that illustrate
11 exactly this—the Inject's distal end presses into the outer wall.

 

17 RSS 8-10; Ex. B at 193; Ex. C at 204-05. As Ivantis's counsel conceded at oral
18 argument, in these images, the Inject is "***pushing against the bottom light area, which***
19 ***would be the outer wall of Schlemm's canal***, so it's a persuasive image from
20 Glaukos's perspective…***it's certainly something they could say is an argument***
21 ***supporting noninfringement***." Ex. N at 10:4–8, 21-22.

22         Further, as Ivantis contends that the Inject's head is 150 microns long and its
23 end extends away from the inner wall, RSS 1-2, the distal end of the head clearly is
24 not "adjacent the inner wall," but rather positioned 150 microns from it.

25         Ivantis argues that the Mayo Clinic images "have limited significance in living
26 patients." But Ivantis's own expert offers no discussion of the Mayo Clinic's analysis
27 —much less any reason that its protocol would not accurately capture the impact of
28 inserting the Inject while the patient is living. As the Mayo Clinic study explains, the

eyes were obtained just $12.8 \pm 6.0$ hours after the donors passed away, then maintained in a culture with the conditions of a live eye: "37 C in a 5% CO2 atmosphere while being perfused at the normal human flow rate of 2.5 μL/min." Ex. C at GKOS00010415. In other words, the study is among the best evidence, especially since the parties agree one cannot view the outer wall behind the Inject in a live eye.

Further, Ivantis itself proffered this study, citing the Le article containing the Mayo Clinic images *throughout its Infringement Contentions*. Fed. R. Evid. 801(d)(2)(B); Adv. Comm. Note ("Under established principles an admission may be made by adopting or acquiescing in the statement of another…: 'X is a reliable person and knows what he is talking about.'"); *Transbay Auto Serv., Inc. v. Chevron USA Inc.*, 807 F.3d 1113, 1118 (9th Cir. 2015) ("[W]hen a party acts in conformity with the contents of a document … such an action constitutes an adoption of the statements contained therein."). That alone renders them central to the question of infringement, since infringement is evaluated by reference to the Infringement Contentions. ▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮ *See* Section II.B; Fed. R. Evid. 801(d); 803(6)(B).

Finally, and most fundamentally, Ivantis bears the burden of proving infringement. *TechSearch, LLC v. Intel Corp.*, 286 F. 3d 1360, 1371-72 (Fed. Cir. 2002) (patentee required to "carry its burden of proof of infringement" at summary judgment stage). Even if the very images that Ivantis cited in its Infringement Contentions ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ could somehow be disregarded because they are not in live eyes, Ivantis has identified no other images showing the Inject in actual eye tissue. Indeed, Ivantis fails to cite the additional testing images that Glaukos located during the supplemental discovery period, which

1   also very clearly show the Inject as much larger than the canal from inner to outer

2   wall, and pressing well into the outer wall of the canal. Ex. U at GKOS00034723-24.

3    In sum, the record is devoid of evidence from which a jury could find that the

4   distal end of the Inject's head somehow is both adjacent to the inner wall and spaced

5   from the outer wall of Schlemm's canal, as claim 1 requires.

6    **B.** **'659 Patent, claim 15: "fastening member for securing the implant
in place so as not to impinge the outer wall of Schlemm's canal";**

7      ***see also* claim 1: "does not ordinarily impinge the outer wall"**

8    The Inject is not secured by a fastening member "so as not to impinge the outer

9   wall," for at least three independent reasons.

10    First, any such argument is barred by the prosecution history. To distinguish

11   Glaukos's prior art Lynch patent, Berlin represented that Schlemm's canal is 30

12   microns or smaller between the inner and outer walls, and provided a list of reasons,

13   including Lynch's 100 to 500 micron distal portion size range, that each Lynch

14   embodiment "impinge[s] the outer wall most, if not all, of the time." Ex. K at

15   GKOS00008370-71. Ivantis now argues that the Inject's 150 micron head somehow

16   does not "impinge." But Federal Circuit precedent is clear that a party may not argue

17   to the Patent Office that prior art does not practice the claim, then repudiate its

18   representations to allege infringement by a device with the same features:

19     ***The public notice function of a patent and its prosecution history
requires that a patentee be held to what he declares during the
prosecution of his patent***. A patentee may not state during prosecution
that the claims do not cover a particular device and then change position
and later sue a party who makes that same device for infringement. The
prosecution history constitutes ***a public record of the patentee's
representations concerning the scope and the meaning of the claims***,
and competitors are entitled to rely on those representations when
ascertaining the degree of lawful conduct.

20

21

22

23

24

25   *Springs Window*, 323 F.3d at 994-995 (internal quotation marks and citation omitted);

26   *ERBE Elektromedizin GmbH v. Canady Tech. LLC*, 629 F.3d 1278, 1286-87 (Fed.

27   Cir. 2010) (summary judgment of non-infringement because patentee distinguished

28

the accused infringer's patent during prosecution based on its range of disclosed flow rates and velocities); *Universal Elec., Inc. v. Logitech, Inc.*, 11-CV-010056-JVS-AN, 2012 WL 13028642, at *11 (C.D. Cal. May 9, 2012) (summary judgment based on statements to the Patent Office about remote controls were "aimed at demonstrating the device has an element or limitation that [the prior art] does not" and thus "the applicant disclaimed his invention being a remote control").

By expressly representing that the inner-outer wall dimension of Schlemm's canal is smaller than Lynch's 100 to 500 micron size range, Berlin disclaimed any argument that the 150-micron Inject head does not contact the outer wall. Ivantis's argument that statements distinguishing prior art do not create disclaimer if "subject to more than one reasonable interpretation," Supp. Opp. at 17, only highlights the doctrine's applicability. Ivantis has not mustered any interpretation (much less a reasonable one) of Berlin's representations that does not apply equally to the Inject. Ivantis indeed concedes that Berlin's "statement…suggests that *size alone*, or shape alone, or both may result in impingement." Supp. Opp. at 16:11-12.

Ivantis argues that the presence of a fastening member is also relevant, *id*. at 16, but critically *does not identify any alleged distinction between the Inject and Lynch regarding this element*. To the contrary, as illustrated in Glaukos's prior reply and again below, just like the Inject, Lynch discloses a distal portion in Schlemm's canal that is joined with the proximal portion in the anterior chamber by a narrower neck in the middle. Figure 2, shown below, is an example of such a configuration.



There is no credible argument that the Inject has "a ***fastening member*** for securing the implant in place so as ***not to impinge the outer wall***" given Berlin's representation that Lynch both lacks a fastening member and impinges the outer wall. Ivantis's argument that Berlin's statements did not rise to the level of disclaimer is contrary even to its own case, *Omega Engineering, Inc. v. Raytek Corp.*, 334 F.3d 1314 (Fed. Cir. 2003), which reaffirms that when a patentee represents that "a particular structure is not within his invention, the patentee is not permitted to assert in a subsequent infringement action that the same structure [is within the invention]." *Id.* at 1325.

Second, Ivantis's "impingement" argument is entirely based on an erroneous construction of "impinge" as "damage or injure." Notably, this contradicts Ivantis's own prior opposition and the definition cited therein, which was merely: "***have an effect or impact***, especially a damaging or negative one." Dkt. 63 at 15.

Ivantis's construction is also contrary to the intrinsic record. The "not to impinge" language is not part of the patent's specification, but rather was introduced by Berlin to distinguish prior art. As discussed above, Berlin's representations to the Patent Office about why Lynch "impinges" focused entirely on the "size or shape (or both)" of the implant relative to Schlemm's canal. Berlin never argued that Lynch damages the outer wall.[3] Lynch itself in fact states: "the eye tissues and the aqueous remain non-detrimentally affected by the presence of the implanted device." Ex. I at 9:53-56. And in adopting Berlin's argument, the Examiner never suggested that "impinge" meant "damage or injure." To the contrary, the "Reasons for Allowance" state that all claims require "spacing" from the outer wall. RSS 13; *ACCO Brands, Inc. v. Micro Sec. Devices, Inc.*, 346 F.3d 1075, 1079 (Fed. Cir. 2003) (claims must be construed in accordance with the reasons for allowance where they correspond to the applicant's arguments, even where the claims are not all worded identically).

---

[3] On page 16 of its brief, Ivantis asserts that Berlin argued the Lynch embodiments "damage the outer wall of Schlemm's canal." Ivantis does not cite any purported evidence in support of this statement, which is simply wrong.

1   Ivantis attempts to link its construction to the intrinsic record by asserting that
2   the applicant was concerned about injuring the outer wall. But the concept of avoiding
3   injury is addressed with the claim language "avoiding trauma," as Ivantis admits.
4   Supp. Opp. at 13:17-18 ("trauma" refers to "resulting injury."). Under Ivantis's
5   construction, claim 1 would redundantly provide "not to [injure] the outer wall,
6   thereby avoiding [resulting injury]." Claim 15 would be nonsensical as it would
7   require not only "ordinarily" avoiding injury but also avoiding trauma (injury).

8   In contrast, Glaukos's construction precisely tracks the inventor's stated belief
9   that the way to avoid trauma is to prevent *contact*. Ex. K at GKOS00008533, '659
10  Patent at 16:43-46 ("contact with or breaching of the distal wall of the canal" could
11  be "traumatic"). Under Glaukos's construction, the claim language precisely tracks
12  the inventor's usage, providing: "not to [contact] the outer wall, thereby avoiding
13  trauma." *See Phillips v. AWH Corp.*, 415 F.3d 1303, 1316 (Fed. Cir. 2005) ("The
14  construction that stays true to the claim language and most naturally aligns with the
15  patent's description of the invention will be, in the end, the correct construction.").

16  Third, Ivantis did not disclose a "no damage or injury" theory in its
17  Infringement Contentions and identifies no supporting evidence for such a theory.
18  The Infringement Contentions rely entirely on a theory that the Inject is inserted
19  "**without abutting** against the outer wall of Schlemm's canal." Ex. A at 19, 21, 26,
20  41. *Pazandeh v. Yamaha Corp. of Am.*, 2017 WL 6940551, *9 (C.D. Cal. Jul. 25,
21  2017) ("Because Pazandeh did not identify this theory in his infringement contentions
22  he cannot rely on it to defeat summary judgment.").

23  As the Le publication cited in Ivantis's Infringement Contentions specifically
24  confirms, the Inject's sharp distal end contacts the outer wall, disrupting the outer wall
25  cells. Ex. E; Ex. B, RSS 8-9, RSS 10 (undisputed that "The Bahler article (cited in the
26  Le article) states that after insertion of the Inject, '[s]ome cell disruption is noted on
27  inner and outer walls of Schlemm canal.'"). ***Critically, Ivantis does not dispute that***
28  ***the Le article's images taken by the Mayo Clinic show damage to the outer wall***.

Ivantis merely argues they should be discounted because the images are of donor eyes. But Ivantis presents no evidence that the dimensions of donor eyes are different in any specific or material respect, or that there is any reason that the outer wall on a donor eye would be injured while live eyes would not.

Unable to convince the inventor or its expert to provide testimony about the Mayo Clinic images, Ivantis resorts to severely misquoting study co-author Dr. Fautsch. Ivantis contends that Dr. Fautsch stated that "questions of tissue trauma" are "beyond the scope of [the 2012 Bahler] work." Supp. Opp. at 24 (citing Silbert Ex. 36). In fact, Dr. Fautsch was asked, "[W]hat are the implications of *this tissue disruption* with regards to possible scarring around the opening ports and subsequent delayed failure of the implant?" Silbert Ex. 36 at GKOS00035092. Dr. Fautsch responded that *long-term effects* of scarring and failure were "beyond the scope," but confirmed that the study *did* address **"the immediate effects of the iStent inject penetration**." *Id*.

Likewise, Ivantis cites documents in which Glaukos highlights the greater damage caused by Ivantis's product. But these documents merely show that the Hydrus's larger size (extending along 90 degrees of the eye) causes *more* damage, not that the Inject causes none. Silbert Ex. 26 at GKOS00015015 (with the Hydrus there is "so much physical hardware in the eye and *so much tissue disruption*.").

In sum, none of Ivantis's opposition evidence demonstrates absence of injury to the outer wall. At most, it suggests injury is primarily limited to the area of contact, and is not as bad the injury caused by the Hydrus. But even under Ivantis's construction, the claims do not require widespread or devastating injury—just injury. Ivantis's own brief confirms there is injury by, for example, stating that the end of the Inject deployed into the outer wall is "sharp," and "pointed," and repeatedly referring to "microscopic damage" to the outer wall. *See* Supp. Opp. at 18, 23-25. The relevant fact is clear and indisputable: the Inject disrupts cells on the outer wall. Thus, even under Ivantis's most aggressive construction and new, procedurally improper

1    infringement theory, there is no evidence from which a reasonable jury could find

2    infringement.

3        **C.    '741 Patent, claims 1 and 14: "distal portion configured to substantially inhibit contact with the outer wall of Schlemm's canal"**

4

5        For the reasons discussed above, there is no evidence from which a jury could

6    find that the Inject substantially inhibits contact with the outer wall. In its prior

7    opposition, Ivantis proposed to construe "inhibit" as "hinder." Dkt. 63 at 17-18.

8    Ivantis identifies no evidence that the Inject is configured to substantially hinder

9    contact between the device and the outer wall. Ivantis notes that the point of contact

10   is small and has a sharp edge, but this does nothing to help Ivantis's argument. By

11   analogy, no one would say that a small knife pressing against an object "inhibits

12   contact" with the object. The undisputed fact that the Inject's head is much larger than

13   the space between the inner and outer walls, the scientific publication cited in Ivantis's

14   Infringement Contentions, and Ivantis's own repeated admissions that the Inject

15   contacts the outer wall all show the Inject is configured _**to**_ contact the outer wall.

16       Further, Berlin's disclaimers during prosecution of the parent '659 patent apply

17   equally to the downstream '741 and '357 patents. It is well-established that "an

18   amendment to a _**related limitation**_ in the parent application distinguishes prior art and

19   thereby specifically disclaims a _**later (though differently worded) limitation**_ in the

20   continuation application." _Invitrogen Corp. v. Clontech Laboratories, Inc._, 429 F.3d

21   1052, 1078 (Fed. Cir. 2005). Here, each limitation at issue concerns the same subject

22   matter: the spatial relationship between the implant and the outer wall of Schlemm's

23   canal. Further, the Notices of Allowance for each patent explain that they were

24   allowed for reasons substantially the same as the parent '659 patent. RSS 14-15

25   (claims allowable for "substantially the same reasons" reasons as the parent patents,

26   specifically including requirement that the implant "substantially inhibit contact with

27   the outer wall of Schlemm's canal" ('741 patent) and "only contact the inner wall"

28   ('357 patent)). Accordingly, disclaimer extends to each familial patent. _See Heuft_

*Systemtechnik GMBH v. Indus. Dynamics Co.*, 282 F. App'x 836, 841 (Fed. Cir. 2008) (disclaimer applied to subsequent patents in the same family because the statements "related to the same subject matter"); *Ormco Corp. v. Align Technologies, Inc.*, 498 F.3d 1307, 1315-16 (Fed. Cir. 2007) (prosecution history limited the claims of both parent and child patents with the "same subject matter of automatic determination" even though the claims had non-identical language).

### D. '741 Patent, claims 29 and 33: "the distal portion is sized and shaped to engage a wall of Schlemm's canal and wherein engagement of the wall of Schlemm's canal is limited to engagement of an inner wall"

Ivantis wholly fails to address this element in its supplemental brief. In its prior opposition brief, Ivantis argued that "engagement of the wall of Schlemm's canal is limited to an inner wall of Schlemm's canal" should be construed as "the implant is held fixed only to the inner wall." Dkt 63 at 17:21-23. As discussed in Glaukos's prior reply, this construction is incorrect, and in any event could not support a finding of infringement. Dkt. 68 at 14–15.

Ivantis's Infringement Contentions identify no viable theory of infringement: The Infringement Contentions merely point to the flat surface of the Inject's head and state, "contact surface to contact inner wall of Schlemm's canal." Ex. A at 60–61:



Figure 2. iStent *inject* Model GTS400 Design

DFU at Figure 2 (annotated herein).

As shown above, the Infringement Contentions identify the "thorax" as the aspect of the Inject "designed for device to be retained by the TM." This plainly

cannot establish infringement under Ivantis's own construction, as it confirms that the Inject is *not* "held fixed only to the inner wall." Further, as discussed above the Inject presses into the outer wall with a sharp edge while merely touching the inner wall with a flat surface, which further confirms there can be no infringement under Ivantis's own construction or any other reading of the claims.

**E.    '357 Patent, all claims: "distal portion sized and shaped to substantially inhibit contact with collector channels on the outer wall"**

Ivantis addresses this element only in its footnote 15, where Ivantis advances a new argument (not found in the Infringement Contentions) that the "probability" of the Inject hitting a collector channel is low because collector channels are spread out within the canal. This theory is not set forth in the Infringement Contentions and therefore is not a basis upon which to oppose summary judgment. Furthermore, this new argument does not comport with the claim language. The claims do not speak to likelihood, but rather require a distal portion sized and shaped ***to substantially inhibit contact*** with collector channels. Here, the head is sized and shaped specifically ***to*** contact the outer wall where the collector channels are located.

By analogy, a running shoe is not a device "sized and shaped to substantially inhibit stepping on sidewalk cracks," merely because sometimes the runner's foot does not land on a crack. The shoe is designed to contact the sidewalk where the cracks are located, just as the Inject is designed to contact the outer wall where the collector channels are located.

Nor does Ivantis even argue that there is any way for the user to avoid locations where collector channels are present. To the contrary, Ivantis asserts, "[t]he location of collector channels on the outer wall of Schlemm's canal cannot be ascertained prior to the insert of the Inject device." RSS at 20. And as one of Ivantis's cited exhibits explains, the Inject is placed in the nasal quadrant of the eye specifically because that is "where a majority of aqueous veins [collector channels] are located." Silbert Decl. Ex. 29 at GKOS00040211. In sum, there is no evidence that Glaukos shaped and sized

1   the Inject to avoid contact with collector channels; to the contrary, as discussed above,

2   it is designed to press against the outer wall where the collector channels are located.

## IV.   IVANTIS'S ATTEMPTS TO CREATE "DISPUTES" FAIL

4   With the relevant facts beyond dispute, Ivantis resorts to setting up straw man

5   disagreements divorced from the ultimate issue. As discussed below, in most

6   instances Ivantis's argument are unsupported by its own evidence. In all instances,

7   moreover, even if Ivantis were correct, its arguments could not create a genuine issue.

8   None of Ivantis's arguments dispute (1) the actual dimensions of the Inject and

9   Schlemm's canal, or (2) the reliability of the Mayo Clinic study confirming that the

10  Inject presses against the outer wall of the canal and disrupts outer wall cells.

11  Accordingly, the purported disputes are immaterial. *See, e.g., Regents of Univ. of*

12  *Minn. v. AGA Medical Corp.*, 717 F.3d 929, 939 (Fed. Cir. 2013) (no reasonable jury

13  could find infringement based on sales materials because they could not alter the

14  undisputed facts about the actual composition of the product); *MAG Aerospace*

15  *Industries, Inc. v. B/E Aerospace, Inc.*, 816 F.3d 1374, 1377 (Fed. Cir. 2016) (even

16  testimony and documents directly tracking the claim language could not overcome

17  summary judgment of non-infringement when contrary to undisputed facts about the

18  product); *Whirlpool Corp. v. LG Electronics, Inc.*, 2006 WL 2035215, at *8 (W.D.

19  Mich. July 18, 2006) (summary judgment of non-infringement) (marketing materials

20  "cannot override the actual operation of the [accused product]").

21   **A.     There Is No Material Dispute Regarding "Fluid Flow"**

22  Ivantis's attempt to create a dispute regarding whether fluid flows through the

23  distal opening of the device is a sideshow, divorced from the claim language which

24  neither requires nor forbids fluid flow. The facts regarding fluid flow are neither

25  disputed nor material to this motion. It is undisputed that the Inject's lumen branches

26  to four side flow outlets. *See* Ex E; Supp. Opp. at 9 (image with "Side Flow Outlets

27  (4)"). It is also undisputed that the Inject has a central lumen, which carries the device

28  over its insertion trocar, which extends to the end. *See id.* As Glaukos's 30(b)(6)

witness explained, "There's two purposes for the central hole. One is so that it can be loaded on the trocar and implanted over the trocar. And the second reason is due to a manufacturing concession that it's difficult to stop the hole as a blind hole at the outlets." Ex. V at 59:16-21.

The Inject's designers contemplated that flow would likely occur only through two of the four side flow portals, as confirmed by Ivantis's exhibits. Supp. Opp. at 11:1-13 (experiments where "only two of the four 'side' outlets maintained flow; this assumed that when placed in Schlemm's canal, the other outlets would be blocked by tissue contact."); Ex. S at GKOS00019637 ("[a]fter placement of the [Inject] stent in an eye, it is assumed that the central 80μm hole will be pressed up against the back scleral wall of Schlemm's canal, and therefore at least partially blocked and unavailable for outflow"); Silbert Decl. Ex. 41 at GKOS00037599 ("The 80 micron central lumen goes all the way through the device and ***probably does not allow flow*** of aqueous from the terminus into the canal. The flow outlets are four holes that are circumferential around the head."). As Ivantis acknowledges, most Glaukos and third party studies assume that only two of the five holes (two of the side flow portals) are open, while recognizing that in practice it is possible that flow could occur through more than two holes. Supp. Opp. at 10-11.

Whether and to what extent any fluid ever exits the fifth hole at the distal end in practice is not known, and it is immaterial. There are many reasons why a device that contacts the outer wall, disrupting outer wall cells, might not always create a watertight seal. Berlin specifically represented to the Patent Office during prosecution that the wall is not perfectly smooth and that the canal can pulsate. Ex. K at GKOS00008371 ("naturally pulsating tissue"), *id.* at 8380 ("Along the external wall of Schlemm's canal a series of obliquely oriented septa are present at the entrance to collector channels."). Further, as Glaukos's 30(b)(6) witness testified, the Inject is not always inserted perfectly on-axis. Ex. V at 101:12-102:5.

For infringement, the questions are whether the implant's distal tip is "adjacent to" the inner wall and "spaced from" the outer wall, and whether the Inject's head "inhibits contact" with the outer wall, and "engages" only with the inner wall. None of these elements could be proven merely by showing a possibility that fluid may sometimes exit the fifth hole at the end of the Inject. Ivantis bears the burden of proving these elements, and Inject has entirely failed to do. To the contrary, the very study cited throughout Ivantis's documents and in the Le article upon which the Infringement Contentions are based confirms exactly the opposite.

**B.    Ivantis's Arguments Regarding a 2010 Animation Have No Merit**

Finally, Ivantis argues that a 2010 patient education cartoon of the Inject in Schlemm's canal illustrates lack of contact with the outer wall. Here, Ivantis attempts multiple sleights of hand. First, Ivantis blatantly misrepresents that Glaukos's commissioning of the animation is new information. Supp. Opp. at 3 ("after the Court deferred ruling on the motion…Glaukos revealed that it had itself commissioned the video…"). But during the original briefing, Glaukos expressly stated its belief that the animation was "created by a third-party *vendor* more than five years ago." Dkt. 65-15 at 11/15/18 Ltr p. 3. As the record reflects, it was in fact created by vendor Rendia more than five years ago; nearly a decade ago, in 2010.

Second, Ivantis extensively discusses the 2008 *drafts* (which no party contends were ever used) as though they are the actual animation. Supp. Opp. at 5.

And third, when Ivantis eventually acknowledges that these drafts were rejected by Glaukos, Ivantis incorrectly argues that the revised 2010 version shows the Inject not contacting the outer wall. *Id*. at 6. That is simply not what the image shows. What Ivantis contends is a gap is merely the animator's use of shading in an attempt to show depth—the canal extending toward the viewer in three-dimensional fashion. This is confirmed by the very documents Ivantis cites.

As illustrated below left, the animator's 2008 draft showed the Inject's head as smaller than the canal (Silbert Decl. Ex. 7 at 2:17 (screen capture from animation, red arrow added showing outer wall)). This draft was rejected by Glaukos. As Glaukos subsequently told the animator, "[t]here should be **_no space_** and it [Schlemm's canal] should be snug against the device." *See* Silbert Decl. Ex. 1 at GKOS00034755; *id.* ("[T]hink of it as the stent being bigger than the canal, so it stretches the anatomy to fit around the device.").[4] By early 2010, the animator accordingly revised the image as shown below right. Silbert Decl. Ex. 2 at 2:39 (screen capture from animation, red arrow added showing outer wall).

 

As can be seen above, the animator reasonably sought to capture Glaukos's feedback within the limitations of the media. *See* Silbert Decl. Ex. 1 at GKOS00034754 ("I have made the canal conform to the stent in each version."); *see also* Ex. V (30(b)(6) Dep. Tr.) at 102:14-103:11 ("[T]he shape of the canal in that animation matches the conical shape of the head. So it has conformed to the – to the shape of the head, and the back wall is in full contact with the – with the tip of the head."). Further, although Ivantis argues that the animation depicts fluid exiting the distal end, there is no evidence that Glaukos intended that. Indeed, as shown above,

---

[4] The e-mail discussed both the Inject (G2) and the iStent (G1). As the email notes, the G1 is larger in the length dimension (extending along the canal). However, the "stenting height" (extending towards outer wall) is similar. *See* Silbert Decl. Ex. 19 (Inject "utilize[s] similar dimensions as with previous device, relative to snorkel, **_stenting height_**."); *see also* Silbert Decl. Ex. 39 at GKOS00016174.

in the animation the fluid largely or entirely exits the *side flow ports*. Thus, while this decade-old patient cartoon was not intended to be anatomically precise (and neither party contends it is anatomically precise), nonetheless it is consistent with the fact that the Inject contacts the outer wall.

Federal Circuit precedent is clear that Ivantis's (mis)interpretation of a 2010 cartoon image falls far short of creating a genuine issue. *See, e.g., Regents of Univ. of Minn*, 717 F.3d at 939 (sales literature not material to actual composition of the product); *MAG Aerospace*, 816 F.3d at 1377; *see also Whirlpool Corp.*, 2006 WL 2035215, at *8 (marketing materials "cannot override the actual operation of the [accused product]" for summary judgment). In *MAG Aerospace*, for example, the Federal Circuit affirmed summary judgment of non-infringement where the claim required the product to be replaced "toollessly." 816 F.3d at 1376. Similar to this case where there is undisputed evidence that the Inject is larger than the inner-outer wall dimension, in *MAG* there was undisputed evidence that the product was "attached to its frame with two screw fasteners." *Id*. at 1377. Therefore, the court reasoned, to "release the screws and remove the bowl, some kind of tool is necessary." *Id*. The patentee sought to overcome summary judgment by submitting testimony and a variety of technical and sales documents indicating that the product could be replaced "without tools." The Federal Circuit affirmed that summary judgment was proper, because even such evidence could not change the undisputed fact that the product was attached with screws. *Id*.

Here, the question on summary judgment is whether there is a *genuine* dispute about the Inject's dimensions and its relationship to the inner and outer walls of Schlemm's canal. Even if the 2010 cartoon actually depicted the Inject in the manner alleged by Ivantis in its brief (and it does not), a decade-old cartoon would fall far short of creating a genuine dispute. The actual Inject specifications, the anatomical facts in the prosecution history, and Ivantis's own repeated admissions about the relationship between the Inject and Schlemm's canal are simply not contested.

### C.  Ivantis's "Garden Hose" Argument Is Not A Genuine Dispute

Ivantis also makes a mish-mash of assertions about "hydrodynamic scaffolding." Ivantis does not contend that these are new arguments revealed by supplemental discovery. To the contrary, Ivantis presents them as variants of the "garden hose" argument set forth in Ivantis's original opposition, which hypothesized that fluid could spurt through the Inject with such force as to cause the device to "recoil" from the wall, like turning on a "garden hose." Dkt. 63 at 23. It is not entirely clear which specific claim elements, if any, Ivantis contends the new spins on its argument are directed to. In any event, the garden hose argument continues to fail for multiple reasons.

First, Ivantis does not contend that this theory was disclosed in its Infringement Contentions.  It was not, and thus is irrelevant to summary judgment. *Pazandeh*, 2017 WL 6940551, *9 ("Because Pazandeh did not identify this theory in his infringement contentions he cannot rely on it to defeat summary judgment."); *Kruse Tech. P'ship v. Daimler AG*, 2012 WL 12888110 (C.D. Cal. Mar. 21, 2012) ("[I]f the evidence does not establish infringement under a theory disclosed in its infringement contentions, it fails to stave off summary judgment.").

Second, the theory is irreconcilable with the prosecution history. Berlin distinguished Lynch by stating that each of its embodiments impinges the outer wall. Lynch discloses embodiments such as Figure 2 that, like the Inject, have holes along the distal portion facing the wall. Ex. I at 7:53-54 ("All or parts of the device may be solid, porous, tubular, trough-like, fenestrated, or pre-curved."). Indeed, it discloses embodiments where the distal portion has a "trough" shape ***open to the outer wall***. *Id.*, Fig. 5D. In view of Berlin's express representation to the Patent Office that each of these embodiments "impinges" the outer wall, Ivantis cannot now claim that fluid flow from the distal portion towards the wall would prevent impingement.

Third, the "garden hose" theory is wholly disconnected from the claim langauge. Even under Ivantis's apparent argument that ***at some point*** such a large

amount of fluid could be released through the tiny lumen of the Inject (80 microns, about the width of a human hair) with enough force to cause it to "recoil" back more than 100 microns so that it is no longer in contact with the wall, the implant would still contact the outer wall the rest of the time and would not inhibit contact with it.

Finally, even leaving aside these three threshold barriers to the "garden hose" theory, it suffers from a host of factual problems. *See* Dkt. 68. Ivantis's new gloss on the argument reveals yet further fundamental deficiencies. Ivantis now uses the phrase "hydrodynamic scaffolding," which Ivantis's brief argues Glaukos uses to mean using "fluid flow" to abnormally dilate the canal. Supp. Opp. at 22:1-14. This is pure attorney argument, as nothing in any of the cited documents or testimony indicates that any one uses "hydrodynamic scaffolding" in this manner.[5] Dr. Stamper is silent on this issue, providing no discussion of the term or concept.

As the documents that Ivantis cites explain, this phrase simply describes using pressure equalization to restore normal structure to the segments of the canal downstream of the Inject. In glaucoma patients, high IOP can cause the trabecular meshwork to essentially collapse the canal walls.  The Inject alleviates pressure and thus allow the canal to return to its normal condition. *See* Silbert Decl. Ex. 31 at GKOS00035584 ("This equalized pressure acts as a natural 'scaffold' and keeps the meshwork away from the outer walls"); Ex. 32 (same); Ex. 29 at GKOS000040197 ("The opening in the meshwork [created by the stent] equalizes pressure inside the canal with the anterior chamber pressure, eliminating local distention of the TM into Schlemm's canal."). As Glaukos's 30(b)(6) witness testified:

> "when the iStent is implanted, the -- **the pressure gradient is relieved** because now we have a fluid communication between the anterior chamber and Schlemm's canal. And what that -- what that does is that **it alleviates the pressure on the Schlemm's canal causing it to in regions downstream of the -- of the actual implant, to relax back to its normal width of 20 or 30 microns or so**."

---

[5] Ivantis also asserts that this term is the subject of a Glaukos superchoroidal patent cited in its original brief (Berlin Decl. Ex. A), but does not cite any support for that statement. In fact, neither the term nor its concept appear in the patent.

Ex. V (30(b)(6) Depo.) at 98:5-99:14. This is also consistent with the Mayo Clinic images, which comments that some dilation of the canal is observed downstream of the stent itself. Ex. C at GKOS00010417.

Finally, Ivantis attempts one last sleight-of-hand by arguing that the Inject practices U.S. Patent Number 9,554,940, and that "Figure 18 [of the '940 patent] depicts an embodiment that appears to be the Inject not touching—and certainly not damaging—the outer wall of Schlemm's canal." Supp. Opp. at 20 (citing Silbert Ex. 25). Ivantis fails to mention that the '940 patent also repeatedly refers to Figure 18's implant contacting the outer wall. Silbert Ex. 25 at col. 24, ln. 58 to col. 25, ln. 26 ("Referring to FIG 18…In some embodiments, the distal end 902B is *in contact with the outer wall* 914 of Schlemm's canal 122."), lns. 26-31 ("In some embodiments, an additional axial outlet is located at the distal end 902B… In some instances, the axial outlet is non-functional because *it is in contact with a wall of Schlemm's canal*"); col. 26, lns. 9-10 ("implant's *abutment against the outer wall of Schlemm's canal*"). The passage to which Ivantis cites is clearly discussing a smaller version, as the '940 patent discloses that Figure 18 can be made as small as .01 mm (10 microns).[6] *Id*. at col. 24, lns. 1-12. In sum, yet again Ivantis's proffered evidence confirms the indisputable fact that the Inject squarely contacts the outer wall of Schlemm's canal.

For all of the foregoing reasons, and those set forth in Glaukos's motion for summary judgment and prior reply, summary judgment should be entered.

Dated: March 4, 2019

Respectfully submitted,

IRELL & MANELLA LLP

By: /s/ *Lisa S. Glasser*

Lisa S. Glasser

---

[6] In any event, the claims of the '940 patent are directed to the implant delivery apparatus, not the stent itself, making the question of whether the Inject practices the patent irrelevant here. Silbert Decl. Ex. 25 at cols. 37-40.