## UNITED STATES DISTRICT COURT
### CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 18-620 JVS (JDEx) | Date | March 18, 2019 |

| | |
|---|---|
| Title | Glaukos Corp. v. Ivantis, Inc. |

Present: The Honorable    James V. Selna

| Lisa Bredahl | Not Present |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Not Present | Not Present |

**Proceedings:**   (IN CHAMBERS) <u>Order</u> <u>Regarding</u> <u>Motion</u> <u>for</u> <u>Summary</u> <u>Judgment</u>

Plaintiff and Counter-Defendant Glaukos Corporation ("Glaukos") filed a motion for summary judgment of non-infringement on Defendant Ivantis, Inc.'s ("Ivantis") counterclaims for patent infringement. Mot., Docket No. 54. Ivantis opposed, and Glaukos replied. Opp'n, Docket No. 63; Reply, Docket No. 68. Ivantis simultaneously moved to defer summary judgment under Federal Rule of Civil Procedure 56(d), and Glaukos opposed. Docket Nos. 64, 69. On December 13, 2018, the Court granted Ivantis's motion, deferring summary judgment to allow the parties to conduct further discovery. Order, Docket No. 81.

Ivantis subsequently filed a supplemental opposition to Glaukos's motion for summary judgment of non-infringement. Supp. Opp'n, Docket No. 107. Glaukos filed a reply. Supp. Reply, Docket No. 111.

For the following reasons, the Court **grants** the motion.

## I. BACKGROUND

### A. Procedural Background

Glaukos filed this action for patent infringement against Ivantis on April 14, 2018. Docket No. 1. Ivantis subsequently purchased U.S. Patent Nos. 8,540,659 ("the '659 Patent"); 9,603,741 ("the '741 Patent"); and 9,833,357 ("the '357 Patent") (together, "the Berlin Patents"). Docket No. 44. On August 16, 2018, Ivantis filed counterclaims asserting that Glaukos's iStent *inject* product infringes the Berlin Patents. Id. On September 6, 2018, Ivantis filed an amended answer and counterclaims. Docket No. 47.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 18-620 JVS (JDEx) | Date | March 18, 2019 |
|---|---|---|---|
| Title | Glaukos Corp. v. Ivantis, Inc. | | |

On October 1, 2018, Ivantis served its Infringement Contentions.  Declaration of Lisa Glasser ("Glasser Decl."), Docket No. 54-3, Ex. A.

On November 9, 2018, Glaukos filed the instant motion for summary judgment of non-infringement.  Mot., Docket No. 54.  On December 13, 2018, the Court deferred ruling on Glaukos's motion under Federal Rule of Civil Procedure 56(d) to allow the parties to conduct further discovery.  Order, Docket No. 81.  After pursuing such discovery, Ivantis filed a supplemental opposition to Glaukos's motion on February 25, 2019.  Supp. Opp'n, Docket Nos. 106-1 (unredacted, filed under seal), 107 (redacted).  On March 4, 2019, Glaukos filed a supplemental reply.  Supp. Reply, Docket Nos. 111 (redacted), 113-2 (unredacted, filed under seal).

**B.    The Human Eye and Schlemm's Canal**

The iris, with the pupil at its center, partitions the human eye into two chambers.  The "anterior chamber" is the smaller, external-facing chamber with a window called the "cornea" that lets light in.  The iris and pupil together modulate how much light goes into the internal "posterior chamber" for the retina to register and send to the brain for visual perception.  See Mot., Docket No. 56-4 at 2.  The iris is encircled by a structure called "Schlemm's canal."  Schlemm's canal rings the eye where the cornea meets the "sclera" (the white of the eye).  In a healthy eye, a clear substance called "aqueous humor" flows into Schlemm's canal from the anterior chamber through a network of cell layers called the "trabecular meshwork," then drains out of the eye through one of several dozen "collector channels."  See, e.g., Declaration of Ajay Krishnan ("Krishnan Decl."), Docket No. 65, Ex. 20 at 251–54.  When the flow of aqueous humor is impeded, as in the case of glaucoma, intraocular pressure ("IOP") within the eye increases.  Untreated, this can result in vision impairment or even blindness.  The side of the canal where the collector channels are located is the "outer wall," of Schlemm's canal, and opposite the outer wall is the "inner wall," closest to the anterior chamber.  The distance between the outer and inner walls of Schlemm's canal is at issue in this motion.  However, it is undisputed that the lumen of Schlemm's canal is not static, and it narrows as IOP increases.  See Glasser Decl., Ex. K at GKOS00008432; Krishnan Decl., Ex. 22 at 293, 315.

**C.    The Accused Product: the iStent *inject***

Glaukos's iStent *inject* ("Inject") is the Accused Product.  The Inject is approved

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   SACV 18-620 JVS (JDEx)                     Date   March 18, 2019

Title        Glaukos Corp. v. Ivantis, Inc.

by the FDA "for reduction of [IOP] in adult patients with mild to moderate primary open-angle glaucoma." Glasser Decl., Ex. D at 4 (pagination per docket). Using a pre-loaded injector, two Inject devices are inserted into Schlemm's canal during a patient's cataract surgery, enhancing aqueous flow. Id. at 2–4. More specifically, the conical "head" of the Inject is placed in Schlemm's canal, while the narrow "thorax" of the device resides in the trabecular meshwork, and the wider "flange" at the bottom of the device resides in the anterior chamber. Id. at 2. The aqueous humor flows through a central inlet in the flange which runs all the way to a central outlet at the tip of the Inject's head. Id. The central inlet and outlet are 80 micron-wide holes. Id. The central outlet at the tip of the Inject's head also has an unbroken, sharp edge around the hole. Id., Ex. E. The Inject's head has four side outlet holes which are each 50 microns wide. Id., Ex. D. The entire Inject is 360 microns by 230 microns, including its conical head, which measures 150 microns from base to tip. Id., Ex. E. Accordingly, the Inject is barely visible to the human eye. See Mot., Docket No. 56-4 at 4.

**D.     The Berlin Patents**

1.       The '659 Patent

On May 19, 2000, Michael Berlin ("Berlin") filed a provisional patent application describing methods for treating glaucoma using photoablation. Glasser Decl., Ex. J. On January 7, 2008, Berlin filed a divisional application claiming priority to the provisional application and a May 2001 utility patent application. Id., Ex. K at GKOS00008034. However, Berlin's claims were repeatedly rejected by the Patent Office, primarily in view of three prior art references: Glaukos's Lynch and Bergheim patents, and a third-party patent, Ritch. Id. at GKOS00008140–47, 8193–98, 8273–81, 9342–59. Berlin attempted to overcome the Patent Office's rejections for almost five years. See generally, id.

On December 19, 2012, Berlin cancelled all pending claims and added new independent claims that included the limitations at issue in this motion: method claim 1 and device claim 15 of the '659 Patent. Id. at GKOS00008365–67. To distinguish the prior art patents, Berlin also submitted supplemental information to the Patent Office "regarding the interior dimensions of Schlemm's canal." Id. at GKOS00008371. The '659 Patent was subsequently issued on September 24, 2013. Id. at GKOS00008505–35. Method claim 1 recites in relevant part:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.    SACV 18-620 JVS (JDEx)                          Date    March 18, 2019

Title    Glaukos Corp. v. Ivantis, Inc.

> inserting an intraocular implant . . . without substantially
> impinging the outer wall of Schlemm's canal, the
> intraocular implant having a fluid passageway there
> through, a distal end and a proximal end, the distal end
> being positioned adjacent the inner wall of Schlemm's
> canal and spaced from the outer wall of Schlemm's canal,
> and the proximal end being positioned at the anterior
> chamber of the eye so as to enable the fluid to flow from
> the anterior chamber of the eye into Schlemm's canal; and
>
> securing the intraocular implant in place so that it does not
> ordinarily impinge the outer wall of Schlemm's canal,
> thereby avoiding trauma to the outer wall of Schlemm's
> canal and reducing the likelihood of stimulating an
> inflammatory cascade and subsequent scar tissue.

Id. at GKOS00008534, col. 18 (emphasis added).  Device claim 15 recites in relevant
part:

> a fastening member for securing the implant in place so as
> not to impinge the outer wall of Schlemm's canal, thereby
> avoiding trauma to the outer wall of Schlemm's canal and
> reducing the likelihood of stimulating an inflammatory
> cascade and subsequent scar tissue.

Id. at GKOS00008535, col. 20 (emphasis added).  The '659 Patent Notice of
Allowance states:

> The instant claims are drawn to an intraocular implant and
> method for inserting said implant. The implant is
> configured to be implanted and secured such that the
> proximal end is disposed within the anterior chamber and
> the distal end is disposed adjacent the inner wall of
> Schlemm's canal and spaced from the outer wall of
> Schlemm's canal, thereby allowing aqueous humor to be
> transferred from the anterior chamber, through the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 18-620 JVS (JDEx) | Date | March 18, 2019 |

| | |
|---|---|
| Title | Glaukos Corp. v. Ivantis, Inc. |

trabecular meshwork, and into Schlemm's canal.

Id. at GKOS00008453 (emphasis in original).

2.      The '741 and '357 Patents

Like the '659 Patent, the '741 and '357 Patents were initially rejected based on the Lynch, Bergheim, and Ritch patents.  Id., Ex. L at GKOS00008573–79, 8632–38; Ex. M at GKOS00009851, 10165–67.  The claims again were allowed only after Berlin added limitations, including inhibiting contact with the outer wall of Schlemm's canal.  Id. at GKOS00009737–38; Ex. M at GKOS00010352.

Claims 1 and 14 of the '741 Patent both recite in part:

> . . . the distal portion configured to substantially inhibit contact with the outer wall of Schlemm's canal when the contact surface of the distal portion engages the inner wall of Schlemm's canal and self-retains the implant with the inner wall of Schlemm's canal . . . .

Id., Ex. L at GKOS00009833, col. 19, 20 (emphasis added).  Claim 29 recites:

> . . . the distal portion is sized and shaped to engage a wall of Schlemm's canal and wherein engagement of the wall of Schlemm's canal is limited to engagement of an inner wall of Schlemm's canal.

Id., col. 22 (emphasis added).  And claim 33 similarly recites ". . . a distal portion of the implant engages a wall of Schlemm's canal and wherein engagement of the wall of Schlemm's canal is limited to an inner wall of Schlemm's canal."  Id. (emphasis added).

Claims 1 and 13 of the '357 Patent recite in relevant part:

> . . . the distal portion sized and shaped to substantially inhibit contact with collector channels on the outer wall of

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.    SACV 18-620 JVS (JDEx)                           Date    March 18, 2019

Title       Glaukos Corp. v. Ivantis, Inc.

> the Schlemm's canal when the contact surface of the distal
> portion <u>engages</u> <u>the</u> <u>inner</u> <u>wall</u> of the Schlemm's canal and
> self-retains the implant with engagement of the inner wall
> of the Schlemm's canal . . . .

<u>Id.</u>, Ex. M at GKOS00010412, col. 19, 20 (emphasis added).

The '741 Patent Notice of Allowance states:

> The instant claims are allowable for substantially the same
> reasons as the parent application (11/970,488; issued as US
> Patent No. 8,540,659), which correspond to pages 11-12 of
> applicant's arguments filed in the instant application on
> 7/12/16. The prior art does not teach or suggest an implant
> having a distal portion that is configured to substantially
> inhibit contact with the outer wall of Schlemm's canal
> <u>when</u> <u>the</u> <u>contact</u> <u>surface</u> <u>of</u> <u>the</u> <u>distal</u> <u>portion</u> <u>engages</u> <u>the</u>
> <u>inner</u> <u>wall</u> <u>of</u> <u>Schlemm's</u> <u>canal</u> and self-retains the implant
> with the inner wall of Schlemm's canal.

<u>Id.</u>, Ex. L at GKOS00009737–38 (emphasis added).  Lastly, the '357 Patent Notice
of Allowance states:

> The instant claims are allowable for similar reasons as
> discussed in parent application 14/028,460 (issued as US
> Patent No. 9,603,741). The closest prior art (Bergheim,
> cited in the previous office action) does not teach or
> suggest an implant that is <u>configured</u> <u>to</u> <u>contact</u> <u>only</u> <u>the</u>
> <u>inner</u> <u>wall</u> of Schlemm's canal (i.e. <u>inhibit</u> <u>contact</u> <u>with</u> <u>the</u>
> <u>outer</u> <u>wall</u> of Schlemm's canal). By only contacting the
> inner wall and inhibiting contact with the outer wall, the
> instant invention allows prevents collector channels on the
> outer wall of Schlemm's canal from being blocked.

<u>Id.</u>, Ex. M at GKOS00010352 (emphasis added).

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 18-620 JVS (JDEx) | Date | March 18, 2019 |

| | |
|---|---|
| Title | Glaukos Corp. v. Ivantis, Inc. |

## II. LEGAL STANDARDS

### A.    Rule 56

Summary judgment is appropriate where the record, read in the light most favorable to the nonmovant,[1] indicates "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a)[2]; see also MEMC Elec. Materials, Inc. v. Mitsubishi Materials Silicon Corp., 420 F.3d 1369, 1373 (Fed. Cir. 2005). The burden initially is on the moving party to demonstrate an absence of a genuine issue of material fact. Id.; see also Celotex Corp. v. Catrett, 477 U.S. 317, 322–24 (1986). If, and only if, the moving party meets its burden, then the non-moving party must produce specific evidence to rebut the moving party's claim and create a genuine dispute of material fact. MEMC, 420 F.3d at 1373; see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986). If the non-moving party meets this burden, then the motion will be denied. See generally Bose Corp. v. JBL, Inc., 274 F.3d 1354, 1360 (Fed. Cir. 2001).

### B.    Infringement

"Summary judgment of non-infringement requires a two-step analytical approach. First, the claims of the patent must be construed to determine their scope." Pitney Bowes, Inc. v. Hewlett-Packard Co., 182 F.3d 1298, 1304 (Fed. Cir. 1999). This is a question of law. Id. Second, following claim construction, the fact finder compares the construed claims to the accused device or process. Catalina Mktg. Int'l, Inc. v. Coolsavings.com, Inc., 289 F.3d 801, 812 (Fed. Cir. 2002). "To prove infringement, the patentee must show that the accused device

---

[1] "In determining any motion for summary judgment or partial summary judgment, the Court may assume that the material facts as claimed and adequately supported by the moving party are admitted to exist without controversy except to the extent that such material facts are (a) included in the 'Statement of Genuine Disputes' and (b) controverted by declaration or other written evidence filed in opposition to the motion." L.R. 56-3.

[2] Rule 56 was amended in 2010. Subdivision (a), as amended, "carries forward the summary-judgment standard expressed in former subdivision (c), changing only one word — genuine 'issue' becomes genuine 'dispute.'" Fed. R. Civ. P. 56, Notes of Advisory Committee on 2010 amendments.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   SACV 18-620 JVS (JDEx)                        Date   March 18, 2019

Title      Glaukos Corp. v. Ivantis, Inc.

meets each claim limitation either literally or under the doctrine of equivalents."
Id. "Literal infringement requires the patentee to prove that the accused device
contains each limitation of the asserted claim. Infringement under the doctrine of
equivalents requires the patentee to prove that the accused device contains an
equivalent for each limitation not literally satisfied." Id. (internal citations
omitted).

"Summary judgment of non-infringement is appropriate where the patent
owner's proof is deficient in meeting an essential part of the legal standard for
infringement, since such failure will render all other facts immaterial." Telemac
Cellular Corp. v. Topp Telecom, Inc., 247 F.3d 1316, 1323 (Fed. Cir. 2001)
(internal citations omitted). "A patentee ordinarily bears the burden of proving
infringement." Medtronic, Inc. v. Mirowski Family Ventures, LLC, 134 S. Ct.
843, 846 (2014).

**C.      Claim Construction**

Claim construction is "exclusively within the province of the court."
Markman v. W. Instruments, Inc., 517 U.S. 370, 372 (1996). Such construction
"must begin and remain centered on" the claim language itself. Interactive Gift
Express, Inc. v. Compuserve, Inc., 256 F.3d 1323, 1331 (Fed. Cir. 2001). But
extrinsic evidence may also be consulted "if needed to assist in determining the
meaning or scope of technical terms in the claims." Pall Corp. v. Micron
Separations, Inc., 66 F.3d 1211, 1216 (Fed. Cir. 1995).

In construing the claim language, the Court begins with the principle that
"the words of a claim are generally given their ordinary and customary meaning."
Phillips v. AWH Corp., 415 F.3d 1303, 1312 (Fed. Cir. 2005) (en banc) (internal
quotation marks omitted). This ordinary and customary meaning "is the meaning
that the [claim] term would have to a person of ordinary skill in the art in question
at the time of the invention, i.e., as of the effective filing date of the patent
application." Id. at 1313. "[T]he person of ordinary skill in the art is deemed to
read the claim term not only in the context of the particular claim in which the
disputed term appears, but in the context of the entire patent, including the
specification." Id.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   SACV 18-620 JVS (JDEx)                    Date   March 18, 2019

Title      Glaukos Corp. v. Ivantis, Inc.

"In some cases, the ordinary meaning of claim language as understood by a person of skill in the art may be readily apparent even to lay judges, and claim construction in such cases involves little more than the application of the widely accepted meaning of commonly understood words. In such circumstances general purpose dictionaries may be helpful." Id. at 1314 (internal citation omitted). In other cases, "determining the ordinary and customary meaning of the claim requires examination of terms that have a particular meaning in a field of art." Id. Then "the court looks to those sources available to the public that show what a person of skill in the art would have understood disputed claim language to mean." Id. (internal quotation marks omitted). These sources include "the words of the claims themselves, the remainder of the specification, the prosecution history, and extrinsic evidence concerning relevant scientific principles, the meaning of technical terms, and the state of the art." Id. (internal quotation marks omitted).

But it is improper to read limitations from the specification into the claim. Callicrate v. Wadsworth Mfg., Inc., 427 F.3d 1361, 1368 (Fed. Cir. 2005) ("[I]f we once begin to include elements not mentioned in the claim, in order to limit such claim . . . we should never know where to stop.") (quoting Phillips, 415 F.3d at 1312). A court does "not import limitations into claims from examples or embodiments appearing only in a patent's written description, even when a specification describes very specific embodiments of the invention or even describes only a single embodiment, unless the specification makes clear that 'the patentee . . . intends for the claims and the embodiments in the specification to be strictly coextensive.'" JVW Enters., Inc. v. Interact Accessories, Inc., 424 F.3d 1324, 1335 (Fed. Cir. 2005) (internal citations omitted).

### III. DISCUSSION

## A.    Evidentiary Objections

Ivantis filed objections to the evidence Glaukos offered in support of its motion for summary judgment. Docket No. 63-1. Glaukos also filed objections to evidence offered in support of Ivantis's opposition. Docket No. 68-2. Finally, Glaukos filed objections to the evidence offered by Ivantis in support of its supplemental opposition. Docket No. 111-2. The Court rules on the material objections as follows. Otherwise, when the Order cites evidence to which the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 18-620 JVS (JDEx) | Date | March 18, 2019 |
|----------|------------------------|------|----------------|

| Title | Glaukos Corp. v. Ivantis, Inc. |
|-------|-------------------------------|

parties have objected, the objection is impliedly overruled. To the extent the Court does not rely on the evidence submitted, the Court declines to rule on the objections.

       1.    <u>Ivantis</u> <u>Objections</u>

      Ivantis argues that the information Glaukos cites from the Le and Bahler articles (Glasser Decl., Exs. B, C) is inadmissible hearsay. Docket No. 63-1 at 1–5. The Court disagrees. First, Ivantis cites and relies on the Le article (which contains the relevant images from the Bahler article) extensively in its Infringement Contentions; therefore, the article is an adoptive admission under Fed. R. Evid. 801(d)(2)(C). <u>See, e.g.</u>, Glasser Decl., Ex. A at 18–19 (pagination per docket). Ivantis argues that, although it cited certain statements from the Le article in its Contentions, Glaukos cannot offer other statements from the articles upon which Ivantis did not expressly rely. Docket No. 63-1 at 2–3. For support, Ivantis cites <u>Tracinda</u> <u>Corp.</u> <u>v.</u> <u>DaimlerChrysler</u> <u>AG</u>, 362 F. Supp. 2d 487, 495–96 (D. Del. 2005). However, <u>Tracinda</u> concerned a news article in which commentary went beyond an interviewee's actual statements in an interview, and therefore the Court was not persuaded that the interviewee adopted the commentary in the article or the conclusions reached by the reporter. 362 F. Supp. 2d at 495. Here, by contrast, the Court is persuaded that citation to an article published in a medical journal in support of Infringement Contentions indicates adoption of the information in the article and the conclusions it reaches based on that information unless expressly indicated otherwise. Finally, to the extent Ivantis argues that it only adopted part and not all of the Le and/or Bahler articles, supplemental discovery has revealed that Ivantis internally relies on precisely the aspect of the Bahler article which it now argues is hearsay – the images showing the Inject dilating Schlemm's canal and pushing against the outer wall. Ivantis has relied on those images on internal slides entitled "iStent inject: How it works." Glasser Decl., Ex. O at 12, 15, 18. Therefore, Ivantis impliedly adopted a belief in the accuracy of the images at issue. This constitutes a direct adoptive admission of the images Ivantis argues are inadmissible hearsay. Therefore, Ivantis's objections to the Le and Bahler articles are overruled.

      Ivantis also raises hearsay objections to Glaukos's use of information in scientific articles in the file wrapper for the '659 Patent which Berlin submitted to

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.    SACV 18-620 JVS (JDEx)                    Date    March 18, 2019

Title    Glaukos Corp. v. Ivantis, Inc.

the Patent Office to overcome rejections based on prior art (Glasser Decl., Ex. K at GKOS00008373–8441).  Docket No. 63-1 at 6–9.  However, the Court finds that these documents are also adoptive admissions because they were statements made to the Patent Office to obtain registration of the patents which Ivantis now argues have been infringed.  Therefore, these objections are also overruled.

      2.    <u>Glaukos</u> Objections

      Glaukos objects to (1) the declaration of Michael Berlin, (2) the declaration of Dr. Robert Stamper, and (3) the exhibits attached to the declaration of David Silbert.  The Court addresses each in turn.

      a.    Objections to the Berlin Declaration and Attached Exhibit

      Glaukos objects to the declaration of Michael Berlin (Docket No. 63-3).  Docket No. 68-2 at 1–2.  Specifically, Glaukos objects to paragraphs 10–12 of the Berlin Declaration because Berlin opines on the function and intent behind the design of the Inject without the proper foundation.  <u>See</u> Berlin Decl. ¶¶ 10–12.  Berlin does not claim to have reviewed any documents other than Glaukos's brief and an unrelated Glaukos Patent.  <u>See</u> <u>id.</u> ¶ 12.  Even if Berlin was a proper expert in this case despite the fact that he doesn't claim to have any experience with the Inject on an actual patient, Berlin's opinions about the Inject are inadmissible because they are not "based on sufficient facts or data" as required of expert testimony under Fed. R. Evid. 702.  Therefore, the Court sustains Glaukos's objections to paragraphs 10–12 of the Berlin Declaration.

      Glaukos also objects to Ex. A to the Berlin Declaration, which is the file wrapper for a Glaukos Patent not at issue in this case – U.S. Patent No. 9,962,290 ("'290 Patent").  Docket No. 68-2 at 3.  The Court sustains the objection because the evidence is irrelevant to the instant motion as it concerns a different product for a different device used in a different part of the eye.  <u>See</u> Berlin Decl. ¶ 12; Fed. R. Evid. 401–03.

      b.    Objections to the Expert Declaration of Dr. Stamper

      Glaukos objects to the declaration of Dr. Stamper (Docket No. 106-35).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   SACV 18-620 JVS (JDEx)                    Date   March 18, 2019

Title   Glaukos Corp. v. Ivantis, Inc.

Docket No. 111-2.  The Court sustains the objection to Dr. Stamper's statement that "[h]istorically, measurements of the dimensions of Schlemm's canal may not have accurately reflected those of a living human eye . . . because such measurement have been largely made on post-mortem eyes."  Stamper Decl. ¶ 13.  This vague statement does not identify any specific difference between living and post-mortem eyes or whether the historical problem has been resolved.  Therefore, it does not help the trier of fact.  Fed. R. Evid. 702(a).

The Court sustains the objection to Dr. Stamper's statement that "the design of the Inject causes it to retain itself in place, preventing movement of the Inject relative to the trabecular meshwork or the inner wall."  Stamper Decl. ¶ 28.  Dr. Stamper does not contend to have personally analyzed the movement of the Inject, and it is not discussed in the cited portions of the Inject's "Directions for Use."  Therefore, the statement is not based on sufficient facts or data, and is not helpful to the trier of fact.  Fed. R. Evid. 402, 702.

The Court sustains the objections to Dr. Stamper's statements that (1) "the Inject is not intended to alter the natural anatomy of Schlemm's canal or otherwise distort the dimensions of Schlemm's canal," (2) "the Inject is designed so as to not alter the anatomy or distort the dimensions of Schlemm's canal," and (3) "the Inject is designed so as not to damage or injure the outer wall."  Stamper Decl. ¶¶ 31, 33, 44.  Dr. Stamper does not claim to have reviewed the design history file or any of the testimony of Glaukos's 30(b)(6) witness (Inject designer David Haffner), nor does he claim to have any personal insight into the intent of the Inject's designers or the actual impact of the device.  The only analysis offered by Dr. Stamper in these paragraphs is what he believes quotes from unidentified authors indicate regarding Glaukos's intent and the design process.  Therefore, Dr. Stamper' statement regarding the intent behind the design of the Inject are not based on sufficient facts or data, and is not the product of reliable principles and methods.  Fed. R. Evid. 702(b), (c).

The Court sustains the objections to Dr. Stamper's statements that (1) Glaukos's position that the Inject presses against the outer wall is "contradicted" by a Glaukos document which states that the Inject is "designed for a natural fit within [the] 270 [micron] Schlemm's canal," and (2) "[t]he 150 [micron] length of the Inject is such that it can fit within the 190 [micron] to 370 [micron] diameter of

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 18-620 JVS (JDEx) | Date | March 18, 2019 |

| | |
|---|---|
| Title | Glaukos Corp. v. Ivantis, Inc. |

Schlemm's canal without pressing into or expanding the outer wall." Stamper Decl. ¶ 32. As noted above, Dr. Stamper did not review the design history file or the deposition testimony of the designer of the Inject. Therefore, this lay speculation as to the intent of the Inject's design is not supported by any facts or data, or any reliable method of expert analysis. It is also contradicted by substantial evidence, including evidence Ivantis relies on and Dr. Stamper's own deposition testimony, indicating that the 270-micron figure refers to the larger major axis of Schlemm's canal, rather than the approximately 30-micron minor axis constituting the distance between the inner and outer walls. See infra, section B.1.a. Therefore, to the extent the statements in paragraph 32 refer to the major axis, they are irrelevant, and to the extent they refers to the minor axis, they are not based on sufficient facts or data. Fed. R. Evid. 402, 702.

The Court sustains the objections to Dr. Stamper's statements that he "believes" that the Inject satisfies the claim limitations in the Berlin Patents. Stamper Decl. ¶¶ 46, 49, 55. "[I]t is well settled that an expert's unsupported conclusion on the ultimate issue of infringement is insufficient to raise a genuine issue of material fact." Arthur A. Collins, Inc. v. N. Telecom Ltd., 216 F.3d 1042, 1046 (Fed. Cir. 2000); see also Dominion Energy, Inc. v. Alstom Grid LLC, 725 F. App'x 980, 986 (Fed. Cir. 2018) ("[J]ust saying that something is so does not make it true, especially when there is no record support and, in fact, the User's Guide indicates otherwise."). As shown in this Order, there is no record evidence supporting infringement. Therefore Dr. Stamper's conclusory statements regarding the ultimate issue of infringement are inadmissible. Fed. R. Evid. 402, 702.

The Court sustains the objection to Dr. Stamper's statement that the cited video animation shows the Inject "spaced from the outer wall," and related statements. Stamper Decl. ¶¶ 46, 47. Dr. Stamper does not state that the animation is anatomically correct or to scale, and his personal view about the depiction is not helpful to the trier of fact. Fed. R. Evid. 702(a).

The Court finds that the remaining objections to Dr. Stamper's declaration are immaterial, and therefore moot.

      c.      Objections to the Exhibits Attached to the Silbert Declaration

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 18-620 JVS (JDEx) | Date | March 18, 2019 |

| | |
|---|---|
| Title | Glaukos Corp. v. Ivantis, Inc. |

Glaukos also objected to many of the exhibits attached to the declaration of David Silbert (Docket No. 106-3). Docket No. 111-2 at 19–25. However, the Court finds that this evidence doesn't preclude summary judgment for Glaukos. Therefore, Glaukos's objections to the exhibits attached to the Silbert declaration are moot.

**B.      The Inject Does Not Infringe the Berlin Patents Because No Reasonable Jury Could Find Infringement Based on the Undisputed Facts**

A determination of "[p]atent infringement requires a two-step analysis." CCS Fitness v. Brunswick Corp., 288 F.3d 1359, 1365 (Fed. Cir. 2002). First, the Court must construe the disputed claims. Id. Then, the Court must compare the "properly construed claims to the accused device, to see whether that device contains all the limitations, either literally or by equivalents, in the claimed invention." Id.

However, "claim construction is a matter of resolution of *disputed* meanings and technical scope, to clarify, and *when necessary* to explain what the patentee covered by the claims." U.S. Surgical Corp. v. Ethicon, Inc., 103 F.3d 1554, 1568 (Fed. Cir. 1997) (emphasis added); Universal Electronics v. Logitech, Inc., No. SACV 11-01056-JVS (ANx), 2012 WL 13028642, at *8 (C.D. Cal. May 9, 2012). As shown below, the Court finds that Ivantis not presented evidence of infringement sufficient to create a genuine dispute of material fact even under its own constructions. Therefore, the Court need not analyze the parties' disputes regarding the proper construction of the claim language of the Berlin Patents.

1.      Literal Infringement

a.      There Is No Genuine Dispute Regarding the Size of Schlemm's Canal and the Size of the Inject

As an initial matter, there is no material dispute regarding the size of the minor axis of Schlemm's canal or the size of the head of the Inject. It is undisputed that the portion of the Inject placed in Schlemm's canal is the head, which is "approximately 150 microns long." Glasser Decl., Ex. A, passim. Furthermore, the undisputed evidence shows that the distance between the inner

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   SACV 18-620 JVS (JDEx)                    Date   March 18, 2019

Title      Glaukos Corp. v. Ivantis, Inc.

and outer walls of Schlemm's canal, i.e. the distance of the "minor axis," is about 30 microns.

To overcome rejections based on Glaukos's prior art Lynch patent, Berlin represented to the Patent Office that the distance between the inner and outer walls of Schlemm's canal is approximately 30 microns or less. For example, one scientific article he submitted to the Patent Office, Johnson & Erikson, describes the distance between the inner and outer walls as "varying between 1 and 30 [microns], depending on the IOP." Glasser Decl., Ex. K at GKOS00008399. Another reference, Johnson & Johnson, confirmed that the shorter dimension of Schlemm's canal, the distance between the inner and outer wall, is "approximately . . . 30 [microns] at low IOP." Id. at GKOS00008432.

Furthermore, Ivantis does not present evidence to contradict the statements made in the file history for the '659 Patent. To the contrary, Ivantis's evidence is consistent with the fact that the lumen between the inner and outer walls of Schlemm's canal is significantly smaller than 150 microns. For example, one scientific article presented by Ivantis contains a "scanning electron micrograph of a human sample cut in cross section" showing the width of Schlemm's canal to be smaller than the 50 micron scale included in the image. Krishnan Decl., Ex. 23 at 335. Similarly, images in two other of Ivantis's scientific references show the minor axis to be about 30 microns or less based on the micron scales included in the images. Id. Ex. 26 at 371, Ex. 31 at 408. In addition, Ivantis's own expert Dr. Stamper admitted in his deposition that the minor axis of Schlemm's canal in a living patient is about between 5 and 50 microns, and that the study Dr. Stamper cited in his declaration to support his statement that the diameter of Schlemm's canal is 190-370 microns in length does not refer to the minor axis, and is not helpful in demonstrating the distance between the inner and outer walls. Docket No. 130, Updated Ex. 2 at 67:23–68:3, 78:16–79:2, 85:4–21, 97:6–18.

Moreover, Ivantis does not point to any evidence which describes the distance between the inner and outer walls of Schlemm's canal as anything near 150 microns. For example, Ivantis argues that Berlin explained separately in the patent specification that the dimension could reach "300 microns." Opp'n, Docket No. 63 at 7. However, the "300 microns" figure does not describe the natural flow within Schlemm's canal, but a result if an artificial fluid called viscoelastic is

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 18-620 JVS (JDEx) | Date | March 18, 2019 |

| | |
|---|---|
| Title | Glaukos Corp. v. Ivantis, Inc. |

injected into the canal to inflate it. Glasser Decl., Ex. K at GKOS00008064, Ex. J at 303–04, 317. Furthermore, while Ivantis quotes an article as describing the "width of an elliptic shaped [Schlemm's canal as] about 230 [microns]," that statement was referring to the major access of Schlemm's canal, not the minor axis, <u>i.e.</u>, the distance between the inner and outer walls. Krishnan Decl., Ex. 24 at 449 (shorter dimension of the elliptic-shaped Schlemm's canal is 20 microns). Finally, Ivantis includes an image from an article which it argues supports the contention that the lumen of Schlemm's canal "may be hundreds of microns." Opp'n, Docket No. 63 at 6–7. However, the image does not include any dimensions, and in fact comes from the eye of a monkey, rather than a human, in an experiment where the IOP was artificially reduced to zero. Krishnan Decl., Ex. 22 at 293, inset E. The Inject is FDA-approved for "reduction" of IOP in humans, and therefore the monkey-eye image does not create any genuine dispute of fact as to the lumen of Schlemm's canal. Glasser Decl., Ex. D at 212.

Furthermore, Ivantis presents no new evidence contradicting Glaukos's evidence regarding the minor axis of Schlemm's canal in its supplemental opposition. <u>See</u> Supp. Opp'n, Docket No. 106-1. In fact, Ivantis's own FDA submissions states that "the maximum canal dimensions were approximated to be 350 [microns] major axis and 30 [microns] minor axis." Glasser Decl., Ex. P at IVNTS_00016831. Glaukos's internal documents are in accord. <u>See</u> Glasser Decl., Ex. Q at GKOS00019295 (Inject Design History File "Key Dimensions" include "Width of Schlemm's Canal" as 15-25 microns), Ex. R at GKOS00033948–49 (Inject "fixed against [the] rear wall" of Schlemm's canal), Ex. S at GKOS00019637 ("[a]fter placement of the [Inject] stent in an eye, it is assumed that the central 80 [micron] hole will be pressed up against the black scleral wall of Schlemm's canal"). Furthermore, Ivantis produced an internal powerpoint slide containing a "TO SCALE" image showing that the Inject is significantly larger than the distance between the inner and outer wall of Schlemm's canal. <u>Id.</u>, Ex. T.

Therefore, it is undisputed for purposes of this motion that the head of the Inject is approximately 150 microns long, and the minor axis of Schlemm's canal is approximately 30 microns long in living patients.

      b.    **'659 Patent, Claim 1:** "distal end being positioned adjacent the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.    SACV 18-620 JVS (JDEx)                    Date    March 18, 2019

Title    Glaukos Corp. v. Ivantis, Inc.

            inner wall of Schlemm's canal and spaced from the outer wall
            of Schlemm's canal"

      The Court finds that there is no credible argument that the distal end of the
Inject's head is "spaced from" the outer wall.  The only evidence cited by Ivantis in
its supplemental brief to support its contention that the distal end of the Inject is
"spaced from" the outer wall are the patient-education animated videos produced
during supplemental discovery.  See Supp. Opp'n, Docket No. 106-1 at 4, 6.  For
the following reasons, the animated videos are insufficient to create a genuine issue
of fact that the Inject's head does not contact the outer wall of Schlemm's canal.

      In 2008, Glaukos hired a vendor called Eyemaginations (now called
"Rendia") to make an "animation to show to potential patients for a clinical study
to educate them on the [Inject] procedure. . . ."  Silbert Decl., Ex. 4 at 31:20–23,
Ex. 5.  Eyemaginations made two versions of this video in 2008, both of which
were precursors to the final version.  See id. ¶ 8, Ex. 3 (later 2008 animation), Ex.
7 (earlier 2008 animation), Ex. 4 at 36:9 (explaining that later 2008 animation was
a "precursor" to the final video).  After these animations, Glaukos gave
Eyemaginations "direction" to "correct some of the inaccuracies in the 2008 video,"
resulting in the final 2010 version of the video.  Id., Ex. 4 at 36:24–25.  This 2010
video appears identical (except for missing audio) to the YouTube video cited in
Ivantis's Infringement Contentions, starting at around the two-minute mark.
Compare id., Ex. 10 with id., Ex. 2 at 2:00.  For instance, Glaukos told the
animator in rejecting the 2008 draft that "[t]here should be no space and [the outer
wall of Schlemm's canal] should be snug against the device."  Silbert Decl., Ex. 1
at GKOS00034755.  Although that statement was in reference to the first
generation iStent device, not the Inject, Glaukos stated that the Inject "won't be as
snug," indicating that it should still be snug against the walls of the canal, and
directed the animator to reduce the space in Schlemm's canal in the depiction of
the Inject.  Id. (emphasis added).

      The videos all show how the Inject is inserted into the eye, and include an
animated view of the Inject inside Schlemm's canal.  The 2010 version also shows
blue arrows representing fluid flow coming out of two of the side outlets in the
Inject's head, as well as the central outlet.  Id., Ex. 3 at ~2:30.  Furthermore,
according to Ivantis, the videos all show the head of the Inject spaced from the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   SACV 18-620 JVS (JDEx)                    Date   March 18, 2019

Title        Glaukos Corp. v. Ivantis, Inc.

outer wall of Schlemm's canal.  Supp. Opp'n, Docket No. 106-1 at 3–7.

Ivantis contends that these animations, and particularly the 2010 animation, create a genuine dispute of material fact as to whether the Inject touches the outer wall of Schlemm's canal.  Id.  Glaukos argues that these videos are insufficient to create a genuine dispute because Ivantis does not even argue that they are anatomically precise, and that such marketing materials cannot overcome undisputed evidence to the contrary.  Supp. Reply, Docket No. 113-2 at 21–22.  The Court agrees.  The actual Inject specifications, the anatomical facts in the prosecution history, and Ivantis's own admissions about the relative sizes of Schlemm's canal and the Inject are not in dispute.  Therefore, the 2008 draft animations and the 2010 final animation are not sufficient to create a genuine issue of fact that the Inject does not contact the outer wall of Schlemm's canal when inserted into a living patient.  See, e.g., MAG Aerospace Indus., Inc. v. B/E Aerospace, Inc., 816 F.3d 1374, 1377 (Fed. Cir. 2016) (testimony and documents tracking claim language could not overcome undisputed facts about whether a toilet bowl was "toollessly" replaceable because record evidence showed that to release screws and remove the bowl, some kind of tool was necessary); Regents of Univ. of Minn. v. AGA Med. Corp., 717 F.3d 929, 939 (Fed. Cir. 2013) (no reasonable jury could find infringement based on sales materials contradicting the undisputed facts about the actual physical composition of the accused product ); Whirlpool Corp. v. LG Electronics, Inc., No. 1:04-CV-100, 2006 WL 2035215, at *8 (W.D. Mich. July 18, 2006) (granting summary judgment of non-infringement in part because "marketing materials cannot override the actual operation of the [accused product]").

Furthermore, the images from the Le and Bahler articles showing the Inject pressing against the outer wall of Schlemm's canal are the best evidence before the Court regarding the actual positioning of the Inject within Schlemm's canal.  See Glasser Decl., Exs. B, C.  Ivantis argues that the images have "limited significance in living patients" because the study was conducted using post-vivo eyes.  Supp. Opp'n, Docket No. 106-1 at 22.  However, Ivantis's own expert offers no discussion of the articles' analysis, nor any reason that the protocol used would not accurately capture the impact of inserting an Inject into the eye of a living patient.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 18-620 JVS (JDEx) | Date | March 18, 2019 |
|---|---|---|---|

| Title | Glaukos Corp. v. Ivantis, Inc. |
|---|---|

See Stamper Decl., Docket No. 106-35.[3]  Furthermore, Ivantis itself proffered the Le article containing the images at issue from the Bahler article, relying on it throughout its Infringement Contentions.  See generally, Glasser Decl., Ex. A. Ivantis has the burden of proving infringement; therefore, even if the Bahler images were discredited to a degree because they are not of live eyes, Ivantis has identified no other images showing the Inject in the actual eye tissue.  To the contrary, testing images produced by Glaukos during supplemental discovery confirm that the Inject's head is much larger than the minor axis of Schlemm's canal and presses into the outer wall when injected.  See Glasser Decl., Ex. U at GKOS00034723–24.

Ivantis has not produced evidence from which a jury could find that the distal end of the Inject's head is both adjacent to the inner wall and spaced from the outer wall of Schlemm's canal, as required by Claim 1 of the '659 Patent. Therefore, Glaukos's motion for summary judgment of non-infringement is granted as to these claim limitations.

> c.    **'659 Patent, Claim 15:** "fastening member for securing the implant in place so as not to impinge the outer wall of Schlemm's canal"; **Claim 1:** "does not ordinarily impinge the outer wall"

The parties dispute the proper construction of "impinge."  Glaukos argues that "impinge" should be construed as "contact."  Supp. Reply, Docket No. 113-2 at 12–13.  Ivantis originally argued that "impinge" should be construed as "have an effect or impact, especially a damaging or negative one."  Docket No. 63 at 15. Ivantis changes its argument in its supplemental brief, arguing that "impinge" is properly construed as "damage" or "injure."  Supp. Opp'n, Docket No. 106-1 at 12–14.

---

[3] In his deposition, Dr. Stamper stated that it is "very difficult" to determine the length of minor axis in a living patient because of the flow of blood and aqueous humor that expands Schlemm's canal in a living patient.  Docket No. 131-3 at 77:9–78:3, 78:16–25.  However, despite this purported variance in fluid, Dr. Stamper then admits that the estimates he's seen regarding the minor axis of Schlemm's canal "range around 40 to 70 microns."  Id. at 78:25–79:2.  Therefore, his deposition testimony also indicates that the variance between the dimensions of Schlemm's canal in living vs. post-vivo eyes is immaterial for purposes of this motion.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.    SACV 18-620 JVS (JDEx)                          Date    March 18, 2019

Title       Glaukos Corp. v. Ivantis, Inc.

      The Court need not resolve this construction dispute.  First, Ivantis's "damage" or "injure" theory of infringement is not disclosed in its Infringement Contentions.  Ivantis's Infringement Contentions rely on one theory of infringement: that the Inject is inserted "without abutting" the outer wall of Schlemm's canal.  Glasser Decl., Ex. A at 19, 21, 26, 41.  Therefore, the no "damage" or "injury" theory of infringement cannot provide a basis to defeat summary judgment.  See, e.g., Pazandeh v. Yamaha Corp. of Am., No. SACV 16-01849 JVS (DFMx), 2017 WL 6940551, at *9 (C.D. Cal. July 25, 2017) ("Because Pazandeh did not identify this theory in his infringement contentions he cannot rely on it to defeat summary judgment."); Kruse Tech. P'ship v. Daimler AG, No. SACV 10-01066-JVS (RNBx), 2012 WL 12888110, at *5 (C.D. Cal. Mar. 21, 2012) ("[I]f the evidence does not establish infringement under a theory disclosed in its infringement contentions, it fails to stave off summary judgment."); Fed. R. Civ. P. 37(c).

      Furthermore, even if this theory of infringement were properly asserted, Ivantis has not produced evidence that the Inject does not cause any damage or injury to the outer wall, and therefore fails to carry its burden on summary judgment.  At the hearing on this motion, Ivantis argued that a 2006 Glaukos "Preliminary Hazard Analysis" ("PHA") provides proof of no damage to the outer wall.  See Silbert Decl., Ex. 20.  The Court disagrees.  The document is a chart listing potential hazards of the Inject device, potential causes and effects of the hazards, and recommended and completed actions regarding each hazard.  Id.  Ivantis points to the hazard "pointed end of the stent may cause tissue erosion after implantation" and the corresponding "completed action" stating that the Inject "is smaller and less sharp than previous generation device, who's clinical data post implantation has not shown evidence of tissue erosion."  Id. at GKOS00019699.  Therefore, the PHA speculates as to the likelihood of injury from the Inject, and only references clinical data from the first generation iStent.  Id.  Furthermore, the PHA does not reference the outer wall of Schlemm's canal; thus, the referenced "tissue erosion" could be describing the trabecular meshwork or the inner wall of the canal.  Finally, this speculation is insufficient to overcome the actual study completed by Bahler (among others) in 2012 which observed "tissue disruption" on the "inner and outer walls of Schlemm's canal."  Glasser Decl., Ex. C at GKOS00010416.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | | |
|---|---|---|---|---|
| Case No. | SACV 18-620 JVS (JDEx) | | Date | March 18, 2019 |
| Title | Glaukos Corp. v. Ivantis, Inc. | | | |

Ivantis also argued at the hearing that a lab notebook provides proof of non-injury because of a bullet point stating that it is "[e]stimated that 300 [microns] is [the] max round tube diameter to provide for atraumatic intubation of [Schlemm's] canal." Krishnan Decl., Ex. 30 at GKOS00003271. However, a few bullets later, the same document says that the designer's goal was to "[p]revent or minimize canal endothelial damage upon insertion." Id. This statement would be unnecessary if the "atraumatic intubation" statement indicates that the device does not damage the outer wall at all. Furthermore, it is unclear whether this document even refers to the Inject device, particularly because it is undisputed that the lab notebook is from GMP Corp., owned by Mary Lynch and Reay Brown, the inventors of the Lynch Patent, which Berlin expressly disclaimed during the prosecution of the Berlin Patents. See supra, section I.D. Therefore, the lab notebook does not create a genuine dispute regarding damage to the outer wall of Schlemm's canal upon implantation of the Inject.

The Bahler article (which is cited in the Le article relied upon extensively by Ivantis in its Infringement Contentions), states that after insertion of the Inject, "[s]ome cell disruption is noted on the inner and outer wall of Schlemm['s] canal." Glasser Decl., Ex. B at 1939, Notes to Figs. 5–6; Ex. C at 1209, Fig. 3. Therefore, the Bahler/Le articles and the corresponding images of the Inject inside a post-mortem eye indicate damage to the outer wall of Schlemm's canal. Moreover, documents cited by Ivantis's expert indicate that Glaukos's goal was to minimize damage and trauma to the outer wall, not completely eliminate it. See, e.g., Silbert Decl., Ex. 11 at GKOS00016178 (Glaukos presentation states that the Inject "is minimally traumatic and spares conjunctival tissue.") (emphasis added); Id., Ex. 40 GKOS00037549 (Glaukos stating that the Inject "prioritizes safety through . . . leaving the natural anatomy intact and minimizing tissue disruption.") (emphasis added); see also Stamper Decl. ¶ 33. Phrases such as "minimally traumatic" and "minimizing tissue disruption" indicate a base-level of trauma and/or tissue disruption. Finally, Ivantis's own internal documents admit that upon implantation, the Inject "indents the back wall of Schlemm['s] canal." Glasser Decl., Ex. O at 11.

Ivantis argues that the Bahler/Le images should be discredited because they are of donor eyes. Supp. Opp'n, Docket No. 106-1 at 23. However, as noted supra section B.1.b, Ivantis presents no evidence that the dimensions of donor eyes are

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 18-620 JVS (JDEx) | Date | March 18, 2019 |
|---|---|---|---|

| Title | Glaukos Corp. v. Ivantis, Inc. |
|---|---|

different in any material respect.

Ivantis also argues that the Le/Bahler images cannot support the contention that the Inject damages the outer wall based on quotes by an author of the Bahler article (and Glaukos employee) Dr. Michael Fautsch ("Dr. Fautsch"). Specifically, Ivantis points out that Dr. Fautsch emailed other the other authors of the Bahler article and Glaukos's Vice President of Applied Research regarding reviewer comments on the draft article. Silbert Decl., Ex. 36. The third reviewer question notes that the outer wall of Schlemm's canal "may be traumatized during insertion" because the Inject is inserted directly through the trabecular meshwork, and asks about the "implications of this tissue disruption with regards to possible scarring around the opening ports and subsequent delayed failure of the implant." Id. at GKOS00035092. In response, Dr. Fautsch stated that the question was "beyond the scope" of the Bahler article because, without a live eye, the authors could "not address the implications of the healing process around the penetration site." Id. He further explained that the article addresses "the immediate effects of the [Inject] penetration," but that the "end result of the implant insertion" would require testing in humans. Id.

The Court finds that Dr. Fautsch's comments do not preclude the use of the images from the Bahler article as evidence of "damage" or "injury" to the outer wall. Dr. Fautsch specifically states that the article addresses "the immediate effects of the [Inject] penetration," and the article itself observes "cell disruption" in the tissue of the outer wall. Id.; Glasser Decl., Ex. C at 1209, Fig. 3. The fact that the study does not address long-term trauma or the healing process resulting from insertion of the Inject does not nullify the immediate damage it shows at the Inject's point of contact.

Ivantis also argues that evidence regarding Glaukos's past comparisons to Ivantis's "Hydrus" device create a genuine dispute regarding the damage caused to the outer wall by the Inject. Supp. Opp'n, Docket No. 106-1 at 20–21. Specifically, Ivantis cites documents in which Glaukos emphasizes the greater damage caused by Ivantis's product. Id. at 21. However, these documents only show that Glaukos claimed that the Hydrus causes more damage than the Inject because of its larger size, not that the Inject causes no damage. See, e.g., Silbert Decl., Ex. 26 at GKOS00015105 (Hydrus results in "so much physical hardware in

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 18-620 JVS (JDEx) | Date | March 18, 2019 |
|---|---|---|---|

| Title | Glaukos Corp. v. Ivantis, Inc. |
|---|---|

the eye and so much tissue disruption"), Ex. 27 at GKOS00036763 ("Response Points" to "Hydrus Positioning" describe how the "[l]ong-term impact of tissue trauma from 'stretching' Schlemm's canal has not been established."), Ex. 28 at GKOS00037209 ("Hydrus Messaging" presentation states that the "[l]ong term impact of tissue trauma from 'stretching' Schlemm's canal to 4-5 times its natural size has not been established."). The same rationale applies to Ivantis's contention that the Inject was designed to protect the outer wall better than the first generation iStent. See Supp. Opp'n, Docket No. 106-1 at 18–20. That the Inject was designed to protect the outer wall more effectively relative to the first generation iStent does not indicate that the Inject protects the outer wall from all damage or injury.

In sum, Ivantis has not produced evidence showing that the Inject does not cause damage to the outer wall of Schlemm's canal. On the other hand, a study relied upon by Ivantis in its Infringement Contentions indicates that the Inject damages the outer wall by disrupting its cells, and Ivantis internal documents admit that the Inject "indents" the outer wall. Therefore, even under Ivantis's newly proposed construction, there is no evidence from which a reasonable jury could find infringement.[4]

> d.   **'741 Patent, Claims 1 and 14:** "distal portion configured to substantially inhibit contact with the outer wall of Schlemm's canal"

In its original opposition brief, Ivantis argued that "inhibit" in the claim language of the '741 and '357 Patents should be construed as "hinder," rather than mere touching. Opp'n, Docket No. 38 at 17–18. Ivantis argues for this construction based on the dictionary definition of "inhibit." Id. at 17 (citing Krishnan Decl., Ex. 18) (dictionary definition of "inhibit" is "[t]o decrease, limit, or block the action or function of . . . .").

---

[4] Glaukos also moves for summary judgment of non-infringement on these claims on the independent basis of prosecution history disclaimer. Mot., Docket No. 56-4 at 19–24; Reply, Docket No. 68 at 4–11; Supp. Reply, Docket No. 113-2 at 10–12. Because the Court grants summary judgment on the basis that Ivantis fails to present a genuine dispute regarding infringement of the Berlin Patents, the Court declines to address Glaukos's disclaimer argument in this Order.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 18-620 JVS (JDEx) | Date | March 18, 2019 |
|---|---|---|---|

| Title | Glaukos Corp. v. Ivantis, Inc. |
|---|---|

Even accepting Ivantis's construction of "inhibit" as "hinder," the undisputed facts demonstrate that the Inject's head placed in Schlemm's canal presses against the outer wall of Schlemm's canal. See supra, section B.1.a. There is no evidence that the Inject "decreases, limits, or blocks the action or function" of the outer wall of Schlemm's canal. Therefore, the Inject does not "hinder" contact with the outer wall of Schlemm's canal based on a commonsense application of Ivantis's construction.

Ivantis argues in its supplemental brief that there is a genuine issue of material fact regarding whether the Inject "substantially inhibits contact" with the outer wall based on (1) the patient-education animated videos commissioned by Glaukos; and (2) evidence that Glaukos intended the Inject's central outlet as an exit for aqueous humor, and thus did not design the device so that the central outlet would be blocked by the outer wall. Supp. Opp'n, Docket No. 106-1 at 3–11. The Court disagrees.

As previously noted, the animated videos are insufficient to create a genuine dispute of material fact regarding the Inject's positioning within Schlemm's canal. See supra, section B.1.b. Furthermore, the substantial amount of evidence that Ivantis cites in support of the contention that Glaukos intended aqueous humor to flow through the central outlet is immaterial. See Supp. Opp'n, Docket No. 106-1 at 7–11 (citing Silbert Decl., Exs. 11–15). It is undisputed that Schlemm's canal pulsates, and that it is not static or flat. See Glasser Decl., Ex. K at GKOS00008432; Krishnan Decl., Ex. 22 at 293, 315. Therefore, it is logical that different outlets of the Inject (including the central outlet) will be covered and uncovered by the walls of Schlemm's canal at different times. Evidence of flow from the central (or "main") outlet is not evidence of infringement because it doesn't encompass any of the claim limitations at issue.

In sum, Ivantis does not identify evidence that the Inject is configured to substantially "hinder" contact between the Inject and the outer wall of Schlemm's canal. Therefore, Ivantis's own construction cannot overcome summary judgment.

    e.    **'741 Patent, Claims 29 and 33:** "the distal portion is sized and shaped to engage a wall of Schlemm's canal and wherein engagement of the wall of Schlemm's canal is limited to

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 18-620 JVS (JDEx) | Date | March 18, 2019 |

| Title | Glaukos Corp. v. Ivantis, Inc. |

engagement of an inner wall"

Ivantis also argues that the claim language "engagement of the wall of Schlemm's canal is limited to an inner wall of Schlemm's canal" in claims 29 and 33 of the '741 Patent should be construed as "the implant is held fixed only to the inner wall," rather than failure to contact the outer wall. Opp'n, Docket No. 63 at 17. However, the evidence demonstrates that the Inject is affixed by the Inject's narrow thorax portion to the trabecular meshwork, not the inner wall of Schlemm's canal. See Glasser Decl., Ex. D at 2–3 (pagination per docket). The evidence thus indicates that the Inject is not "held fixed only to the inner wall" of Schlemm's canal, but rather is held fixed to the trabecular meshwork and contacts both walls of Schlemm's canal because it the Inject's head is substantially larger than the width of the canal. Furthermore, Ivantis fails to address this claim language in its supplemental opposition brief. See Supp. Opp'n, Docket No. 106-1. Therefore, Ivantis's own construction cannot overcome summary judgment.

> f.   **'357 Patent, All Claims:** "distal portion sized and shaped to substantially inhibit contact with collector channels on the outer wall"

The Court has already determined that there is no evidence that the Inject's head is sized and shaped to substantially inhibit contact with the outer wall of Schlemm's canal. See supra, section B.1.d. With respect to the '357 Patent, the issue is slightly different – whether the head of the Inject was designed to hinder contact specifically with the collector channels for aqueous humor located on the outer wall.

Ivantis addresses this claim limitation in a footnote in its supplemental brief, arguing that the Inject is designed to inhibit contact with collector channels because the Inject's distal diameter is about 80 microns, while collector channels are spaced on the outer wall at intervals of approximately 300 to 2800 microns. Supp. Opp'n, Docket No. 106-1 at 17–18 n.15. Therefore, Ivantis argues, "the probability of contacting a collector channel is very low." Id. (citing Stamper Decl. ¶ 57).

Ivantis's argument fails for multiple reasons. First, this theory of

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   SACV 18-620 JVS (JDEx)                     Date   March 18, 2019

Title        Glaukos Corp. v. Ivantis, Inc.

infringement was not disclosed in Ivantis's Infringement Contentions.  <u>See generally</u>, Glasser Decl., Ex. A.  Second, the theory does not track the '357 Patent's claim language.  The claims do not address probability; rather, they require a distal portion sized and shaped to <u>substantially</u> <u>inhibit</u> <u>contact</u> with collector channels.  <u>Id.</u>, Ex. M at GKOS00010412, col. 19, 20 (emphasis added). Here, the Inject's head is sized and shaped such that contact with the outer wall, where the collector channels are located, is unavoidable.  <u>Supra</u>, section B.1.a. Therefore, there is no evidence that Glaukos designed the Inject to avoid contact with collector channels sufficient for Ivantis to overcome summary judgment.

  2.   <u>Doctrine of Equivalents</u>

         As stated above, there is no evidence of literal infringement.  Glaukos also argues that there is also no infringement under the doctrine of equivalents.  Mot., Docket No. 56-4 at 24–25.  The Court agrees.  A "narrowing amendment made to satisfy any requirement of the Patent Act may give rise to an estoppel.  <u>Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.</u>, 535 U.S. 722, 736 (2002).  When a patentee limits a claim in response to a rejection, the patentee "may not argue that the surrendered territory comprised unforeseen subject matter that should be deemed equivalent to the literal claims of the issued patent."  <u>Id.</u> at 733–34.  Here, the limitations at issue were all added during prosecution to overcome rejections. <u>See supra</u>, section I.D.  Therefore, the doctrine of equivalents is presumably unavailable to Ivantis.  The patentee may rebut this presumption by showing that the patentee's reason for amendment was not one relating to patentability.  <u>Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.</u>, 344 F.3d 1359, 1365–67 (Fed. Cir. 2003).  However, if the patentee fails to rebut the presumption, "then prosecution history estoppel bars the patentee from relying on the doctrine of equivalents for the accused element."  <u>Id.</u> at 1367.  Here, Ivantis does not raise any arguments under the doctrine of equivalents in its Infringement Contentions or in its briefing on instant motion.  <u>See</u> Glasser Decl., Ex. A; Opp'n, Docket No. 63. Accordingly, the Court finds that there is also no evidence of infringement under the doctrine of equivalents.

**C.     Ivantis's Additional Theories of Infringement Fail Because They Were Not Disclosed In Its Infringement Contentions**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.    SACV 18-620 JVS (JDEx)                          Date    March 18, 2019

Title       Glaukos Corp. v. Ivantis, Inc.

Glaukos argues that Ivantis presents new theories of infringement which are
procedurally improper because they were not raised in Ivantis's Infringement
Contentions.  Reply, Docket No. 68 at 21–24.  The allegedly improper theories are:
(1) that the "spaced from the outer wall" claim language is only part of the first
step – inserting the Inject – and thus the Inject is necessarily spaced from the outer
wall because the Inject is still on the trocar of the injector device, which protrudes
from the central outlet of the Inject's head; and (2) if fluid forcefully spurts out of
the central outlet of the Inject's head, the Inject might recoil backwards like when
someone "turn[s] on a garden hose," spacing the Inject from the outer wall and
substantially inhibiting contact with the outer wall.  Opp'n, Docket No. 63 at 16,
23–24; see also Supp. Opp'n, Docket No. 106-1 at 2, 21–23 (discussing the
"hydrodynamic scaffolding" function of the Inject).

The Court agrees that these theories were improperly raised because they
were not included in Ivantis's Infringement Contentions.  The sole theory of
infringement articulated by Ivantis in its Infringement Contentions was that the
Inject does not "abut" the outer wall.  Glasser Decl., Ex. A at 18–19, 21–22, 24–26,
41–44, 62–63, 88–90, 117–19, 127–29, 148–50, 151– 52, 173–74, 176–77.  Thus,
the "initial step" and "garden hose" theories of infringement described above
cannot provide a basis to defeat summary judgment.  See, e.g., Pazandeh, 2017 WL
6940551, at *9 ("Because Pazandeh did not identify this theory in his infringement
contentions he cannot rely on it to defeat summary judgment."); Fed. R. Civ. P.
37(c).

In its supplemental brief, Ivantis makes a variety of arguments concerning
the Inject's intended "hydrodynamic scaffolding."  Supp. Opp'n, Docket No. 106-1
at 2, 21–23.  The Court finds that these arguments are merely a variant of the
"garden hose" theory.  Therefore, they are an insufficient basis on which to deny
summary judgment of non-infringement.

//
//

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 18-620 JVS (JDEx) | Date | March 18, 2019 |
|---|---|---|---|
| Title | Glaukos Corp. v. Ivantis, Inc. | | |

## IV. CONCLUSION

For the foregoing reasons, the Court **grants** Glaukos's motion for summary judgment of non-infringement of the Berlin Patents.

## IT IS SO ORDERED.

|  | : | 0 |
|---|---|---|
| Initials of Preparer | lmb | |