IRELL & MANELLA LLP
Lisa S. Glasser (223406)
lglasser@irell.com
David McPhie (231520)
dmcphie@irell.com
840 Newport Center Drive, Suite 400
Newport Beach, California 92660-6324
Telephone: (949) 760-0991
Facsimile: (949) 760-5200

Morgan Chu (70446)
mchu@irell.com
Stephen Payne (310567)
spayne@irell.com
1800 Avenue of the Stars, Suite 900
Los Angeles, California 90067-4276
Telephone: (310) 277-1010
Facsimile: (310) 203-7199

Attorneys for Plaintiff
GLAUKOS CORPORATION

REDACTED VERSION OF DOCMENT FILED CONDITIONALLY UNDER SEAL

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**SOUTHERN DIVISION**

GLAUKOS CORPORATION, a Delaware Corporation,

Plaintiff,

v.

IVANTIS, INC., a Delaware Corporation,

Defendant.

Case No. 8:18-cv-00620-JVS-JDE

**PLAINTIFF GLAUKOS CORPORATION'S NOTICE OF MOTION AND MOTION FOR ADVERSE INFERENCE INSTRUCTION AND EXCLUSION RE DEFENDANT IVANTIS, INC'S SPOLIATION OF EVIDENCE**

Hearing Date: May 4, 2020
Hearing Time: 1:30 p.m.
Courtroom: 10C
Judge: Hon. James V. Selna

# TABLE OF CONTENTS

**Page(s)**

**Cases**

NOTICE OF MOTION ..... iv

MEMORANDUM OF POINTS AND AUTHORITIES ..... 1

I. INTRODUCTION ..... 1

II. BACKGROUND ..... 3

A. The Inventor of the Asserted Patents Warns Ivantis It Infringes ..... 4

B. Ivantis, its Investors, and the Entire Industry Anticipated a Lawsuit by Glaukos ..... 5

C. Ivantis Made No Efforts to Preserve, and Deleted, Relevant Documents ..... 8

D. Glaukos Determines No Discovery Remedy Exists ..... 8

III. LEGAL STANDARD ..... 9

IV. ARGUMENT ..... 10

A. Ivantis Failed to Preserve Evidence Despite Reasonably Anticipating Litigation with Glaukos ..... 10

B. Glaukos Has Suffered Prejudice Due to Ivantis's Deletion of Evidence ..... 14

C. The Measures Necessary To Address Ivantis's Destruction of Evidence ..... 16

V. CONCLUSION ..... 20

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*4DD Holdings, LLC v. United States*, 143 Fed. Cl. 118 (Fed. Cl. 2019) .......... 14

*Alabama Aircraft Indus., Inc. v. Boeing Co.*, 319 F.R.D. 730 (N.D. Ala. 2017) .......... 17

*Apple Inc. v. Samsung Elecs. Co., Ltd.*, 881 F. Supp. 2d 1132 (N.D. Cal. 2012) .......... 10, 13, 14, 18

*Apple Inc. v. Samsung Elecs. Co., Ltd.*, 888 F. Supp. 2d 976 (N.D. Cal. 2012) .......... 10

*Brown Jordan Int'l Inc. v. Carmicle*, 2016 WL 815827 (S.D. Fla. Mar. 2, 2016) .......... 17

*Cacace v. Meyer Mktg. Co.*, 2011 WL 1833338 (S.D.N.Y. May 12, 2011) .......... 12

*CAT3, LLC v. Black Lineage, Inc.*, 164 F. Supp. 3d 488 (S.D.N.Y. 2016) .......... 19

*Clear-View Techs., Inc. v. Rasnick*, 2015 WL 2251005 (N.D. Cal. May 13, 2015) .......... 12

*CTC Global Corp. v. Huang*, 2019 WL 6357271 (C.D. Cal. July 3, 2019) .......... 9, 18

*Ericksen v. Kaplan Higher Education*, 2016 WL 695789 (D. Md. Feb. 22, 2016) .......... 19

*Klipsch Grp., Inc. v. ePRO E-Commerce Ltd.*, 880 F.3d 620 (2d Cir. 2018) .......... 18

*Metrokan, Inc. v. Built NY, Inc.*, 2008 WL 4185865 (S.D.N.Y. Sept. 3, 2008) .......... 11

*Moody v. CSX Transportation, Inc.*, 271 F. Supp. 3d 410 (W.D.N.Y. 2017) .......... 16, 17

*In re Napster, Inc. Copyright Litigation*, 462 F. Supp. 2d 1060 (N.D. Cal. 2006)........................................................9, 13

*Oppenheimer v. City of La Habra*, 2017 WL 1807596 (C.D. Cal. Feb. 17, 2017)................................................9, 15

*Sensonics, Inc. v. Aerosonic Corp.*, 81 F.3d 1566 (Fed. Cir. 1996).....................................................................9

*Surowiec v. Capital Title Agency, Inc.*, 790 F. Supp. 2d 997 (D. Ariz. 2011)...............................................................11

*UMG Recording, Inc. v. Escape Media Grp.*, 2014 WL 5089743 (S.D.N.Y. Sept. 29, 2014)..................................................12

*Waymo LLC v. Uber Techs.*, 2018 WL 646701 (N.D. Cal. Jan. 30, 2018).............................................10, 12

*Zest IP Holdings LLC v. Implant Direct Mfg., LLC*, 2013 WL 6159177 (S.D. Cal. Nov. 25, 2013)...........................................18, 19

*Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212 (S.D.N.Y. 2003)...........................................................12, 13

**Statutes**

35 U.S.C. § 271(e)...........................................................................13

**Other Authorities**

Fed. R. Civ. P. 26(f)..........................................................................3

Fed. R. Civ. P. 26(f)(3)(C)..................................................................3

Fed. R. Civ. P. 37(e)......................................................................9, 16

Fed. R. Civ. P. 37(e)(1).................................................................16, 18

Fed. R. Civ. P. 37(e)(2)......................................................................16

## NOTICE OF MOTION

**TO DEFENDANT IVANTIS AND ITS COUNSEL OF RECORD:**

PLEASE TAKE NOTICE THAT, on May 4, 2020 at 1:30 p.m. or as soon thereafter as the matter may be heard, in the United States District Court for the Central District of California, Southern Division, Courtroom 10C, located at 411 West 4th Street, Room 1053, Santa Ana, CA 92701-4516, and before the Honorable James V. Selna, Plaintiff Glaukos Corporation will move this Court for an order issuing an adverse inference instruction to the jury and excluding evidence due to Ivantis's spoliation of evidence. Glaukos's motion is supported by the enclosed Memorandum of Points and Authorities, the supporting Declaration of Lisa S. Glasser and the exhibits thereto, and any arguments advanced in reply; the files, records, and pleadings in this action; any arguments presented at the time of hearing on this motion; and such other and further matters as the Court deems just and proper.

## LOCAL RULE 7-3 STATEMENT

This motion is made following a conference of counsel pursuant to Local Rule 7-3, which took place on March 16, 2020.

Dated: March 23, 2020

Respectfully submitted,

IRELL & MANELLA LLP

By: /s/ *Lisa S. Glasser*
Lisa S. Glasser

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Plaintiff Glaukos Corporation ("Glaukos") brings this motion to seek preclusion and a curative jury instruction based on Defendant Ivantis, Inc.'s ("Ivantis") intentional spoliation. Specifically, Ivantis maintained a policy that deleted all company email after 12 months long after Ivantis had a reasonable apprehension of suit. Ivantis's actions resulted in the destruction of highly relevant documents—including [REDACTED]—and untold other documents related to Glaukos and the Glaukos Asserted Patents which have been permanently destroyed. The destruction of these documents has prejudiced Glaukos's ability to present its case and to respond to Ivantis's defenses.

In April 2009, [REDACTED] A few days later, [REDACTED]. Instead, it adopted a policy that automatically deleted email after 12 months, [REDACTED], and [REDACTED]. In 2017, a year before Glaukos filed suit, Ivantis filed litigation in the European Patent Office to challenge a European relative of the Asserted Patents, and [REDACTED] Yet at no time did Ivantis suspend its document deletion policy. Rather, even as [REDACTED] Ivantis continued to delete every email in the company.

As Ivantis was taking these actions to prepare for suit, it also was receiving additional warnings that Glaukos would file patent litigation. For example, a number of prominent industry analysts published reports stating they expected Glaukos to file a patent infringement suit as soon as the Hydrus commercially launched, [REDACTED] [REDACTED]. Yet Ivantis still did not suspend its document deletion policy, and continued to delete documents as the warnings of impending legal action by Glaukos accumulated.

Based on the facts, it is clear that Ivantis reasonably apprehended suit as early as 2009, and certainly long before Glaukos filed its complaint in April 2018. Ivantis thus had an obligation to preserve relevant documents. But it was not until ***after*** Glaukos filed this lawsuit in April 2018 that Ivantis finally suspended its document deletion policy. By that time, it was too late to recover any of the destroyed documents. Nearly all email in the company from prior to 2017 had been permanently deleted. The absence of this crucial evidence has prejudiced Glaukos and prevented it from determining the full scope of Ivantis's willful infringement.

After learning of Ivantis's destruction of relevant evidence, Glaukos used all available discovery procedures to determine whether any of the documents could be recovered or the information therein obtained through another avenue. However, discovery merely confirmed that the harm is irreversible. Ivantis's corporate representative testified that [REDACTED]

Because no discovery remedy exists to cure Ivantis's spoliation, Glaukos brings this motion for an instruction permitting the jury to draw an adverse inference from Ivantis's spoliation, and an order excluding Ivantis from presenting evidence or testimony that Glaukos has been unable to test in discovery. These remedies, while significant, are collectively no greater than necessary to cure the prejudice caused by

Ivantis's egregious spoliation of evidence—specifically the deliberate deletion of virtually every email in the company for *years* after Ivantis anticipated suit.

## II. BACKGROUND

In April 2019, a year after Glaukos filed suit, Ivantis revealed for the first time that until shortly after this case was filed it maintained a document destruction policy "that automatically deletes emails after 12 months." Ex. 61[1] (4/5/19 Shen email); Ex. 49 (Ivantis Resp. to Interrogatory No. 11) at 3 ("Prior to the filing of Glaukos' complaint, Ivantis had a policy of retaining e-mails for one year.").[2] Glaukos served discovery to determine what documents had been deleted, and whether there was any way to recover them, and determined that Ivantis had permanently destroyed the evidence. Ivantis represented that it is "unable to identify" any of the documents that were deleted. Ex. 49 (Resp. to Interrogatory No. 11) at 3. Further, Ivantis made no attempt to determine what had been deleted. Ex. 14 (Abraham Tr.) at 99:15-25 [REDACTED]. Ivantis's 30(b)(6) designee further testified that [REDACTED] Ex. 14 (Abraham Tr.) at 85:21-86:4, 86:25-87:9 [REDACTED]

Ivantis's failure to suspend its document destruction policy until the complaint has resulted in severe prejudice to Glaukos. Indeed, discovery from third parties

---

[1] Unless otherwise noted, "Ex. __" refers to the Exhibits to the Declaration of Lisa S. Glasser in Support of Plaintiff Glaukos Corporation's Motions for Summary Judgment, *Daubert* Motions, Motion re Spoliation, and Motion For Leave To Amend Infringement Contentions.

[2] Ivantis was required to disclose these preservation issues at the parties' Rule 26(f) conference at the beginning of the case, but failed to do so. *See* Fed. R. Civ. P. 26(f)(3)(C) (requiring disclosure of "***any*** issues about . . . preservation of electronically stored information") (emphasis added). This failure to disclose warrants sanctions in and of itself.

revealed that Ivantis deleted highly relevant emails [redacted] and continued to delete relevant documents for *years* despite anticipating [redacted] a lawsuit with Glaukos.

**A. The Inventor of the Asserted Patents [redacted]**

Ivantis has known of Glaukos and its patents since Ivantis was founded in 2007. At that time, Glaukos had already obtained CE Mark clearance in Europe for its iStent product, and favorable data regarding the iStent had been published in medical journals, proving that a Schlemm's Canal implant could be successful. Ivantis has admitted that [redacted] Ex. 51 (Suppl. Resp. to Interrogatory No. 5) at 14.[3]

In early 2009, [redacted]. Ex. 10 (Van Meter Tr. at pp. 62–63). [redacted]. Ex. 3 (Galt Ex. 18).[4] Six days later, [redacted]

[redacted]

[3] Ivantis has admitted that [redacted] Ex. 51 (Suppl. Resp. to Interrogatory No. 5), at 14.

[4] This document appears to have escaped Ivantis's widespread document destruction policy only because it is a physical, handwritten note contained within a notebook that Ivantis maintained for other purposes.

Ex. 11 (Van Meter Ex. 200). [redacted] Ivantis has never produced the e-mail or any documents relating to it.

The ’984 Patent is the direct parent to the asserted ’858 and ’143 Patents and has the same specification and figures. The claims of the ’984 Patent also contain some of the same limitations found in the Asserted Claims, such as “a distal portion having at least one terminal aspect sized and shaped to be received circumferentially within a portion of Schlemm’s canal and a proximal portion having at least one terminal aspect sized and shaped to be received within the anterior chamber of the eye.” ’984 Patent, Cl. 1. [redacted] would be applicable to the ’858 patent and other patents with the same disclosure.

The year following [redacted] Ivantis commenced its first clinical trial for the Hydrus implant. The Hydrus design tested by Ivantis—and sold today with only small alterations—tracked with uncanny precision the features described in the ’984 and ’858 Patents including, for example, not only all elements of the independent claims, but also specific dimensional details included in the dependent claims such as a proximal portion of about 2 mm and a distal portion of about 6 mm. *See, e.g.*, ’858 Patent, Cl. 37–38.

**B. Ivantis Anticipated a Lawsuit by Glaukos**

In the years following [redacted] and prior to Glaukos filing suit, Ivantis actively investigated and prepared for the possibility of patent litigation with Glaukos. For example, Ivantis [redacted] *See* Ex. 14 (Abraham Tr.) at 78:20-23; Ex. 40 (IVNTS_00029364, at -29442). [redacted]

[redacted] Further, [redacted].[5] [redacted]

Further, in the years prior to Glaukos filing suit, [redacted]

Prominent industry analysts also repeatedly stated that they expected Glaukos to file a patent infringement case as soon as Ivantis commercially launched the Hydrus. For example, in May 2017, an analyst with JP Morgan wrote that "At a minimum, we expect Glaukos to initiate patent litigation at or before US approval of

---

[5] Presumably, even more such communications occurred but were destroyed due to Ivantis's deletion policy.

the Hydrus in 2018," adding that "Glaukos remains highly confident that their early and broad patent estate provides a high degree of protection over trabecular meshwork MIGS devices." Ex. 44 (IVNTS_00058842, at -845). [redacted] Another market analyst report received by Ivantis in November 2017 stated "[W]e expect Glaukos to initiate legal proceedings against Ivantis for patent infringement. As the inventor and pioneer of the MIGS space with iStent, Glaukos has a broad patent estate covering ab-interno procedures and MIGS-related devices in the trabecular meshwork. We have heard this consistently from larger strategics." Ex. 43 (IVNTS_00056622).

By the time Glaukos filed suit in April 2018, Ivantis had not only reasonably anticipated suit for years, but had ***actually filed*** and prepared its own offensive proceedings against Glaukos. Specifically, in July 2017 Ivantis filed an opposition in the European Patent Office ("EPO") asking the EPO to revoke a European Brown-Lynch patent from the same family as the Asserted Patents. Ex. 55. [redacted]

In sum, Ivantis not only should have reasonably anticipated a patent infringement lawsuit by Glaukos long before April 2018, but in fact did anticipate such lawsuit, actively prepared for it, and initiated its own offensive litigation tactics. Thus, when Glaukos filed suit in April 2018, [redacted]

### C. Ivantis Made No Efforts to Preserve, and Deleted, Relevant Documents

Despite clearly anticipating litigation based on the Glaukos patents, Ivantis took no steps to suspend its document deletion policy or to preserve documents relevant to the litigation, such as documents concerning Glaukos's patents. *See, e.g.*, Ex. 15 (Chodzko Tr.) at 12:2-5 [REDACTED]; Ex. 10 (Van Meter Tr.) at 80:2-9 [REDACTED]; Ex. 2 (Galt Tr.) at 108:3-7 [REDACTED] Rather, during all this time, Ivantis continued to automatically delete all emails after twelve months.

### D. Glaukos Determines No Discovery Remedy Exists

After learning of Ivantis's document destruction, Glaukos attempted to determine whether any of the deleted documents could be recovered or whether it could learn the information therein through other avenues of discovery. Specifically, Glaukos served Interrogatories asking Ivantis to describe both its preservation efforts and "any documents deleted (or otherwise destroyed or lost) and their subject matter." Ivantis responded that it was "unable to identify" any documents that were deleted and did not describe any information that was destroyed. Ex. 49 (Ivantis Rep. to Interrogatory No. 11) at 2–3; *see also* Resp. to Interrogatory Nos. 12–13.

Glaukos next sought to depose Ivantis's witnesses regarding deletion of documents. However, Ivantis's corporate representative regarding document retention issues testified that [REDACTED] Ex. 14 (Abraham Tr.) at 85:21-86:4 [REDACTED]. He further testified, as did other Ivantis witnesses, that [REDACTED]



. *Id*. at 99:15-25 *see also* Ex. 15 (Chodzko Tr.) at 12:15-21 Ultimately, Ivantis witnesses were unable to identify or provide any information about any of the documents that were deleted.

As a result of these efforts, Glaukos determined that no discovery remedy existed for Ivantis's spoliation and that there was no discovery motion Glaukos could bring to obtain any relief, much less adequate relief. Rather, the sole remedy available would be bring this motion for an adverse jury instruction and exclusion of evidence.

## III. LEGAL STANDARD

A party to litigation has "an uncompromising duty to preserve relevant records." *See Sensonics, Inc. v. Aerosonic Corp.*, 81 F.3d 1566, 1575 (Fed. Cir. 1996). "The duty to preserve material evidence arises not only during litigation but also extends to that period before the litigation when a party reasonably should know that the evidence may be relevant to anticipated litigation." *CTC Global Corp. v. Huang*, 2019 WL 6357271, at *2 (C.D. Cal. July 3, 2019); *see also In re Napster, Inc. Copyright Litigation*, 462 F. Supp. 2d 1060, 1067 (N.D. Cal. 2006) ("As soon as a potential claim is identified, a litigant is under a duty to preserve evidence which it knows or reasonably should know is relevant to the action."). To comply with its duty to preserve, a party must "suspend any existing policies related to deleting or destroying files and preserve all relevant documents related to the litigation." *Oppenheimer v. City of La Habra*, 2017 WL 1807596, at *3 (C.D. Cal. Feb. 17, 2017).

"Spoliation occurs when a party destroys, significantly alters, or fails to preserve evidence in pending or reasonably foreseeable litigation." *Id*. If evidence that should have been preserved is lost and cannot be restored, then the court "upon finding

prejudice to another party from loss of the information, may order measures no greater than necessary to cure the prejudice," or "upon finding that the party acted with the intent to deprive another party of the information's use in the litigation may: (A) presume that the lost information was unfavorable to the party; (B) instruct the jury that it may or must presume the information was unfavorable to the party; or; (C) dismiss the action or enter a default judgment." Fed. R. Civ. P. 37(e).

## IV. ARGUMENT

### A. Ivantis Failed to Preserve Evidence Despite Reasonably Anticipating Litigation with Glaukos

The duty to preserve relevant evidence arises where "any reasonable party in [the Defendant's] position would have reasonably foreseen litigation." *See Waymo LLC v. Uber Techs.*, 2018 WL 646701, at *16 (N.D. Cal. Jan. 30, 2018); *see also Apple Inc. v. Samsung Elecs. Co., Ltd.*, 881 F. Supp. 2d 1132, 1136 (N.D. Cal. 2012) (duty to preserve evidence runs "from the moment that litigation is reasonably anticipated"). This is "an objective standard, asking not whether the party in fact reasonably foresaw litigation, but whether a reasonable party in the same factual circumstances would have reasonably foreseen litigation." *Apple Inc. v. Samsung Elecs. Co., Ltd.*, 888 F. Supp. 2d 976, 990 (N.D. Cal. 2012). Of course, evidence that a party actually foresaw litigation is probative of whether litigation was reasonably foreseeable. *See Waymo*, 2018 WL 646701, at *15 ("the record clearly shows . . . not only that a reasonable party in Uber's circumstances would have reasonably foreseen this litigation in January 2016, but also that Uber *actually* foresaw this litigation").

Here, it is clear that any reasonable party in Ivantis's circumstances would have reasonably anticipated patent litigation with Glaukos long prior to Glaukos filing suit in April 2018. The key factual circumstances here include:

- Ivantis [REDACTED]
- [REDACTED]

- In May 2017, Ivantis received an analyst report that stated Glaukos would initiate patent litigation upon launch of the Hydrus. Reports later in 2017 stated the same.
- In July 2017, Ivantis initiated litigation against a related patent in the EPO.

These facts clearly show a reasonable apprehension of suit, and track circumstances in which courts have found that a reasonable apprehension of suit existed. Indeed, many of these facts are independently sufficient to give rise to a reasonable apprehension of suit, but together they indisputably demonstrate that Ivantis either did or should have anticipated suit by Glaukos.

For example, , and the third party analyst reports reviewed by Ivantis stating Glaukos would sue, clearly put Ivantis on notice that it should anticipate suit by Glaukos. *See Metrokan, Inc. v. Built NY, Inc.*, 2008 WL 4185865, at *5 (S.D.N.Y. Sept. 3, 2008) (email exchange between tote bag designer to principal of defendant that bags were "confusingly similar" created reasonable anticipation of trademark suit by plaintiff); *Surowiec v. Capital Title Agency, Inc.*, 790 F. Supp. 2d 997, 1005–06 (D. Ariz. 2011)

(letter from third party warning that plaintiff might sue sufficient to create a reasonable apprehension of suit).

As another example, [REDACTED] indicate not just a reasonable apprehension of suit – but actual apprehension of suit. *See Waymo*, 2018 WL 646701, at *15 (finding that defendant "actually foresaw" litigation where it "consulted and retained [ ] litigation counsel to obtain legal advice regarding potential liability exposure," retained another firm to perform "a due diligence investigation," and then asserted privilege over such activities); *UMG Recording, Inc. v. Escape Media Grp.*, 2014 WL 5089743, at *7–8 (S.D.N.Y. Sept. 29, 2014) (reasonable anticipation of suit existed where the Defendant "been fully aware of the threat of copyright litigation" since its launch, had conducted diligence regarding potential infringement, and was aware of third party statements accusing it of infringement); *Cacace v. Meyer Mktg. Co.*, 2011 WL 1833338, at *2 (S.D.N.Y. May 12, 2011) (reasonable apprehension of suit first existed when "defendants learned of the existence of the patent, [and] contacted their patent attorney in an effort to forestall litigation"). [REDACTED]

In addition, even if all the other circumstances above were not sufficient, Ivantis [REDACTED]. This further shows that a reasonable apprehension of suit existed. *See Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212, 217 (S.D.N.Y. 2003) (reasonable anticipation of suit existed where "the relevant people" recognized and discussed "the possibility" of a lawsuit); *Clear-View Techs., Inc. v. Rasnick*, 2015 WL 2251005, at *7 (N.D. Cal. May 13, 2015) (defendants anticipated suit where they openly discussed "litigation ramifications").

Ivantis has never offered any credible explanation for its failure to suspend its document destruction policy until suit was filed. For example, Ivantis has attempted to claim that a "general concern" over litigation does not trigger a duty to preserve evidence. That argument, however, ignores the fact that Ivantis had far more than a "general" concern—rather, [REDACTED] As another example, Ivantis has attempted to claim that it had no duty to preserve documents because Glaukos never sent a demand letter, even though no such demand is required to trigger the duty to preserve evidence. *See Apple*, 881 F. Supp. at 1136 (plaintiffs' "failure" to send preservation letter "'does not vitiate the independent obligation of an adverse party to preserve such information' if the adverse party knows or should know of impending litigation").

Similarly, Ivantis has claimed that it did not reasonably apprehend suit because Glaukos did not sue until [REDACTED]. But this ignores the fact that Glaukos could not have sued until Ivantis commercially launched the Hydrus (or until such launch was imminent) because, as Ivantis argued in initially seeking to dismiss this case, Ivantis's activities before launch were protected under the safe harbor of 35 U.S.C. § 271(e). *See* Dkt. 22. In sum, Ivantis's claim that it did not reasonably anticipate litigation and had no duty to preserve documents is not consistent with the documentary evidence or its own behavior.

"Once a party reasonably anticipates litigation, it **must** suspend its routine document retention/destruction policy and put in place a 'litigation hold' to ensure the preservation of relevant documents." *Zubulake*, 220 F.R.D. at 218 (emphasis added); *see also In re Napster*, 462 F. Supp. 2d at 1070 ("[E]ven if Hummer's 'long standing policies' included deleting emails, Hummer was required to cease deleting emails once the duty to preserve attached."). Further, "[o]nce the duty to preserve attaches,

any destruction of documents is, at a minimum, negligent," and the Court "may impose sanctions for . . . deletion of documents." *In re Napster*, 462 F. Supp. 2d at 1070.

### B. Glaukos Has Suffered Prejudice Due to Ivantis's Deletion of Evidence

A party suffers prejudice from a failure to preserve evidence where it is deprived of documents that would have been "probative to the claims at issue in th[e] litigation." *See Apple*, 881 F. Supp. 2d at 1150 (finding prejudice due to deletion of emails from "key custodians"); *see also 4DD Holdings, LLC v. United States*, 143 Fed. Cl. 118, 132 (Fed. Cl. 2019) ("Prejudice may appear in many forms, such as [] being 'unable to fully respond to the secondary evidence' or being required to go to great lengths in discovery to fill in the gaps in the evidence.").

Here, Glaukos has suffered severe prejudice from Ivantis's failure to preserve documents related to Glaukos or the Glaukos patents until suit was filed. As a result of Ivantis's failure to suspend its policy, Ivantis produced only about 200 emails pre-dating 2017 and, as the below chart shows, no early emails from any key custodian. Glaukos understands the handful of pre-2017 emails were preserved only coincidentally, because there was a more recent reply in the chain from April 2017 or later. In contrast, Glaukos has produced emails dating back to the early 2000s.

| Ivantis Custodian | Date of Earliest Email Produced |
|---|---|
| Dave Van Meter, CEO | October 2016 |
| Ken Galt, VP Research and Development | April 2017 |
| Brett Trauthen, Chief Scientific Officer | April 2017 |

Further, there is no question that Ivantis deleted and failed to retain emails that are highly relevant to this litigation. As just one example, Ivantis deleted and did not produce [redacted]



[redacted]. While there is no knowing exactly what other highly relevant emails Ivantis may have deleted, it is clear that [redacted] *See* Ex. 10 (Van Meter Tr.) at 80:2-9 [redacted] Ex. 2 (Galt Tr.) at 108:3-7 [redacted]

As a result of Ivantis's destruction of emails, Glaukos has been deprived of critical evidence, including evidence concerning Ivantis's copying and willful infringement. *See Oppenheimer*, 2017 WL 1807596, at *12 (finding prejudice where defendant failed to preserve documents related to Plaintiffs "[b]ecause the electronic information can no longer be recovered, Plaintiffs have lost the ability to present potentially relevant information"). For example, Ivantis destroyed, and did not produce, [redacted]. Ivantis also did not produce ***any*** emails from the time the Hydrus was initially designed (which Ivantis has claimed occurred prior to 2010), including and any all email that made reference to Glaukos's products and patents. Similarly, Ivantis's production contains no early Ivantis emails discussing the Glaukos products and patents. Each of these categories of documents would be highly probative, but Ivantis has avoided any scrutiny of such documents by deliberately deleting them until the moment suit was filed.

Glaukos has also been deprived of critical evidence concerning certain assertions made by Ivantis in this litigation. For example, Ivantis has belatedly asserted that the date of the hypothetical negotiation in this case should be 2010 based

on the claim that a 2010 clinical trial was infringing and not protected by the safe harbor, and claims that it could have produced certain alternative designs in 2010. While Glaukos has separately moved to strike that allegation as untimely and contrary to law (and believes it fails for other reasons as well), to the extent it proceeds in this case Ivantis's destruction of e-mail has deprived Glaukos of critical documents needed to test Ivantis's theory. For example, Ivantis has deleted all of its emails from the time of the 2010 trial, including emails that might discuss the purpose of the trial, use of data from the trial, or whether it fell within the safe harbor. Ivantis has also deleted any email that might shed light on how a hypothetical negotiation in 2010 would have occurred, or to what extent Ivantis considered alternative designs in 2010 and what the costs of those alternatives would have been.

### C. The Measures Necessary To Address Ivantis's Destruction of Evidence

"If electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it . . . the court: [] upon finding prejudice to another party from loss of the information, may order measures no greater than necessary to cure the prejudice." Fed. R. Civ. P. 37(e). Appropriate sanctions include "forbidding the party that failed to preserve information from putting on certain evidence, permitting the parties to present evidence and argument to the jury regarding the loss of information, or giving the jury instructions to assist in its evaluation of such evidence or argument." Advisory Committee Notes, 2015 Amendment, Fed. R. Civ. P. 37(e)(1). Further, "upon finding that the party acted with the intent to deprive another party of the information's use in the litigation," the Court may "presume that the lost information was unfavorable to the party" or "instruct the jury that it may or must presume the information was unfavorable to the party." Fed. R. Civ. P. 37(e)(2).

Here, the circumstances of Ivantis's deletion of relevant documents demonstrate that Ivantis acted with intent to deprive Glaukos of the use of such

information in this litigation. *See Moody v. CSX Transportation, Inc.*, 271 F. Supp. 3d 410, 431 (W.D.N.Y. 2017) (court may "infer an intent to deprive from defendants' actions"). Ivantis's CEO testified that [redacted]

Further, when Ivantis adopted its policy, it appears to have immediately applied it to documents pre-dating the policy, thus deleting virtually every email in the company from prior to 2012, including [redacted] [redacted]. Ivantis then repeatedly failed to suspend its policy for *years* even after [redacted] [redacted], and (4) initiating its own patent litigation in Europe against Glaukos [redacted]. These repeated failures to preserve documents show more than just negligence, but an intentional decision to continue deleting documents once litigation was not only anticipated but actually underway. *See, e.g.*, *Moody*, 271 F. Supp. 3d at 431–32 (finding intent where defendant made no effort over the course of years to preserve relevant documents, including because "defendants' repeated failure over a period of years to confirm that the data had been properly preserved . . . is so stunningly derelict as to evince intentionality"); *Brown Jordan Int'l Inc. v. Carmicle*, 2016 WL 815827, at *37 (S.D. Fla. Mar. 2, 2016) (finding party acted with intent where it failed to preserve evidence and testimony that it did not anticipate litigation was not credible); *Alabama Aircraft Indus., Inc. v. Boeing Co.*, 319 F.R.D. 730, 746 (N.D. Ala. 2017) (finding intent where there was no "direct evidence," but "unexplained, blatantly irresponsible behavior leads the court to conclude that Boeing acted with the intent to deprive Pemco of the use of this information").

In light of Ivantis's intentional and repeated failure to suspend its document deletion policy resulting in the destruction of material evidence, Glaukos requests two remedies, both of which are necessary to cure the serious prejudice to Glaukos.

First, Glaukos requests issuance of an adverse inference instruction stating as follows:

> Ivantis intentionally deleted and failed to preserve relevant evidence for this litigation. Ivantis anticipated patent infringement litigation from Glaukos, but nonetheless adopted and maintained a policy that deleted all company email after 12 months, resulting in the destruction of virtually all emails at Ivantis that pre-date April 2017, including emails specifically relating to the Glaukos Asserted Patents. You may presume from that destruction that the destroyed evidence was favorable to Glaukos and unfavorable to Ivantis, including on the issue of whether Ivantis willfully infringed the Asserted Patents.

*See, e.g.*, *Apple*, 881 F. Supp. 2d at 1150 (finding adverse inference instruction was the appropriate sanction where defendant "did not [] suspend" an automatic document destruction policy and as a result deleted documents from "key custodians" whose emails would have been "especially probative to the claims at issue"); *Zest IP Holdings LLC v. Implant Direct Mfg., LLC*, 2013 WL 6159177, at *9 (S.D. Cal. Nov. 25, 2013) (issuing adverse inference instruction where "Plaintiffs are prejudiced by the destruction of . . . emails because the contents of these documents are directly relevant to the claims at issue in this litigation. As a result, Plaintiff is now forced to go to trial while relying on incomplete evidence."); *CTC Global*, 2019 WL 6357271, at *9 (adverse inference instruction appropriate "[t]o counter the prejudicial effects of Defendants' spoliation"); *see also Klipsch Grp., Inc. v. ePRO E-Commerce Ltd.*, 880 F.3d 620, 629 n.5 (2d Cir. 2018) (affirming imposition of adverse inference instruction where lost data "could be used to infer that ePRO had willfully engaged in infringing sales").

Second, in addition to an adverse inference instruction, Glaukos requests that the Court preclude Ivantis from referring to any pre-suit investigation of the Asserted

Patents as a basis for believing that it did not infringe or the patents were invalid.[6] Such additional sanction is appropriate and necessary, because otherwise Ivantis will have achieved exactly what it sought by destroying documents: the ability to tell its own version of events, without any ability of Glaukos to test that story (for example, by looking, deposing witnesses, and ultimately cross-examining witnesses at trial about what the documents and e-mails created by Ivantis at the time actually said about validity and infringement). *See, e.g., Ericksen v. Kaplan Higher Education*, 2016 WL 695789, at *2 (D. Md. Feb. 22, 2016) (excluding evidence that could not be tested by other party due to destroyed data). Further, exclusion of evidence is no greater than necessary to (at least partially) cure the prejudice to Glaukos because, absent such exclusion, Ivantis would be free to present incomplete testimony regarding willfulness that Glaukos has had no opportunity to test via the documentary record, or that might contradict documents that were destroyed.

To the extent the Court does not strike such theory on other grounds, Glaukos also requests that Ivantis be precluded from offering evidence in support of its 2010 hypothetical negotiation date. Exclusion is an appropriate remedy because Ivantis has deleted the evidence that Glaukos might use to test Ivantis's belated assertion of a 2010 negotiation date, including all emails related to its 2010 clinical trial, whether that trial fell within the safe harbor, and the availability of alternatives during that time period. *See CAT3, LLC v. Black Lineage, Inc.*, 164 F. Supp. 3d 488, 502 (S.D.N.Y. 2016) (excluding evidence that could not be adequately tested due to destruction of related documents). Exclusion would also prevent Ivantis from taking damages positions contrary to documents that were deleted.

Finally, Glaukos requests that the Court award Glaukos its attorneys' fees and costs for investigating Ivantis's document destruction and for bringing this motion,

[6] The Court may impose this sanction and the following sanctions even if it finds Ivantis's spoliation was not intentional. Fed. R. Civ. P. 37(e)(1).

and impose any other monetary sanctions it deems just and proper. *See Zest*, 2013 WL 6159177, at *10 (awarding attorneys' fees and costs for bringing spoliation motion).

**V. CONCLUSION**

In sum, Ivantis has engaged in intentional spoliation of evidence that resulted in prejudice to Glaukos. Ivantis's actions require both an adverse inference instruction and exclusion of evidence so as to address the prejudice to Glaukos and ensure that Ivantis does not unjustly benefit from its years-long deletion of relevant documents.

Dated: March 23, 2020

Respectfully submitted,

IRELL & MANELLA LLP

/s/ *Lisa S. Glasser*
Lisa S. Glasser