KEKER, VAN NEST & PETERS LLP
ROBERT A. VAN NEST (SBN 84065)
rvannest@keker.com
DAVID SILBERT (SBN 173128)
dsilbert@keker.com
AJAY S. KRISHNAN (SBN 222476)
akrishnan@keker.com
LAURIE CARR MIMS (SBN 241584)
lmims@keker.com
633 Battery Street
San Francisco, CA 94111-1809
Telephone:  415 391 5400
Facsimile:   415 397 7188

Attorneys for Defendant
IVANTIS, INC.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION-SANTA ANA

| | |
|---|---|
| GLAUKOS CORPORATION, a Delaware Corporation, <br><br> Plaintiff, <br><br> v. <br><br> IVANTIS, INC., a Delaware Corporation, <br><br> Defendant. | Case No. 8:18-cv-00620-JVS-JDE <br><br> **IVANTIS'S NOTICE OF MOTION AND MOTION TO NARROW ASSERTED CLAIMS FOR TRIAL** <br><br> Judge:   Hon. James V. Selna <br><br> Hearing Date:   Aug. 2, 2021 <br> Hearing Time:   11:00 a.m. <br> Courtroom:   10C <br><br> Pre-trial conference: Sept. 13, 2021 <br> Trial date: Sept. 28, 2021 |

**TO THE COURT, ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that on August 2, 2021 at 1:30 P.M., or as soon thereafter as the matter may be heard, before the Honorable James V. Selna in Courtroom 10C of the United States District Court for the Central District of California, Southern Division, located at 411 West Fourth Street, Santa Ana, California 92701, Ivantis, Inc. ("Ivantis") will, and hereby does, move the Court to limit the number of claims asserted by Plaintiff Glaukos Corporation ("Glaukos").The motion is made on the grounds set forth in the accompanying Memorandum of Points and Authorities, the Declaration of Kristen E. Lovin ("Lovin Decl."), and all Exhibits attached thereto, and such further evidence or argument as may be presented at or in connection with hearing on this motion, all pleadings, files and records in this action, and any other evidence the Court may properly consider.

This motion is made pursuant to Civil Local Rule 7-3. Before trial was continued due to COVID-19 (*see* Dkts. 769, 770), the parties had telephonic conferences on May 25 and 26, 2020. Lovin Decl., ¶ 3, Ex. A at 3. At that time, Ivantis proposed that Glaukos reduce its number of asserted claims from 23 to 6. *Id*., Ex. A at 3–4. As the parties began resuming preparations for the current trial date, Ivantis re-initiated discussions by email on May 25, 2021, where it repeated this proposal. *Id*., ¶ 6, Ex. B at 3–4. The parties had subsequent discussions over email and two additional telephonic conferences on June 23, 2021 and June 28, 2021. *Id*., ¶¶ 7–11, Exs. B, C & D. These discussions have confirmed that the parties are at an impasse, and that further discussion would be futile. *See id*.

## I. INTRODUCTION

Glaukos continues to assert nearly four times the number of claims that have ever been tried to a patent jury in this Court—23. It is simply not practical to try all of these claims to a jury, and, even if it were, the sheer volume would risk juror confusion. And now is the time to simplify. By the time this motion is heard, trial will be less than two months away. During this critical time (and before), the parties will expend substantial resources preparing their cases. The parties, witnesses, and experts should not be forced to waste time preparing for claims that will never be tried. Ivantis therefore respectfully requests that, to avoid unnecessary waste, the Court direct Glaukos to narrow its claims to a number that is realistic for trial.

## II. BACKGROUND

Glaukos currently asserts 23 claims across two patents: claims 25–27, 37–38, 48, 52–54, 60–61, and 71 of U.S. Patent No. 6,626,858 ("the '858 patent"), and claims 2, 4, 6, 12, 19–21, 25, 28, and 30–31 of U.S. Patent No. 9,827,143 ("the '143 patent"). Lovin Decl., Ex. E (10/29/2019 email from McPhie disclosing asserted claims), Ex. F at 1 (3/20/2020 email from Glasser dropping '858 claims 40 and 61). Glaukos cannot feasibly try—and Ivantis cannot practically present infringement and invalidity defenses against—this many claims. These claims involve many semi-overlapping—but distinct—claim elements, which will inevitably cause juror confusion. Collectively, these claims contain more than 25 elements, including: "shunt," "channel," "permit[ting] fluid communication," "bidirectional fluid flow," "distal portion … length of about 1 mm to 20 mm," "distal portion … of about 6 mm," "proximal portion … length of about 0.1 to 3 mm," "proximal portion … of about 2 mm," "proximal portion is shorter in length than the distal portion," "elongate," "distal portion … outer diameter of about 0.1 mm to 0.5 mm," "inner diameter between about 100 micrometers and 500 micrometers," "non-linear prior to insertion," "curved," "radius which

approximates the radius of Schlemm's canal," "radius of about 6 mm," "partially open," "opening along its length," "non-tubular," "trough-like," "cross-section … approximat[ing] a partial circumference of a circle," "ovoid openings," "oval-shaped holes," "portals," "flexible," "biocompatible," and "metal." But these elements—many of which cover related but distinct concepts (e.g., length, diameter, curvature, openness, holes, material, or fluid-flow capability)—are often duplicated with slightly different permutations for each claim, compounding the likelihood of confusion.

On October 16, 2019, the Court issued a tentative ruling granting Ivantis's earlier motion to limit the number of asserted claims to 20. Lovin Decl. Ex. G (10/16/2019 Tentative) at 8. This ruling was specifically intended for the expert report stage, leaving open that further narrowing could be done closer to trial. *Id*. at 7 (seeking input on deadlines for narrowing and opening expert reports so that narrowing could "produce efficiencies in the writing of the parties' expert reports"). On October 21, 2019, the parties stipulated to a reduction to 25 claims for expert reports, with no understanding or agreement that this would be the final number for trial. Dkt. 301. During expert discovery, Glaukos dropped two of its claims, but continued to assert the remaining 23 claims through dispositive motions. Lovin Decl., Ex. C at 5.

On May 14 and June 17, 2020, the Court ruled on the parties' summary judgment motions. Dkts. 574, 724. Even after summary judgment, numerous issues remain to be tried. Ivantis disputes infringement on 19 claims (everything except for claims 4, 28, 30, and 31 of the '143 patent). Dkt. 724 at 9. Ivantis also asserts that all 12 claims of the '858 patent are invalid based on 4 primary references (Spiegel, Grieshaber, Stefansson, and Bergheim), and that all 11 claims of the '143 patent are invalid based on 2 primary references (Spiegel and Grieshaber). Dkt. 506-1 (Iwach Rpt.). At summary judgment, the Court decided that the Hydrus has a "distal portion" and "proximal portion;" that Ivantis had not presented sufficient

evidence to create a material factual dispute that claim 30 was invalid in light of its asserted obviousness combinations; and that Ivantis had not presented sufficient evidence to create a material factual dispute that claim 4 was invalid in light of its Spiegel-based obviousness combinations. Dkt. 724 at 9–23. All other infringement and invalidity issues relating to these 23 claims remain to be tried.

In a July 23, 2020 ruling on the parties' *Daubert* motions, the Court also noted that the parties disputed whether Ivantis had adequately disclosed invalidity combinations for Glaukos's 23 claims. The Court instructed the parties "to continue to streamline the asserted claims and asserted prior art references." Dkt. 757 at 15. Now is the time for this streamlining. For Ivantis, as Defendant, to streamline its asserted prior art references, it needs to understand what claims Glaukos, as the Plaintiff, intends to try.

Trial is set for September 28, 2021. It will be less than two months away by the time this motion is heard. At that point (and even before), the parties will be heavily engaged in trial preparations, including preparing witnesses, finalizing exhibits, negotiating pre-trial stipulations, and drafting pre-trial submissions like their memoranda of contentions of fact and law. All of this work is intricately tied to infringement and invalidity issues. If Glaukos does not promptly narrow its claims, the parties will waste more time and effort on claims that will not be tried. Yet Ivantis's meet-and-confer attempts to narrow the claims to a reasonable number have proven futile. *See* Lovin Decl., ¶¶ 6–11.

### III.   ARGUMENT

    **A.   It is not feasible to try all pending infringement and invalidity issues presented by Glaukos's 23 asserted claims.**

As this Court has explained, the guiding principle on claim narrowing is "how many claims can you realistically try to a jury?" Dkt. 194 (4/29/2019 Hr'g Tr.) at 36:14–15; *Thought, Inc. v. Oracle Corp.*, No. 12-CV-05601-WHO, 2013 WL 5587559, at *2 (N.D. Cal. Oct. 10, 2013) ("In determining whether to require

parties limit the number of claims asserted, courts look to the number of patents and claims at issue and the feasibility of trying the claims to a jury."); *Midwest Athletics and Sports All. LLC v. Xerox Corp.*, 6:19-cv-06036, Dkt. 204, at 10 (W.D.N.Y. June 25, 2021) (claims must be limited to what a "lay jury could reasonably be expected to grapple with").

Twenty-three claims are not realistic. Indeed, "[s]uccessful patent plaintiffs almost always present only one, two or three claims to a jury." *Network Prot. Scis., LLC v. Fortinet, Inc.*, No. C 12-01106 WHA, 2013 WL 1949051, at *3 (N.D. Cal. May 9, 2013). Because of this, "[i]t is [even] impractical for either side to present fifteen claims at trial." *Id*. Glaukos's claims well exceed this high watermark, and are also far greater than the claim limits that courts routinely impose for trial. *See, e.g.*, *Oracle Am., Inc. v. Google Inc.*, No. 10-cv-03561-WHA, 2011 WL 12209477, at *1 (N.D. Cal. May 3, 2011) (limit of 3 claims); *Commonwealth Sci. and Indus. Rsch. Org. v. MediaTek Inc.*, No. 6-12-cv-00578, Dkt. 672 (E.D. Tex. Jun. 5, 2015) (limit of 8 claims); *Imperium (IP) Holdings, Inc. v. Apple Inc., et. al.*, No. 4-11-cv-00163, Dkt. 456 (E.D. Tex. Feb. 28, 2013) (limit of 7 claims); *LG Display Co. v. AU Optronics Corp.*, 686 F. Supp. 2d 429, 434 (D. Del. 2010) (limit of 7 claims per side). They are also far greater than the number of asserted claims that this Court has had in its own patent trials. *See, e.g.*, *SPEX Techs., Inc. v. Apricorn*, No. 2-16-cv-07349, 2020 WL 2316102 (C.D. Cal. Feb. 11, 2020) (Selna, J.) (2 claims); *Broadcom Corp. v. Emulex Corp.*, No. 8-09-cv-01058, Dkt. 896 (C.D. Cal. Oct. 12, 2011) (Selna, J.) (6 claims); *Siemens AG, v. Seagate Tech.*, No. 8-06-cv-00788, 2008 WL 5694149 (C.D. Cal. Dec. 23, 2008) (Selna, J.) (6 claims).

Glaukos's 23 claims are also not feasible in light of the particular circumstances of this case. All of Glaukos's asserted claims are dependent claims, many of which rely on the same claim element recited in the independent claim. And, even among claims with different independent claims, many recite semi-overlapping elements pertaining to related—but distinct—concepts. For example,

claims 25, 37, 38, 52, 60, and 61 of the '858 patent all recite various lengths of a "proximal" or "distal portion," but claims 25, 37, and 38 also require a "shunt" that is "non-linear prior to insertion," whereas claims 52, 60, and 61 require a "shunt" that is "flexible" and permits "bidirectional fluid flow." The asserted claims of the '143 patent have even more confusing overlap—many repeat elements like "partially open along its length" (claims 6, 12, 19–21), "holes" (claims 27, 28), "curved" (claims 2, 4, 6, 12), or "metal" (claims 20, 25, 28, 30, 31), but in slightly varying permutations. (And this list excludes related but differently phrased elements like "non-tubular open shape" (claims 25, 28, 30, 31), "opening along its length" (claims 2, 4), "portals" (claims 6, 12), or "non-linear shape" (claims 19–21)—which only further exacerbate the problem.) If Glaukos asserts all of its 23 claims, the jury will have to separately examine these requirements for both the Hydrus and for each of Ivantis's asserted prior art references, and also try to keep straight the specific permutations required for each claim. It will also have to remember specific obviousness arguments for why a certain combination of elements is obvious over prior art combination(s)—arguments that could change based on which elements are being combined.

   Asking the jury to do so many analyses is impracticable for several reasons. *First*, it would be nearly impossible to cover this ground in a single jury trial, with the detail required for the jury to make an informed decision. It would take hours for the parties' experts alone to separately address these claims and their multitude of claim elements, which it is unrealistic given that there are a number of other topics that the parties vigorously dispute and also need to present testimony on, including technical and clinical evidence on the Hydrus itself, Ivantis's business, the MIGS market, Glaukos's allegations of copying, willfulness, practicing products, and lost profits and reasonable royalty damages, both before expiration of the '143 patent and during the remedially limited patent-term-extension ("PTE") phase.

*Second*, such a high number of claims would be confusing to the jury. *See Realtime Data, LLC v. Packeteer, Inc.*, No. 6:08-cv-144, 2009 WL 10667516, at *3 (E.D. Tex. Mar. 16, 2009) (recognizing that "a large number of asserted claims through … trial" is "potentially confusing for a jury"). If Glaukos proceeded with all 23 asserted claims, the jury would have to keep track of all of the different structural characteristics that each of these claims require as it assessed the Hydrus and the prior art. This would be compounded by the fact that the claims recite so many overlapping permutations, each of which the jury would have to keep straight in its mind. "The jury can only be expected to work through so many asserted claims." *Personalized User Model L.L.P., v. Google Inc.*, No. 1-09-cv-00525, Dkt. 88, at 27 (D. Del. Sept. 9, 2010). Twenty-three is too many.

Accordingly, Glaukos's plan to try 23 claims is not feasible. Further narrowing is needed.

**B.     There is no reason to further delay narrowing.**

Narrowing is also needed now. Trial is set for September 28, 2021, which will be less than two months away by the time this motion is heard. From now until trial, the parties will be working intensely to prepare their cases. Arguments will be prioritized. Witnesses will be prepared. Exhibits and demonstratives will be finalized. Stipulations will be negotiated. Throughout all of this, the specific claims that Glaukos chooses to assert will dramatically impact how the parties prepare and what work they will do. To the extent that Glaukos will not present certain claims at trial (an inevitability given the sheer volume of claims currently asserted), this should be made known now, before the parties waste time and money preparing for trial on claims that will never be tried. *See Fontem Ventures BV, v. NJOY, Inc.*, No. 2-14-cv-01645, Dkt. 219, at 2 (C.D. Cal. Jul. 20, 2015) ("reducing the number of claims now will still serve judicial economy in connection with … trial"). Indeed, courts look down on eve-of-trial claim narrowing and have threatened sanctions in light of it. *See, e.g.*, *Arthrex, Inc. v. Smith & Nephew, Inc.*, No. 2-15-cv-01047-

7
IVANTIS'S NOTICE OF MOTION AND MOTION TO NARROW ASSERTED CLAIMS FOR TRIAL
CASE NO. 8:18-CV-00620-JVS-JDE

RSP, Dkt. 262, at 2 (E.D. Tex. Nov. 9, 2016) (threatening sanctions if plaintiff dropped claims later than 3 days after entry of the pretrial order in order "to deter a party from forcing the Court and the opposing party to waste resources preparing for claims that ultimately will never be presented to the jury").

While there are many reasons why narrowing needs to happen urgently, there is *no* reason whatsoever to delay narrowing. Expert discovery closed long ago, and summary judgment and *Daubert* motions have been adjudicated. Glaukos has had, for many, many months, all the information it needs to determine which of its claims to prioritize. Indeed, in addition to the delay of proceedings due to COVID-19 between such motions being decided and trial— during which Glaukos undoubtedly has considered the perceived strengths and weaknesses of its various positions—all of the preconditions for narrowing that Glaukos has raised in previous oppositions to claim narrowing have now come to pass. Dkt. 271 at 12–14 (arguing that claim narrowing was premature because expert discovery had not occurred and Ivantis had not stipulated to infringement on any claims). Thus, Glaukos should narrow its claims now.

### C.  Glaukos should limit its claims to 6, and Ivantis will limit its asserted prior art commensurately.

Ivantis proposes that Glaukos limit its claims to 6. This is consistent with other patent cases tried by this Court, as well as narrowing done in other courts pre-trial. *See, e.g.*, *SPEX Techs., Inc.,* 2020 WL 2316102 (2 claims) (Selna, J.); *Broadcom Corp.*, No. 8-09-cv-01058, Dkt. 896 (6 claims) (Selna, J.); *Siemens AG,* 2008 WL 5694149 (6 claims) (Selna, J.); *Oracle Am., Inc.,* 2011 WL 12209477, at *1 (3 claims); *Commonwealth Sci.,* No. 6-12-cv-00578, Dkt. 672 (8 claims); *Imperium (IP) Holdings, Inc.,* No. 4-11-cv-00163, Dkt. 456 (7 claims). Six claims also make sense given that 8–10 is a generally accepted target at the earlier dispositive motions stage. *See* Federal Circuit Advisory Council Model Order (5 claims per patent); *Midwest Athletics*, 6:19-cv-06036, Dkt. 204 (8 claims). This

means that, at most, parties should proceed with 8–10 going into pre-trial; from this starting points and high watermark, 6 is a reasonable resting point for trial.

As a general matter, Ivantis agrees that its asserted prior art references should be limited in proportion to Glaukos's asserted claims. And in fact, Ivantis has already substantially narrowed its invalidity case without Glaukos's lead—Ivantis has currently disclosed invalidity arguments which rely primarily on roughly 8 prior art references, which is well within limits imposed elsewhere. *See, e.g.*, Federal Circuit Advisory Council Model Order (12 references per patent). Nevertheless, if Glaukos limits its claims to a number that would require a further reduction of references, Ivantis is willing to do so. But this must happen after Glaukos has narrowed its claims—without this information, Ivantis will not know what references it can cut.

## IV.   CONCLUSION

For the foregoing reasons, the Court should order Glaukos to limit its asserted claims to 6 within one week of issuing its order. If the Court deems it necessary, within 7 days of Glaukos's claim narrowing, Ivantis will reduce its prior art references correspondingly.

Dated: July 2, 2021                           KEKER, VAN NEST & PETERS LLP

By: */s/ David Silbert*
David Silbert

Attorneys for Defendant
IVANTIS, INC.

1713460